UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
LEGAL RECOVERY ASSOCIATES, LLC,

       Plaintiff/Counterclaim Defendant,

  v.

BRENES LAW GROUP, P.C. and TROY
BRENES,

       Defendants/Counterclaimants.

-----------------------------------------------------------x

BRENES LAW GROUP, P.C. and TROY A.
BRENES,

       Counterclaim Plaintiffs,

  v.

HOWARD B. BERGER, GREGORY
GOLDBERG, LAWRENCE LITIGATION
GROUP, L.P. and DOES 1-50,

       Counterclaim Defendants.

-----------------------------------------------------------x

Case No. 22-CV-1778 (AJN)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SEVER, STAY AND COMPEL ARBITRATION OF THE SECOND AND THIRD COUNTERCLAIMS

Plaintiff Legal Recovery Associates, LLC (LRA) and Counterclaim Defendant Lawrence Litigation Group, L.P. (LLG and, together with LRA, Movants), through their attorneys, Solomon & Cramer LLP, respectfully submit this memorandum of law in support of their motion, pursuant to Rule 21 of the Federal Rules of Civil Procedure, to sever the second and third counterclaims; to stay the severed claims pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, pending mandatory arbitration of those claims; and to compel such arbitration.

I.      **STATEMENT OF THE CASE**

Plaintiff LRA commenced this action against Defendants Brenes Law Group, P.C. (Brenes Law) and Troy A. Brenes (together, the Brenes Parties)[1] in New York State court to enforce two promissory notes given by Brenes Law to LRA in the principal amounts of $1,100,000 and $500,000 (the Notes; ECF 1-1). Mr. Brenes personally guaranteed repayment of the Notes and is a defendant in that capacity. In the complaint, LRA alleges that Brenes Law breached its obligation to repay the Notes, which duty was triggered by (a) its collection of money on certain cases that the firm was prosecuting (and LRA was financing) and (b) its grant of a senior security interest in the proceeds of such cases to another lender—a violation of its representations and warranties and an event of default under the Notes.

On March 3, 2022, the Brenes Parties removed this action to this Court under 28 U.S.C. §§ 1331 and 1441. On removal, the Brenes Parties jointly filed an answer with counterclaims against Plaintiff and purported to join additional parties as counterclaim defendants. *See* Defendants' Answer and Counterclaims." (ECF 3; Ans.).

The subjects of this motion are the Brenes Parties' second and third counterclaims, which allege unjust enrichment, fraud, and fraudulent concealment. The claims arise out of an Attorney Association Agreement (Ans. p. 12 at ¶ 1) and a March 2017 amendment (Ans. p. 12 at ¶ 2),[2] pursuant to which LRA and the Brenes Parties, as co-counsel, had retained mass-tort plaintiffs' cases. The Brenes Parties allege that LLG and its principals are liable for unjust enrichment and fraud based on their use of LLG's interest in profits from the co-counsel cases—acquired under

---

[1] Troy Brenes has appeared *pro se*. He has also filed an answer as counsel for Brenes Law Group, but he is not admitted to practice in this Court. Brenes Law is a Professional Corporation and cannot appear *pro se*. This should be corrected voluntarily or, if necessary, by order of the Court.

[2] The Brenes Parties did not attach these agreements to their pleading, but they are provided here as Exhibits A and B to the accompanying Declaration of Gary Podell, dated March 11, 2022 (the Podell Decl.).

2

the Attorney Association Agreement—as collateral to borrow money for other ventures (Ans. p. 13 at ¶ 7, p. 16 ¶ 7, p. 17 ¶ 13).

The Attorney Association Agreement and the March 2017 amendment both contain mandatory arbitration clauses. They provide that "any controversy arising out of or related to this Agreement or breach thereof shall be settled under the law of the District of Columbia … and shall be resolved via arbitration under the American Arbitration Act." *See* Podell Decl. Ex. A at ¶ 10 and Ex. B at ¶ 10.

## II.   ARGUMENT

### A. The Court Should Sever the Second and Third Counterclaims

Under Rule 21 of the Federal Rules of Civil Procedure, "[t]he court may … sever any claim against a party."

When a lawsuit involves claims that are arbitrable and claims that are non-arbitrable, it is proper for the Court to sever the arbitrable claims and then stay them pending arbitration. *Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) ("If some claims are non-arbitrable, while others are arbitrable, then we will sever those claims subject to arbitration from those adjudicable only in court."); *B & R Assocs. v. Dependable Ins. Co.*, 835 F.2d 526, 528 (4th Cir. 1987) ("There can be no doubt that the court must sever and compel arbitration of all arbitrable claims and reserve jurisdiction of any non-arbitrable claims").

This case involves both arbitrable and non-arbitrable claims. The non-arbitrable claims are Plaintiff's claims on the promissory notes and the guaranty and Defendants' first counterclaim relating to the prepayment of those notes. The arbitrable claims are the second and third counterclaims, which are governed by the mandatory arbitration clause in the Attorney Association Agreement. These latter two counterclaims should be severed.

### B. Trial of the Severed Counterclaims Must be Stayed Under the FAA

Upon severance, the second and third counterclaims must be stayed because they are subject to mandatory arbitration.

#### 1. The Second and Third Counterclaims Are Subject to Mandatory Arbitration

When a claim is arbitrable, Section 3 of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* requires a stay of such proceedings pending arbitration. It provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C.A. § 3.

