# EXHIBIT B

## AMENDED ATTORNEY ASSOCIATION AGREEMENT
## THIS AMENDED CONTRACT IS SUBJECT TO ARBITRATION

This Agreement is made between BRENES LAW GROUP, P.C., and any successors and/or assigns (hereinafter referred to as "LEAD TRIAL ATTORNEY"); and LAWRENCE LITIGATION GROUP, LP (hereinafter referred to as "CO-COUNSEL ATTORNEY") and amends the prior Attorney Association Agreement entered into on December 29, 2016.

In consideration of the mutual promises herein contained, the parties agree as follows:

1. PURPOSE: LEAD TRIAL ATTORNEY and CO-COUNSEL ATTORNEY have agreed to pursue claims relating to patients injured by hernia mesh, catheter, and inferior vena cava filters ("PRODUCTS") who have qualifying injuries. This Agreement is intended to set forth the roles, procedures, and sharing of costs and fees for Clients covered by this arrangement.

2. CLIENTS COVERED: This Agreement shall govern all persons with hernia mesh or catheter products who retain LEAD TRIAL ATTORNEY and CO-COUNSEL ATTORNEY as of January 9, 2017.[1] This agreement shall also extend to all persons with inferior vena cava filters who retain LEAD TRIAL ATTORNEY and CO-COUNSEL ATTORNEY as a result of activities by CO-COUNSEL ATTORNEY. Such activities include, but are not limited to, arranging teaching seminars, networking events, which result in referrals, arranging referral relationships with other firms, or funding marketing campaigns.[2]

3. SERVICES AND RESPONSIBILITIES OF CO-COUNSEL ATTORNEY: The services and responsibilities of CO-COUNSEL ATTORNEY shall be as follows:

    a. CO-COUNSEL ATTORNEY will acquire Clients who have or have used the PRODUCT (hereinafter referred to as "Client(s)") who allege they have suffered injuries as a result. CO-COUNSEL ATTORNEY shall advertise, accept incoming calls, obtain histories, executed medical releases, and the Representation Agreement from the client before forwarding them to LEAD TRIAL COUNSEL. CO-COUNSEL ATTORNEY will pay all costs and expenses associated with client acquisition including but not limited to advertising expenses, initial

---

[1] LEAD TRIAL ATTORNEY shall include CO-COUNSEL ATTORNEY on all client retainer agreements sent to clients on or after January 9, 2017.
[2] LEAD TRIAL ATTORNEY shall include CO-COUNSEL ATTORNEY on all client retainer agreements sent to clients on or after January 9, 2017, in which said client retained LEAD TRIAL ATTORNEY as a result of activities by CO-COUNSEL ATTORNEY. Such activities include, but are not limited to, arranging teaching seminars, networking events, which result in referrals, arranging referral relationships with other firms, or funding marketing campaigns.

1

CONFIDENTIAL

      screening efforts, and client follow-up until such time as the above activities are completed. Thereafter, CO-COUNSEL ATTORNEY will forward the original client's file to LEAD TRIAL COUNSEL.

   b. After transfer of the client file to LEAD TRIAL COUNSEL, CO-COUNSEL ATTORNEY shall continue to assist LEAD TRIAL COUNSEL in litigation planning, infrastructure management, and communicating with clients. CO-COUNSEL ATTORNEY shall also contribute $15,000.00 a month towards the costs of litigating these joint venture cases. LEAD TRIAL COUNSEL may use these funds at its discretion, including for example, for costs relating to medical record ordering, filing fees, case reviews and wages for new staff. However, these funds can only be used for the benefit of joint venture cases. CO-COUNSEL ATTORNEY shall also contribute 55% of any common benefit assessments necessary for LEAD TRIAL COUNSEL to assume a leadership role in the litigations covered by this agreement.

4. **SERVICES AND RESPONSIBILITIES OF LEAD TRIAL COUNSEL:** BRENES LAW GROUP, P.C., shall be responsible for filing all lawsuits and/or litigating said claims throughout the litigation and/or claim process, including any appeals. Strategic issues shall be decided at the sole discretion of LEAD TRIAL COUNSEL.

   a. LEAD TRIAL COUNSEL SHALL pay any costs and expenses associated with the pursuit of the claims through the litigation, claims, and/or appellate process. LEAD TRIAL COUNSEL will be responsible to obtain medical records, perform legal research, analysis of any legal issues, preparation of claims, and all other legal services associated with the pursuit of Clients' claims, including appeals. Upon request of CO-COUNSEL ATTORNEY, LEAD TRIAL COUNSEL shall be required to furnish CO-COUNSEL ATTORNEY with copies of any forms and other documents relating to Clients' claims and inform CO-COUNSEL ATTORNEY of any requested details concerning the negotiation of settlement of such claims.

   b. CO-COUNSEL ATTORNEY agrees that LEAD TRIAL COUNSEL may at its sole discretion associate any portion of its responsibilities or assign its interest to other attorneys in the prosecution of claims covered by this Agreement.

