UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LEGAL RECOVERY ASSOCIATES, LLC,

       Plaintiff/Counterclaim Defendant,

  v.

BRENES LAW GROUP, P.C. and TROY
BRENES,

       Defendants/Counterclaimants.
------------------------------------------------------------x
BRENES LAW GROUP, P.C. and TROY A
BRENES,

       Counterclaim Plaintiffs,

  v.

HOWARD B. BERGER, GREGORY
GOLDBERG, LAWRENCE LITIGATION
GROUP, L.P. and DOES 1-50,

       Counterclaim Defendants.
------------------------------------------------------------x[1]

Case No. 22-CV-1778 (AJN)

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS THE FIRST COUNTERCLAIM AND TO STRIKE AFFIRMATIVE DEFENSES

SOLOMON & CRAMER LLP
25 West 39th Street, 7th Floor
New York, New York 10018
(212) 884-9102
*Attorneys for Plaintiff*

---

[1] None of the additional counterclaim defendants in the action (*i.e.*, Howard Berger, Gregory Goldberg, Gary Podell or Lawrence Litigation Group, LP) have been served with process, as of today, March 29, 2022.

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

I.     Introduction ..................................................................................................................1

II.    Facts Alleged in the Counterclaim ...............................................................................2

III.   Argument .....................................................................................................................3

         A.     Standards on a Motion to Dismiss ...................................................................3

         B.     BLG's First Counterclaim Fails to State a Claim .............................................4

         C.     Brenes Waived His Defenses, Cannot Assert Counterclaims, and Has No Standing to Assert a Counterclaim Under the Notes ........................................6

                 1.     Brenes's Affirmative Defenses and Counterclaim Are Barred by the Waivers In the Guarantee Agreement .................................................7

                 2.     Brenes is Contractually Barred from Asserting a Counterclaim .................9

                 3.     Lacking Privity, Brenes Cannot Assert a Counterclaim Based on an Implied Duty ......................................................................................10

IV.   Conclusion .................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am.-Eur. Art Assocs., Inc. v. Trend Galleries, Inc.*,
227 A.D.2d 170, 641 N.Y.S.2d 835 (1996) .............................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................................3, 6

*Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Com.*,
265 A.D.2d 513, 697 N.Y.S.2d 128 (1999) ...............................................................................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555 (2007) ........................................................................................................3, 6

*Campbell-Ewald Co. v Gomez*,
577 US 153, 136 S Ct 663, 193 L Ed 2d 571 [2016] ...................................................................6

*Cardella v. Giancola*,
297 A.D.2d 618, 747 N.Y.S.2d 31 (2002) ...................................................................................6

*City of Coral Springs Police Officers' Ret. Plan v. Farfetch Ltd.*,
No. 19-CV-8720 (AJN), 2021 WL 4481119 (S.D.N.Y. Sept. 30, 2021) ....................................3

*Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 188 F.3d 31 (2d Cir. 1999) .......................................................................................8

*Dalton v. Educ. Testing Serv.*,
87 N.Y.2d 384, 663 N.E.2d 289 (1995) ......................................................................................4

*Erickson Beamon Ltd. v. CMG Worldwide, Inc.*,
No. 12 CIV. 5105 NRB, 2014 WL 3950897 (S.D.N.Y. Aug. 13, 2014) ....................................3

*Exp.-Imp. Bank of U.S. v. Agricola Del Mar BCS*,
334 F. App'x 353 (2d Cir. 2009) ................................................................................................7

*Fleet Bank v. Petri Mech. Co.*,
244 A.D.2d 523, 524, 664 N.Y.S.2d 462, 463 (1997) ...............................................................9

*Four Winds of Saratoga Inc. v. Blue Cross & Blue Shield of Cent. New York Inc.*,
241 A.D.2d 906, 660 N.Y.S.2d 236 (1997) .............................................................................10

*GEOMC Co. v. Calmare Therapeutics Inc.*,
918 F.3d 92 (2d Cir. 2019) .........................................................................................................6

*Greater New York Sav. Bank v. 2120 Realty Inc.*,
   202 A.D.2d 248, 608 N.Y.S.2d 463 (1994) .................................................................. 8-9

