UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEGAL RECOVERY ASSOCIATES LLC

    *Plaintiff,*

  -against-

BRENES LAW GROUP, P.C. AND TROY A. BRENES
    *Defendants,*

_____

BRENES LAW GROUP, P.C. AND TROY A. BRENES

    *Counterclaim Plaintiffs*,

  vs.

LEGAL RECOVERY ASSOCIATES LLC; HOWARD B. BERGER, GREGORY GOLBERG; GARY PODELL; LAWRENCE LITIGATION GROUP, LP, and DOES 1-50

    *Counterclaim Defendants,*

_____

**Case No. 22-CV-1778**

### RESPONSE IN OPPOSITION TO LEGAL RECOVERY ASSOCIATES, LLC AND LAWRENCE LITIGATION GROUP, L.P.'S MOTION TO SEVER, STAY AND COMPEL ARBITRATION OF SECOND AND THIRD COUNTERCLAIMS

Brenes Law Group, P.C. and Troy Brenes, Defendants and Counterclaim Plaintiffs, hereby respond to Defendant's Motion to Sever, Stay and Compel Arbitration of the Second and Third Counterclaims (Doc. No. 7).

/ / /

/ / /

I.     **INTRODUCTION**

Brenes Law Group, P.C. and Troy Brenes' Second and Third counterclaims are based on the allegations that in 2019 as part of the underwriting process for Brenes Law Group, P.C. ("BLG") to obtain a line of credit from Legal Recovery Associates, LLC (LRA), BLG was required to provide information regarding all of BLG cases to LRA, including many cases that Lawrence Litigation Group, L.P. ("Lawrence") did not have any fee interest in and that did not arise from or relate the Attorney Association Agreement entered into between BLG and LLG several years before, and that LRA then used this information without notice or permission of Plaintiff to obtain a line of credit from a third party entity by fraudulently claiming rights to the value of BLG's fee interest in all of BLG's cases.[1] LRA then used this line of credit to market for cases through various law firms it established, including Lawrence, which were then referred to other law firms in exchange for a portion of any collected attorney fees.

LRA and Lawrences' (collectively "Movants") Motion argues that BLG is required to arbitrate the Second and Third counter claims against Movants based on the December 2016 Attorney Association Agreement and the December 2017 amended agreement between BLG and Lawrence. BLG and Troy Brenes (collectively "Brenes") dispute this argument as the counterclaims arise from the negotiations and agreement between LRA and Brenes regarding a line of credit and promissory notes in 2019, and the claims would exist regardless of any prior attorney association agreement between BLG and Lawrence.

---

[1] Legal Recovery Associates, LLC and Lawrence Litigation Group, L.P. intentionally misstate the factual basis of the Second and Third Counterclaims as being based on the manner that LLG leveraged LLG's potential profits from the fee interest it held in cases acquired from the attorney association agreement. See, ECF Dkt. No. 3, pp. 2-3; ECF Dkt. No. 3, pp. 12-13, 16-17.  This is not consistent with Plaintiff's allegations.

This dispute reduces to a matter of contract interpretation: did BLG, in executing the attorney association agreements with Lawrence in December 2016 and January 2017 intend to agree to arbitrate any claim against LRA and Lawrence regarding LRA's alleged fraudulent use of information that BLG provided to LRA in 2019 as part of an underwriting process for BLG to open a line of credit with LRA.

## II.  STATEMENT OF FACTS

In December 2016 and January 2017, BLG and Lawrence entered into an attorney association agreement regarding a limited subset of cases to be jointly developed by the firms. See, ECF Dkt. No. 8-1 and 8-2. LRA was neither a party to those agreements, nor mentioned therein. The agreements also contain no mention or reference to BLG establishing a line of credit with LRA, or taking a promissory note from LRA.