To determine whether a dispute is arbitrable under the FAA, a court must determine "(1) whether there exists a valid agreement to arbitrate at all under the contract in question ... and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001). Once a valid agreement containing an arbitration clause is identified, any "doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability." *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir.2002) (*citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

The Attorney Association Agreement is a valid agreement to arbitrate. Its mandatory arbitration clause requires arbitration of "any controversy arising out of or related to [the] …

Agreement," and is thus broad in scope. *See David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 251 (2d Cir. 1991). Because it is broad, arbitrability of any claim within or collateral to the contract is presumed. *See Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000). The second and third counterclaims are squarely within the scope of the clause. Indeed, they would not exist but for the existence of that agreement, the co-counsel relationship that the parties formed under it, and the cases that they obtained together.

In that the second and third counterclaims are arbitrable under a valid agreement, a stay under § 3 of the FAA is mandatory. *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015).

### 2. Troy Brenes is Personally Required to Arbitrate

It is true that Mr. Brenes did not sign an agreement to arbitrate in his personal capacity. But he is equitably estopped from avoiding arbitration.

This estoppel arises, first, because Mr. Brenes is asserting the second and third counterclaims jointly with his law firm Brenes Law (a signatory) and thus stands to reap "benefits of a contract that contains an arbitration provision." *Robinson Brog Leinwand Greene Genovese & Gluck P.C. v. John M. O'Quinn & Assocs.*, L.L.P., 523 F. App'x 761, 763 (2d Cir. 2013) (*citing Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (describing "direct benefits estoppel"). The estoppel also arises based on Mr. Brenes's status as managing partner of Brenes Law. *Cf. Ross v. Am. Exp. Co.,* 547 F.3d 137, 144 (2d Cir. 2008) ("A number of cases from the district courts of our Circuit have similarly held that estoppel is warranted when a non-signatory defendant owns or controls a signatory defendant.").

### 3. The Stay Should Not Affect LRA's Breach of Contract Claim

Even if the Court were to decline to sever the second and third counterclaims, any stay of those counterclaims pending arbitration should not affect LRA's ability to proceed on its claim.

5

The basic rule is that when a case contains arbitrable and non-arbitrable claims, a court will typically stay only the arbitrable claims, while allowing the other claims to proceed. *See, e.g., Allied-Bruce Terminix Companies, Inc. v. Dobson*, 684 So. 2d 102, 111 (Ala. 1995) (upholding lower court's stay of only arbitrable cases). A court may, in its discretion, stay the non-arbitrable claims as well, but only when "(1) the arbitrated and litigated disputes involve[] the same operative facts; (2) the claims asserted in the arbitration and litigation [are] "inherently inseparable"; and (3) the litigation [has] a "critical impact" on the arbitration." *Rainier DSC 1, L.L.C. v. Rainier Cap. Mgmt., L.P.*, 828 F.3d 356, 360 (5th Cir. 2016).

No exception applies here as the arbitrable and non-arbitrable claims are basically unrelated and clearly separable. LRA's claims in the main case arise out of promissory notes given to it by Brenes Law and a guarantee by Troy Brenes. The Notes each contain a no arbitration provision and require that "any action or proceeding brought on or in connection with this Note" be resolved in a state or federal court located in New York County. Dkt. 1-1 [Complaint] at Exs. A and B. By contrast, the second and third counterclaims arise out of the Attorney Association Agreement, which contains a broad mandatory arbitration clause. Furthermore, LRA's enforcement of the Notes does not depend on the outcome of any disputes under the Attorney Association Agreement. The Notes represent an unconditional obligation of Brenes Law and Troy Brenes (as guarantor) to repay money indisputably borrowed.

As such, there is no basis for staying the claims under the Notes and guarantee. Those claims should proceed while the arbitrable second and third counterclaims are put before the AAA.

### C. The Brenes Parties Should be Compelled to Arbitrate the Second and Third Counterclaims

A motion to compel arbitration is governed by Section 4 of the FAA (9 U.S.C. § 4). It provides in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

The Court's role is limited and straightforward, with only two issues to address: "i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate." *Jacobs v. USA Track & Field*, 374 F.3d 85, 88 (2d Cir. 2004) (*quoting Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir.2003) (*quoting PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir.1996))).

Movants have demonstrated both. The Attorney Association Agreement contains a valid and broad obligation to arbitrate the second and third counterclaims, and the Brenes Parties have "failed, neglected or refused to arbitrate," by commencing this litigation. *Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 725 F.2d 192, 195 (2d Cir. 1984).

Because the Brenes Parties filed the second and third counterclaims despite being subject to mandatory arbitration, the Court should also issue an order under § 4 of the FAA compelling them to arbitrate those claims.

### III.   CONCLUSION

For the reasons stated above, the Court should sever the second and third counterclaims pursuant to Rule 21 of the Federal Rules of Civil Procedure, then stay them under the FAA,

pending resolution of the arbitration of those counterclaims, and compel the Brenes Parties to arbitrate them. Plaintiff's claim on the promissory notes and guaranty, however, should be permitted to proceed whether or not severance or a stay is ordered.

Dated: New York, New York
March 16, 2022

    SOLOMON & CRAMER LLP
    *Attorneys for Plaintiff Legal Recovery*
    *Associates, LLC and Third-Party Defendant*
    *Lawrence Litigation Group, L.P.*

    By: /s/Andrew T. Solomon
        Andrew T. Solomon
        asolomon@solomoncramer.com

    25 West 39th St., 7th Floor
    New York, NY 10018
    (212) 884-9102