5. **RECOVERY OF COSTS AND/OR EXPENSES:** LEAD TRIAL COUNSEL and CO-COUNSEL ATTORNEY shall be entitled to recover reasonable costs and/or expenses from Clients out of the Clients' portions of settlements and/or judgments. CO-COUNSEL ATTORNEY must provide all cost and/or expense reimbursement to LEAD TRIAL COUNSEL within a reasonable time after successful resolution of each client's case, but no later than thirty (30) days after such resolution.

CONFIDENTIAL

6. ATTORNEY FEES: For Clients covered by this Agreement, LEAD TRIAL COUNSEL and CO-COUNSEL ATTORNEY will receive the following as its attorney fee:

   a. LEAD TRIAL COUNSEL: BRENES LAW GROUP, P.C., shall receive (45%) of the gross attorney fee, by way of assignment, regardless of the stage of the claim and/or lawsuit when the recovery and/or settlement is obtained for Clients.

   b. CO-COUNSEL ATTORNEY: LAWRENCE LITIGATION GROUP, LP shall receive (55%) of the gross attorney fees regardless of the stage of the claim and/or lawsuit when the recovery and/or settlement is obtained for Clients.

   c. Should Local Counsel, Appellate Counsel or other affiliated counsel be needed or used for litigation purposes, these fees will be taken off the top of the gross attorneys' fee before any split of attorney fees between CO-COUNSEL ATTORNEY and LEAD TRIAL COUNSEL. However, LEAD TRIAL COUNSEL must obtain approval from CO-COUNSEL ATTORNEY before any such arrangement may be entered into. CO-COUNSEL ATTORNEY shall act in good faith in deciding whether or not to approve such relationships.

   d. Should common benefit assessments apply, such assessments shall be deducted off the top of the gross attorneys' fee prior to any fee split of attorney fees between CO-COUNSEL ATTORNEY and LEAD TRIAL COUNSEL.

   e. CO-COUNSEL ATTORNEY shall advance marketing costs to acquire clients injured by the PRODUCTS. All such expenditures/marketing buys by CO-COUNSEL ATTORNEY must be approved by LEAD TRIAL COUNSEL.

   f. CO-COUNSEL ATTORNEY'S $15,000 monthly contribution as well as all approved marketing expenses shall be deducted off the top of the gross attorneys' fee prior to any fee split of attorneys' fees between CO-COUNSEL ATTORNEY and LEAD TRIAL COUNSEL.

   g. It is understood that neither LEAD TRIAL COUNSEL nor any of the Partners or Members of LEAD TRIAL COUNSEL shall be responsible to pay back CO-COUNSEL ATTORNEY in the event that a particular mass tort campaign, claim, case, or litigation effort fails to generate profits. However, should one individual litigation, e.g. hernia mesh litigation, fail to generate profits, CO-COUNSEL ATTORNEY and LEAD TRIAL COUNSEL may recoup their losses from the profits obtained in another

CONFIDENTIAL

mass tort litigation subject to this agreement. Notwithstanding anything in this Agreement, CO-COUNSEL ATTORNEY is only entitled to fees and costs from hernia mesh and catheter cases retained as of this January 6, 2017, or any inferior vena cava filter cases that were retained as a result of efforts by CO-COUNSEL ATTORNEY.

    h. In the event that the parties decide to conserve resources by having only one participating law firm seek a leadership position in a mass tort litigation, the other law firm, upon agreement by all parties, may contribute the common benefit contribution required to participate in litigation leadership positions. In case of such an event, the firm contributing to the common benefit contribution but that is not a formally appointed member of the litigation leadership, will be entitled to 50% of the attorneys' fees awarded as compensation for common benefit work done by the firm who is appointed to the leadership position.

    i. If individual joint venture cases or litigations settle prior to other joint venture cases or litigations, joint venture expenses which do not pertain to a particular case, e.g. CO-COUNSEL ATTORNEY's $15,000 monthly contribution used to pay contract workers, marketing, etc., will be amortized over all pending joint venture cases at the time the expense was incurred, for determining how much should be deducted from the attorney's fee for costs as individual cases settle. Common benefit contributions shall be repaid when common benefit contributions are refunded following the close of a mass tort litigation.