*Hadami, S.A. v. Xerox Corp.*,
   272 F.Supp.3d 587 (S.D.N.Y. 2017)................................................................................4

*Home Sav. of Am., FSB v. Isaacson*,
   240 A.D.2d 633, 659 N.Y.S.2d 94 (1997) ......................................................................6

*JPMorgan Chase Bank, N.A. v. Reifler*,
   614 F. App'x 11 (2d Cir. 2015) .................................................................................. 7-8

*Nat'l Sav. Bank of Albany v. Hartmann*,
   179 A.D.2d 76, 582 N.Y.S.2d 523 (1992) ......................................................................6

*Red Tulip, LLC v. Neiva*,
   44 A.D.3d 204, 842 N.Y.S.2d 1 (2007) ..........................................................................9

*State St. Glob. Advisors Tr. Co. v. Visbal*,
   431 F. Supp. 3d 322 (S.D.N.Y. 2020)......................................................................... 6-7

*Thyroff v. Nationwide Mut. Ins. Co.*,
   460 F.3d 400 (2d Cir.2006)............................................................................................4

## **Rules**

Fed. R. Civ. P. 12(b)(6).................................................................................................1, 3

Fed. R. Civ. P. 12(f) ......................................................................................................1, 6

## **Other Authorities**

72 N.Y. Jur. 2d Interest and Usury § 13 .............................................................................5

83 N.Y. Jur. 2d Payment and Tender § 119 .......................................................................6

Plaintiff Legal Recovery Associates, LLC (LRA), through its counsel, Solomon & Cramer LLP, submits this memorandum of law in support of its motion, pursuant to Rule 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure, to dismiss Defendants/ Counterclaimants' first counterclaim and to strike Troy Brenes's affirmative defenses.

In filing this motion, LRA has already moved to sever and stay (pending mandatory arbitration) the second and third counterclaims. *See* Dkt. No. 6.[2]

## I. Introduction

This is an action to enforce two promissory notes given by the Brenes Law Group (BLG), in the principal amounts of $1,100,000 and $500,000 (the "Notes"), and an unconditional personal guaranty (the "Guarantee Agreement") provided by Troy Brenes ("Brenes"). *See* Exhibits A-C to the accompanying Declaration of Andrew T. Solomon, dated March 29, 2022 ("Solomon Decl.").

The first counterclaim for breach of the implied duty of good faith and fair dealing is based on LRA's alleged refusal to provide BLG with a payoff amount or to sign another lender's payoff letter. This is nothing more than a strawman argument. LRA had no power over the payoff process; BLG had a clear, unilateral contractual right to prepay the Notes at any time, in its discretion. If BLG wanted to discharge the Notes, it simply had to send a payment equal to the principal and accrued interest (which was easily calculated) in U.S. dollars to LRA. That's all.

In addition to its contractual prepayment right, BLG had a common law right of tender. Had it tendered the full amount due under the Notes—and had LRA refused to accept it—LRA's ability to recover future interest and costs of enforcement would have ended. But BLG has not alleged that it tendered the amount due, as required under the law.

---

[2] If those claims were to proceed in court, LRA would move to dismiss them.

Finally, the counterclaim and defenses asserted by Troy Brenes, as guarantor, must be dismissed and struck because (A) his guarantee is unconditional and he waived all defenses (except full payment); (B) he agreed not to assert counterclaims; and (C) he lacks privity to assert a claim based on an implied covenant under the Notes.

## II.    Facts Alleged in the Counterclaim[3]

The Notes are undisputed. BLG alleges, however, that in September 2020 it "sought to repay the entire debt owed to LRA … including all accrued interest." Counterclaim ¶ 12. To make the repayment, BLG arranged a new line of credit from a third-party lender. *Id.* at ¶ 14. According to BLG, the third-party lender "requested that LRA sign a letter indicating that the promissory notes had been paid off once the funds were transferred." *Id.*

BLG alleges that LRA "refused to sign the payoff letter [as presented by the third-party lender]." *Id.* at ¶ 15. Instead, LRA attempted to negotiate "language regarding unrelated agreements." *Id.* Brenes claims that LRA was holding BLG "hostage" by refusing to sign the payoff letter for the third-party lender. *Id.*

Judging LRA to be "unreasonable," BLG's third-party lender agreed "to dispense with the requirement of a payoff letter." *Id.* at 16. With that concession, BLG only needed LRA to provide it with "the current amount owed and the account information necessary to wire the money." *Id.* But, BLG claims, LRA "still refused to disclose the amount owed or the relevant account information." *Id.* So, "BLG eventually gave up the effort to repay LRA." *Id.* at ¶ 17.