The agreements do contain an arbitration provision indicating:

> Any controversy arising out of or related to this Agreement or the breach thereof shall be settled under the law of the District of Columbia without reference or regards to any conflict of laws principles, and shall be resolved via arbitration under the American Arbitration Action, 9 U.S.C. §2, in the District of Columbia, in accordance with the rules of the American Arbitration Association, and judgment entered upon the award rendered may be enforced or appealed by appropriate judicial action pursuant to the District of Columbia Code of Civil Procedure."

The agreements also provide that the law of the District of Columbia will apply to any disputes regarding the agreement.

In 2019, LRA suggested that BLG open a line of credit with LRA. Dkt. No. 3, p. 12. The agreement was that LRA would provide a line of credit between $5,000,000 to $10,000,000. *Id.* As part of the underwriting process, BLG was required to provide information to LRA regarding

all of BLG's cases, including many cases that Lawrence had no interest in and did not arise from or relate to the attorney associated agreement between BLG and LLG. *Id.*

Once the underwriting process was complete, LRA failed to offer a line of credit but instead offered to provide promissory notes on an as needed basis. *Id.* The promissory notes, which were entered into between BLG and LRA, do not contain an arbitration agreement. They in fact expressly require that any action "brought on or in connection with this Note" be pursued in either the United States District Court for the Southern District of New York or the New York State Court.

BLG alleges that LRA used the information gained by LRA from BLG through the underwriting process to fraudulently and without BLG's permission obtain lines of credit from another entity based on the value of BLG's fee interest in all of BLG's retained cases and used those lines of credit to market for, and refer to, or co-counsel those cases with other law firms in exchange for a portion of the legal fees. ECF Dkt. No. 3, pp. 12-13, 16-17. BLG further alleges that LRA then used Lawrence as means to refer out some of those cases gained through this method to other law firms. *Id.*

Pursuant to the requirement that any action "brought on or in connection with" the promissory notes be pursued in a New York court, Plaintiff filed these counter claims in this court.

### III. ARGUMENT

The Second Circuit has identified two issues that must be addressed when a party seeks arbitration: In deciding whether a dispute is arbitrable, we must answer two questions: (1) "whether the parties agreed to arbitrate," and, if so, (2) "whether the scope of [that] agreement encompasses the claims" at issue. *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.,* 117 F.3d

4

655, 666 (2d Cir. 1997). Despite the policy favoring arbitration, "[a]rbitration is entirely a creature of contract." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 104 (2d Cir. 2006). Thus, "which disputes are subject to arbitration are determined entirely by an agreement between the parties . . . . Without the contract, the arbitration . . . never could exist." *Id.* Agreements to arbitrate are enforced "in accordance with their terms." *Volt Info. Sci. v. Bd. of Trustees*, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989). Therefore, "[t]he scope of an arbitration clause, like any contract provision, is a question of the intent of the parties." *S.A. Miner acao Da Trindade-Samitri v. Utah Int'l, Inc.,* 745 F.2d 190, 193 (2d Cir. 1984) (citing *Necchi S.p.A. v. Necchi Sewing Mach. Sales Corp.,* 348 F.2d 693, 696 (2d Cir. 1965), *cert. denied*, 383 U.S. 909, 86 S. Ct. 892, 15 L. Ed. 2d 664 (1966)). As will be discussed below, the facts are clear that neither BLG or Troy Brenes ever agreed to arbitrate with LRA, and these counter claims relate to and arise from BLG's acceptance of two promissory notes from LRA in 2019 as opposed to the attorney association agreement entered into between BLG and Lawrence several years prior.

      **a. Neither BLG or Troy Brenes Ever Agreed to Arbitrate Any Claims With Any Person or Entity other than Lawrence**

"Because arbitrators' authority arises only when the parties agree in advance to that forum, 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,* 252 F.3d 218, 225-26 (2nd Cir. 2001)(citing *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986). Further, arbitration agreement that do not expressly extend the right to compel arbitration to agents or employees of a corporate signatory, nor manifest to or confer third party beneficiary status on such agents or employees, are not

enforceable by agents or employees. See, *McCarthy v. Azure*, 22 F.3d 351, 362 (1st Cir. 1994). Here, it is undisputed that neither BLG nor Troy Brenes ever agreed to arbitrate any claim with any entity or persons other than Lawrence. Indeed, the promissory notes that led to these counterclaims specifically require that any litigation "brought on or in connection with [these] Note[s]" be pursued in either the United States District Court for the Southern District of New York or New York State Court. Therefore, the request to sever, stay and compel arbitration as to the First and Second counterclaims as to LRA and any individual should be denied.