7. TIME FOR DIVISION OF FEES AND PAYMENT OF COSTS: It is agreed that all attorneys shall be paid simultaneously.

8. All joint clients retained under this Agreement shall receive a retainer agreement listing BRENES LAW GROUP, P.C. and LAWRENCE LITIGATION GROUP, LP as the law firms being retained and above-described fee split.

9. LEAD TRIAL COUNSEL shall establish a case management database for all joint cases. CO-COUNSEL ATTORNEY shall in turn purchase one or more "user" licenses so that it may help maintain, track, and organize joint cases.

10. RESOLUTION OF DISPUTES: Any controversy arising out of or related to this Agreement or the breach thereof shall be settled under the law of the District of Columbia without reference or regards to any conflict of laws principles, and shall be resolved via arbitration under the American Arbitration Action, 9 U.S.C. §2, in the District of Columbia, in accordance with the rules of the American Arbitration Association, and judgment entered upon the award rendered may be enforced or appealed by appropriate judicial action pursuant to the District of Columbia Code of Civil Procedure. The arbitration shall be heard by a single arbitrator, which shall be a person unanimously agreed to by the parties, and the dispute shall be

CONFIDENTIAL

heard within thirty (30) days following notice by one party that he/she desires that a matter be arbitrated.

If the parties are unable, within such 30-day period to agree upon an arbitrator, then the issue shall be heard by an arbitrator selected by the District of Columbia office of the American Arbitration Association, which arbitrator shall be experienced in the area of legal partnerships and who shall be knowledgeable with respect to the subject matter area of the dispute. The losing party shall bear any fees and expenses of the arbitrator, other tribunal fees and expenses, reasonable attorney's fees of both parties, any costs of producing witnesses and any other reasonable costs or expenses incurred by him/her or the prevailing party or such costs shall be allocated by the arbitrator.

The arbitrator shall render a decision within thirty (30) days following the close of presentation by the parties of their cases and any rebuttal. The parties shall agree within thirty (30) days following selection of the arbitrator to any prehearing procedures or further procedures necessary for the arbitration to proceed, including interrogatories or other discovery; provided, in any event each party shall be entitled to discovery in accordance with the District of Columbia Code of Civil Procedure.

11. LEGAL CONSTRUCTION: If any part of this Agreement is held invalid, illegal, and/or unenforceable in any respect; such invalidity, illegality, and/or unenforceability shall not affect any other provisions thereof and this Agreement shall be construed as if such invalid, illegal, and/or unenforceable provision has never been contained herein. Further, to the fullest extent allowed by law, the Authority ruling and/or holding concerning said provision unenforceable may redline and/or redraft said provision as close as possible to the parties' original intent to make said provision enforceable.

12. COMPLIANCE WITH PROFESSIONAL RULES OF CONDUCT: CO-COUNSEL ATTORNEY, as a law firm with its primary place of business in the District of Columbia, represents it is in compliance and shall remain in compliance with the D.C. Rules of Professional Conduct relating to participation by non-lawyers.

13. BINDING ON HEIRS, ASSIGNS, ETC.: This Agreement shall be binding upon the heirs, executors, administrators, successors, partners and assigns of each party hereto.

14. COUNTERPARTS: This Agreement may be executed by facsimile and/or in two or more counterparts, each of which shall constitute an original and all of which together shall be deemed to be one and the same instrument.

15. ENTIRE AGREEMENT: This document constitutes the entire Agreement between BRENES LAW GROUP, P.C. and LAWRENCE LITIGATION

5

CONFIDENTIAL

GROUP, LP and shall not be contradicted by any oral representations or statements unless attached to this Agreement in writing and signed by all parties to the Agreement.

16. Notwithstanding paragraph number 15, this Agreement may be modified by subsequent writings, including by email, so long as the writing clearly identifies how the Agreement is being modified and authorized representatives from BRENES LAW GROUP, P.C. and LAWRENCE LITIGATION GROUP, LP consent to the modification(s) in writing. The authorized representative for BRENES LAW GROUP, P.C. is Troy A. Brenes. The authorized representative for LAWRENCE LITIGATION GROUP, LP is Greg Goldberg. If such a modification is reached through email communications, the parties need not sign the writing for it to be effective.

**LEAD TRIAL COUNSEL:**
BRENES LAW GROUP, P.C.

BY: _____ /s/ Troy Brenes _____
Troy Brenes, Esq.

DATE: _____ 1/9/2017 _____

**CO-COUNSEL ATTORNEY:**
LAWRENCE LITIGATION GROUP, LP

BY: _____ /s/ Greg Goldberg _____
Greg Goldberg

DATE: _____ 1/9/17 _____

6

CONFIDENTIAL