Ultimately, BLG obtained "another line of credit," and the new lender required BLG to "set[ ] aside an estimated amount owed to LRA," on which BLG has had to pay interest "since early 2021." *Id.* ¶ 18.

---

[3] A copy of Defendants/Counterclaimants' Answer and Counterclaims (Dkt. 3) is attached as Exhibit D to the Solomon Decl.

2

For its counterclaim, BLG claims that LRA's conduct, as described above, constitutes a breach of the "duty of good faith and fair dealing owed to BLG and Troy Brenes." Counterclaim 1 at ¶ 1. As a result, BLG contends that it does not owe interest after "September 2019" and that LRA must reimburse it for the interest it has been incurring on the amount that the new lender required BLG to "set aside" as a condition for the loan. *Id.* at ¶ 4.

### III. Argument

#### A. Standards on a Motion to Dismiss

The standards on a motion to dismiss under Rule 12(b)(6) are familiar to this Court:

> To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a plaintiff's complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," that "give[s] the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For purposes of the motion to dismiss, all of the "factual allegations contained in the complaint" must be "accept[ed] as true." *Id.* at 572. Though these allegations need not be "detailed," they must "state a claim to relief that is plausible on its face." *Id.* at 555, 570. A complaint is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*City of Coral Springs Police Officers' Ret. Plan v. Farfetch Ltd.*, No. 19-CV-8720 (AJN), 2021 WL 4481119, at *3 (S.D.N.Y. Sept. 30, 2021). These "plausibility" standards apply to motions to dismiss counterclaims, *Erickson Beamon Ltd. v. CMG Worldwide, Inc.*, No. 12 CIV. 5105 NRB, 2014 WL 3950897, at *7 (S.D.N.Y. Aug. 13, 2014).

#### B. BLG's First Counterclaim Fails to State a Claim

BLG and Troy Brenes's first counterclaim alleges that LRA's refusal to sign BLG's new third-party lender's proposed payoff letter and to provide a payoff amount and account instruction breached the "implied duty of good faith and fair dealing."

3

"Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389, 663 N.E.2d 289, 291 (1995). As explained by the Court of Appeals, under this doctrine

> neither party to a contract shall do anything which has the effect of *destroying or injuring the right of the other party to receive the fruits of the contract.* However, this covenant only applies where an implied promise is so interwoven into the contract as to be necessary for effectuation of the purposes of the contract. For this to occur, a party's action must directly violate an obligation that may be presumed to have been intended by the parties. However, the implied covenant does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract.

*Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407–08 (2d Cir.2006) (citations and internal quotation marks omitted, emphasis added).

To state a claim for breach of this implied covenant, "the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff." *Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Com.*, 265 A.D.2d 513, 514, 697 N.Y.S.2d 128, 130 (1999). Like a breach of contract claim, the elements include "the existence of a duty, breach of that duty, causation, and damages." *Hadami, S.A. v. Xerox Corp.*, 272 F.Supp.3d 587, 598 (S.D.N.Y. 2017). BLG and Brenes have failed to do so here.

Absent from the counterclaim is a single plausible allegation that LRA, in fact, prevented BLG from prepaying the Notes. Under the Notes, BLG had the clear and unequivocal right to prepay the Notes at any time. The Notes specifically grant BLG "the right to prepay [the] … Note, either in whole or in part, without any prepayment fee or penalty, but together with interest accrued to the date of prepayment." Solomon Decl Exs. A and B. They also explain how the payment is to be made: "All sums called for, payable, or to be paid hereunder shall be paid in

4

lawful money of the United States of America, which at the time of payment, is legal tender for the payment of public and private debts therein." *Id.*

So, if BLG wanted to pay off the Notes, it simply had to send to LRA the principal plus "accrued interest with the date of prepayment," in legal tender. LRA's cooperation was not required. Yet, BLG makes no claim to have sent LRA the balance due under the Notes.