### b. Counterclaims Two and Three Do Not Fall Within the Scope of Arbitration Clause Between BLG and Lawrence

Brenes acknowledges that there is an arbitration agreement between BLG and Lawrence regarding "[a]ny controversy arising out of or related to [the attorney associated agreement between BLG and Lawrence] or the breach thereof." However, the Second and Third counterclaims against Lawrence and the other Counterclaim Defendants are not subject to arbitration, because the factual claims forming the basis of these counterclaims do not pertain to or arise from the attorney association agreement. Rather these claims arise from and relate to the loan agreement between BLG and LRA and would exist regardless of whether an attorney association agreement was ever entered between Lawrence and BLG.

The Second Circuit has explained the necessary inquiry to determine whether a particular dispute falls within the scope of an agreement's arbitration clause as follows:

> a court should undertake a three-part inquiry. First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. See *Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 49 (2d Cir. 2000). Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that "is on its face within the purview of the clause," or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. *Rochdale Vill., Inc. v. Pub. Serv. Employees Union*, 605 F.2d 1290, 1295 (2d Cir. 1979). Where the arbitration

> clause is narrow, a collateral matter will generally be ruled beyond its purview. *See Cornell Univ. v. UAW Local 2300*, 942 F.2d 138, 140 (2d Cir. 1991). Where the arbitration clause is broad, "there arises a presumption of arbitrability" and arbitration of even a collateral matter will be ordered if the claim alleged "implicates issues of contract construction or the parties' rights and obligations under it." *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995).

*Louis Dreyfus Negoce S.A.,* 252 F.3d 218, 224.

Here, Brenes concedes that the arbitration clause would likely be construed as broad. "That there is a 'presumption' of arbitration, however, does not alter the fact that the ultimate purpose of the Court's inquiry is to determine whether the parties intended that the particular claims at issue be arbitrated." *Rosen v. Mega Bloks Inc.,* 2007 U.S. Dist. LEXIS 48479 * at 22 (S.D.N.Y July 6, 2007); see also *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437 (E.D. NY 2009)(noting that "as with any contractual matter, the main concern in deciding the scope of arbitration agreements is to faithfully reflect the reasonable expectation of those who commit themselves to be bound by them." *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 460 (E.D. NY 2009)(internal quote omitted). "[A] court should determine whether the factual allegations that form the basis of a plaintiff's claims implicate construction of the contract or present questions respecting the parties rights and obligations under the contract." *Kuklachev,* 600 F. Supp. 2d 437, 460. "If the factual allegations that form the basis for the claims do not pertain to the contract, the matter is not arbitrable." *Id.* Under this analysis, the Second and Third counterclaims against Lawrence and the other Counterclaim Defendants are not subject to arbitration because the factual allegations forming the basis of Brenes' counter claim do not pertain to or arise from the attorney association agreement and said agreement is not a predicate to these claims.

Brenes' Second and Third Counterclaims are based on the allegations that in 2019 as part of the underwriting process for Brenes Law Group, P.C. ("BLG") to obtain a line of credit from

LRA, BLG was required to provide information regarding all of BLG cases to LRA, including many cases that Lawrence did not have any fee interest in and that did not arise in any way from the attorney association agreement entered into between BLG and LLG several years before, and that LRA then used this information without notice or permission of Plaintiff to obtain a line of credit from a third party entity by fraudulently claiming rights to the value of BLG's fee interest in all of BLG's cases. While Brenes does mention Lawrence's breach of the Attorney Association agreement in the pleadings, these allegations are not the basis, nor a predicate of these counterclaims, and were only included to provide context as to why LRA apparently decided to act in bad faith regarding a separate contract, i.e. the promissory notes, involving BLG and a separate entity.