But what about BLG's argument that LRA refused to provide a payoff amount and wire instructions? Even if true, it is of no moment. *First*, the payoff is easily calculated. The principal of the Notes was $1,100,000 and $500,000. The interest rate was 17.5% per annum, calculated as simple interest. 72 N.Y. Jur. 2d Interest and Usury § 13. The formula for calculating accrued interest is: principal x (annual interest rate/365) x interest days (days from loan to payment). So, for example, if BLG had wanted to settle the Notes on October 29, 2020 (Counterclaim ¶ 16 [p.14]), the payoff amount would have been calculated as follows:[4]

|        | Date of Note | Principal      | Payment Date | Interest days | Interest Rate | Accrued Interest | Payoff         |
|--------|--------------|----------------|--------------|---------------|---------------|------------------|----------------|
| Note 1 | 7/8/2019     | $1,100,000.00  | 10/29/2020   | 479           | 17.50%        | $252,623.29      | $1,352,623.29  |
| Note 2 | 9/12/2019    | $500,000.00    | 10/29/2020   | 413           | 17.50%        | $99,006.85       | $599,006.85    |

*Second*, the Notes do not require LRA to accept a wire transfer. BLG had to make any payment in legal tender. It could have easily done so by sending a bank check.

In addition to its contractual prepayment right, BLG also could have availed itself of the common law right of tender. This doctrine of "tender" is explained as follows:

> The word "tender" is generally defined as an act by which a person produces and offers to another an amount of money which the person considers or admits to be due in satisfaction of a claim or demand of such other person, without any stipulation or condition. It is an offer to pay a debt or discharge a duty, an offer which involves, as a general rule, the actual production of the money and

---

[4] The internet offers many simple interest calculators. *See, e.g.,*
https://www.calculatorsoup.com/calculators/financial/simple-interest-plus-principal-calculator.php and
https://www.thecalculatorsite.com/finance/calculators/simple-interest-calculator.php.

> the placing of it in the power of the person entitled to receive it. The purpose and object of a tender is to enable the other party to accept the money and close the transaction and, thus, to relieve the party making the tender from further liability on the debt or obligation; an unjustifiable refusal of a sufficient, bona fide tender places the refusing party in default and permits the tendering party to exercise remedies for breach of contract.

83 N.Y. Jur. 2d Payment and Tender § 119.

The burden of alleging and proving a valid tender is on the party asserting it as a defense. *Nat'l Sav. Bank of Albany v. Hartmann*, 179 A.D.2d 76, 77, 582 N.Y.S.2d 523, 524 (1992). To be effective, "a tender of payment must be unconditional," *Cardella v. Giancola*, 297 A.D.2d 618, 619, 747 N.Y.S.2d 31, 32 (2002), and "an actual proffer" of the amount due. *Home Sav. of Am., FSB v. Isaacson*, 240 A.D.2d 633, 633, 659 N.Y.S.2d 94, 95 (1997). But a tender requires more than a statement of intent to pay or the request of a payoff figure. *Campbell-Ewald Co. v Gomez*, 577 US 153, 170, 136 S Ct 663, 674, 193 L Ed 2d 571 [2016], *as rev* (Feb. 9, 2016).

Presumably for tactical reasons, BLG elected not to exercise its contractual or common law rights, instead entering into an agreement with a third-party lender to "set aside" the amount due to LRA, rather than paying it to LRA. Whatever the motive, this sort of gamesmanship is not a valid basis for avoiding BLG's repayment obligation or Brenes's guarantee obligation. The counterclaim must be dismissed.

### C. Brenes Waived His Defenses, Cannot Assert Counterclaims, and Has No Standing to Assert a Counterclaim Under the Notes

The "plausibility" standards of *Iqbal* and *Twombly* apply, under Rule 12(f) of the Federal Rules of Civil Procedure, to "the pleading of an affirmative defense, but with recognition that, as the Supreme Court explained in *Iqbal*, applying the plausibility standard to any pleading is a 'context-specific' task." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019); *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 347 (S.D.N.Y. 2020) ("a

6

party asserting affirmative defenses must 'support these defenses with some factual allegations to make them plausible.'").