       Indeed, had the attorney association agreement never existed, Brenes' Second and Third counterclaims would still be viable. Moreover, there is nothing about the attorney association agreements that suggest Brenes had any intent or reason to anticipate that the arbitration clause would somehow apply to loan agreements entered into with a separate entity several years in the future. The attorney association agreements do not mention LRA, nor do they relate to or mention any promissory notes to be taken by BLG. Instead, the Attorney Association Agreements relate to an agreement to jointly represent certain cases and what BLG and Lawrence would contribute to said representation. While Brenes does believe Lawrence breached those agreements, Brenes is not pursuing such claims in this forum. Further, the Second Circuit has previously made clear that just because a claim contains factual allegations related to a contract with an arbitration provision, this does not mean that this is sufficient to bring the claim within the scope of the arbitration clause.

An example of a non-arbitrable claim involving factual allegations related to a contract is found in *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 28 (2d Cir. 1995), in which the court held that a libel claim concerned matters beyond the scope of the contract, despite the fact that the allegedly libelous statements were made pursuant to a delivery of goods under the contract. In *Leadertex*, plaintiff was a small textile converting business, which supplied raw materials to defendant for dyeing, after which plaintiff would sell the finished materials to third parties. *Id*. at 22. The relationship was governed by a contract with an arbitration clause. *Id*. at 22-23. A dispute arose concerning defective goods; plaintiff's customers returned goods to plaintiff, which then refused to pay defendant. *Id*. at 23. At some point, defendant made a defamatory statement to one of the third party customers who had rejected fabrics, claiming that plaintiff was dishonest and incompetent and that it acted with intent to defraud its customers. *Id*. at 28. The Court of Appeals recognized that the defamation claim was closely related to the contract claims, and that because truth is a defense to defamation, resolution of the claim would require examining evidence regarding contractual performance. *Id*. However, "at the same time, the defamatory statement also allegedly contained a number of charges extending beyond core issues of dyeing and finishing goods contracts." *Id*. After finding unhelpful the usual metrics for judging the relationship between the allegations of a complaint and a contract, including the "touch matters" formulation, the Court found that the content of the allegedly defamatory statement extended to matters beyond the parties' contractual relationship. *Id*. "There is nothing to indicate that, when [plaintiff and defendant] included an arbitration clause in their dyeing and warehousing agreement, they could reasonably have expected, or even contemplated, that the clause also would extend to a defamation claim based on statements about subjects other than [defendant's] services for [plaintiff]." *Id*. at 28-29. On that ground, the Court upheld the District

9

Court's order denying defendant's motion to compel arbitration. As in *Leadertex,* Brenes' counterclaims are based on matters unrelated to the Attorney Association Agreements, and there is nothing in those agreements indicating Brenes could reasonably have expected, or even contemplated, that the arbitration clause could somehow extend to a loan agreement with a separate entity that had not yet been contemplated or discussed.

### IV. **CONCLUSION**

For the foregoing reasons, BLG and Troy Brenes respectfully request that the Movant's Motion to Sever and Stay Counterclaims and to Compel Arbitration be denied.

Dated:  March 30, 2022                    Respectfully Submitted,


By:/s/ Troy A. Brenes_____

Troy A. Brenes (admitted PHV)
Brenes Law Group, P.C.
100 Spectrum Center Drive, Ste. 330
Irvine, California 92618
Tel: 949.397.9360
Fax: 949.607.4192
Tbrenes@breneslawgroup.com

Counsel for Defendants and Counterclaim Plaintiffs

## **CERTIFICATE OF SERVICE**

     I CERTIFY that on March 30, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all registered participants.

                                                            /s/Troy A. Brenes