Based on those plausibility standards, the Court should strike the affirmative defenses asserted by Brenes under the Guarantee Agreement and dismiss the first counterclaim (at least) as to him. This is because his obligation under the Guarantee Agreement is unconditional, it bars counterclaims, and it contains a broad waiver of all defenses except full payment.

### 1. Brenes's Affirmative Defenses and Counterclaim Are Barred by the Waivers In the Guarantee Agreement

Under New York law, when a guarantee provides that the sole defense available to the guarantor is "full payment," that clause is enforceable and to be given full effect. *See JPMorgan Chase Bank, N.A. v. Reifler*, 614 F. App'x 11 (2d Cir. 2015) (affirming district court's limitation of guarantor's defense to "full and final payment of the loan"); *Exp.-Imp. Bank of U.S. v. Agricola Del Mar BCS*, 334 F. App'x 353, 354-55 (2d Cir. 2009) (affirming dismissal of defenses by guarantor because guarantee was unconditional and contained a broad waiver).

As in *JP Morgan*, Brenes's guarantee is unconditional. Section 1(a) of the Guarantee Agreement (Solomon Decl. Ex. C) provides:

> Guarantor hereby *unconditionally* and irrevocably *guarantees* to the Lender the prompt and complete payment when due (whether at the stated maturity, by acceleration or otherwise) of any and all of all present and future indebtedness and obligations of the Borrower, mature or contingent, at anytime and from time to time outstanding, in connection with the Note, including without limitation all interest which may be payable on the liabilities of the Borrower prior to or during the pending of any insolvency or similar proceeding with respect to such person.

Brenes also promised to pay BLG's guaranteed indebtedness to LRA "without setoff or counterclaim." *Id.*

7

Additionally, as in *JP Morgan,* Brenes broadly waived any affirmative defenses (other than full payment). Section 4 of the Guarantee Agreement provides:

> 4. Waivers of Defenses. Guarantor, to the fullest extent permitted by law, waives: (a) all statutes of limitation as to the Indebtedness, this Agreement or otherwise as a defense to any action brought against Guarantor by the Lender; (b) any defense based upon any legal disability of the Borrower or any discharge or limitation of the liability of the Borrower to the Lender, whether consensual or arising by operation of law or any bankruptcy, insolvency, or debtor relief proceeding, or from any other cause; (c) presentment, demand, protest and notice of any kind; (d) *any defense based upon or arising out of any defense which the Borrower may have to the payment or performance of any part of the Indebtedness*; (e) any defense based upon any disbursements by the Lender to the Borrower pursuant to any agreements or instruments governing or securing the Indebtedness whether same be deemed an additional advance or be deemed to be paid out of any special interest or other fund accounts, as constituting unauthorized payments hereunder or amounts not guaranteed by this Agreement; (f) all rights to participate in any security held by the Lender for the Indebtedness; (g) irregularity or unenforceability of any agreement or instrument representing or governing or securing the Indebtedness; (h) any request that the Lender be diligent or prompt in making demands hereunder or under any agreement or instrument representing or governing or securing the Indebtedness; and (i) *any other defense in law or equity (other than the defense that the Indebtedness has been indefeasibly paid in full) which, under applicable law, would release the obligation of a guarantor or surety, until the Indebtedness has been indefeasibly paid in full.*

The unconditional nature of the guarantee plus the waiver of defenses (except payment in full) are enforceable against Brenes, even if BLG could avoid liability based on the affirmative defenses and the counterclaim that it has asserted. *See, e.g., Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 188 F.3d 31, 38 (2d Cir. 1999) (vacating "district court's holding that the general waiver of defenses in this case was insufficient to maintain a guarantors' liability after release of the principal debtor").

*Greater New York Sav. Bank v. 2120 Realty Inc.*, 202 A.D.2d 248, 608 N.Y.S.2d 463 (1994), is directly on point. There, the court held that while the mortgage borrower's

counterclaim for breach the implied duty of good faith should be severed from the foreclosure action and presumably pursued, the same counterclaim by the guarantor could not "overcome the waiver provision in the absence of fraud which has not been made out." *Id.* at 248, 608 N.Y.S.2d at 464.

*Red Tulip, LLC v. Neiva*, 44 A.D.3d 204, 842 N.Y.S.2d 1 (2007), is in accord. There, the Appellate Division held "that because the guaranty signed by [the guarantor defendant] … waived all defenses except 'actual payment,' and because it is further undisputed that the mortgage debt has not been paid, we dismiss the remaining affirmative defenses and grant summary judgment to plaintiff." 44 A.D.3d at 205, 842 at 2. In its reasoning, the Appellate Court characterized the waivers in the guarantee as an "insurmountable obstacle" to the guarantor's asserted affirmative defenses and counterclaims. 44 A.D.3d at 209, 842 N.Y.S.2d at 5.

Because Brenes's guarantee is unconditional and the waiver of defenses is valid and enforceable, under settled New York law (as recognized by the Second Circuit), his affirmative defenses must be stricken and the first counterclaim must be dismissed.

**2.   Brenes is Contractually Barred from Asserting Counterclaims**

Also enforceable is Brenes's promise, in the Guarantee Agreement, not to assert counterclaims. *Fleet Bank v. Petri Mech. Co.*, 244 A.D.2d 523, 524, 664 N.Y.S.2d 462, 463 (1997) ("since the [guarantor] defendants clearly and unequivocally waived their right to interpose any counterclaims in this action, the counterclaim should have been dismissed as a matter of law"). Thus, even if Brenes had not waived his right to assert the first counterclaim, he is barred from bringing it in this action in defense of LRA's claims.

9

### 3. Lacking Privity, Brenes Cannot Assert a Counterclaim Based on an Implied Duty of Good Faith Under the Notes

Even if Brenes could assert a counterclaim against LRA arising out of the payoff circumstances, it would be dismissed as a matter of law because he is not a party to the Notes. As with a claim for breach of contract, privity is an essential element for a claim for breach of the implied duty of good faith and fair dealing. *Four Winds of Saratoga Inc. v. Blue Cross & Blue Shield of Cent. New York Inc.*, 241 A.D.2d 906, 907, 660 N.Y.S.2d 236, 237 (1997). Brenes has not and cannot allege that he was a party to the Notes. That being so, his claim based on the implied duty of good faith and fair dealing concerning BLG's purported effort to pay off the Notes, fails as a matter of law. *Id.* (dismissing claim for breach of implied covenant of good faith by non-parties to a contract); *see, generally, Am.-Eur. Art Assocs., Inc. v. Trend Galleries, Inc.*, 227 A.D.2d 170, 171, 641 N.Y.S.2d 835, 836 (1996) (dismissing claim based on implied duty of good faith and fair dealing because no valid contract existed).

_____

BLG does not have a viable counterclaim and defenses based on LRA's supposed failure to provide a payoff statement or payment instructions. But if it did, those claims and defenses would not be available to Troy Brenes, who gave an unconditional guarantee, waived all defenses except full payment, agreed not to assert counterclaims, and lacks privity to assert claims under the Notes.

### IV. CONCLUSION

BLG had the contractual right to repay LRA whenever it wanted by tendering U.S. dollars equal to the principal and accrued interest through the date of payment. For reasons left unexplained, rather than tendering full payment, BLG "set aside" the money. BLG tactics are costly: it now owes interest to the new lender, while interest continued to accrue on the Notes to

LRA. The decision (bad as it was) was unilateral and voluntary. LRA could not *prevent* BLG from prepaying the Notes; thus, it did not breach any cgimplied duties of good faith and fair dealing. The motion to dismiss the first counterclaim should, therefore, be granted. Finally, Brenes's counterclaim and defenses are barred by his promises and waivers under the Guarantee Agreement, and they also fail under the doctrine of privity.

Dated: New York, New York
       March 29, 2022

                         SOLOMON & CRAMER LLP
                         *Attorneys for Plaintiff/Counterclaim Defendant*

                         By:    /s/Andrew T. Solomon
                                Andrew T. Solomon
                                asolomon@solomoncramer.com

                         25 West 39th St., 7th Floor
                         New York, New York 10018
                         (t) (212) 884-9102
                         (f) (516) 368-3896