UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LEGAL RECOVERY ASSOCIATES, LLC,

       Plaintiff/Counterclaim Defendant,

   v.

BRENES LAW GROUP, P.C. and TROY
BRENES,

       Defendants/Counterclaimants.

------------------------------------------------------------x

BRENES LAW GROUP, P.C. and TROY A.
BRENES,

       Counterclaim Plaintiffs,

   v.

HOWARD B. BERGER, GREGORY
GOLDBERG, LAWRENCE LITIGATION
GROUP, L.P. and DOES 1-50,

       Counterclaim Defendants.

------------------------------------------------------------x

Case No. 22-CV-1778 (AJN)(BCM)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO SEVER,
STAY AND COMPEL ARBITRATION OF THE SECOND AND THIRD COUNTERCLAIMS**

       Plaintiff Legal Recovery Associates, LLC (LRA) and Counterclaim Defendant Lawrence Litigation Group, L.P. (LLG and, together with LRA, the Movants), respectfully submit this reply memorandum of law in further support of their motion to sever and stay the second and third counterclaims and then, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, to compel their arbitration.

**I.    INTRODUCTION**

       In this action, LRA—a litigation marketing and funding company—sued defendant Brenes Law Group, P.C. for defaulting on two promissory notes and defendant Troy Brenes for

defaulting on his guarantee agreement.[1] In response to these straightforward claims, the Brenes Parties asserted counterclaims not only against LRA but also against LLG and three individuals, Howard Berger, Gary Podell, and Greg Goldberg.[2] Two of these counterclaims, the second and third, arise from a co-counsel relationship formed between the Brenes Parties and LLG through an Attorney Association Agreement. This agreement's broad and mandatory arbitration clause is the predicate for Movants' arbitration motion.

Despite the centrality of the Attorney Association Agreement to its own pleading, the Brenes Parties attempt to reconfigure their counterclaims to relegate the agreement to the status of "context." Notwithstanding this rhetorical effort, it remains that litigation of these counterclaims will necessarily turn almost entirely on interpretation of the Attorney Association Agreement. The Brenes Parties claim that LRA obtained funding from a third-party lender based on the value of BLG's interest in cases that were (and were not) subject to the Attorney Association Agreement. Setting aside the fact that the Brenes Parties do not allege that they suffered any harm from that alleged misconduct, LRA intends to prove that all of the fee interests that it used to obtain third party funding were in fact derived from LLG's interests under the Attorney Association Agreement. It is not plausible for the Brenes Parties to argue that such a dispute is not covered by the broad arbitration clause in that agreement.

## II.  REPLY ARGUMENT

In this Circuit, to determine whether a dispute is arbitrable, a court should "undertake a three-part inquiry":

---

[1] We refer to Brenes Law Group P.C. as "BLG"; Troy Brenes as "Brenes," and together they are the "Brenes Parties." The two promissory notes are the "Notes."

[2] The Brenes Parties have not requested (much less served) a summons for the new counterclaim defendants. If they are ever served and if the case is not stayed, all of the counterclaim defendants are likely to move to dismiss the counterclaims under, at least, Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that "is on its face within the purview of the clause," or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (cleaned up).

The Brenes Parties concede that the arbitration clause in the Attorney Association Agreement is broad (Opp. at 7) and that the presumption of arbitrability applies. With this presumption in place, the burden shifts to the Brenes Parties to show that the dispute at issue is both collateral to the Attorney Association Agreement and does not "implicate issues of contract construction or the parties' rights and obligations under the [agreement]." *Louis Dreyfus*, 252 F.3d at 228-29 (internal quotation omitted). In other words, the Brenes Parties are now compelled to explain away the bulk of the factual allegations in the second and third counterclaims. This is a heavy burden indeed.

Nearly every factual allegation supporting the two counterclaims is based on the Attorney Association Agreement. The statement of facts for the counterclaims consists of 18 paragraphs (Counterclaim at pp. 12-15). Paragraph 1 introduces the "attorney association agreement." Paragraph 2 alleges an amendment to that agreement. Paragraph 3 identifies the persons who negotiated the agreement. Paragraph 4 cites a provision in the agreement requiring compliance with the D.C. ethical rules. Paragraph 5 asserts that Berger and Goldberg steered Brenes and BLG to LRA, "an affiliated entity of LLG," to obtain further financing. Paragraphs 8 to 10 assert

that LLG breached the agreement. Paragraph 11 contains a threat to refer LLG to the D.C. Bar for ethical violations that also arise from the Attorney Association Agreement. Most of the other paragraphs relate to the First Counterclaim, which is not arbitrable. *See* Counterclaim ¶¶ 6, 12-18. Indeed, the only allegation in the statement of facts that is not directly referrable to the Attorney Association Agreement is ¶ 7.[3]

Despite their prominence, the Brenes Parties characterize all of the allegations about the Attorney Association Agreement as "context." (Opp. at 8). According to them, the second and third counterclaims would be viable even "had the [A]ttorney [A]ssociation [A]greement never existed." Opp. at 8. As now explained, they arise from the "underwriting process," through which BLG sought a line of credit from LRA to fund its litigation efforts. Opp. at 7-8. During that process, BLG provided LRA with "information regarding all of BLG['s] cases, including many cases that [LLG] did not have a fee interest in and that did not arise in any way from the [A]ttorney [A]ssociation [A]greement." *Id.* at 8. LRA then misused that "information without notice or permission of [BLG] … to obtain a line of credit from a third-party entity by fraudulently claiming rights to the value of BLG's fee interest in all of BLG's cases." *Id.* at 8.

But even accepting this recontextualization—and overlooking for purposes of the present motion that BLG and Brenes have not articulated any harm that either allegedly suffered by virtue of LRA allegedly misleading a third party lender—it does not go far enough to rebut the presumption of arbitrability. First off, even the allegation the Brenes Parties themselves point to arises directly out of the Association Agreement. To prove, as they allege, that the fees that LRA

---

[3] Paragraph 7 reads: "LRA, Berger, Goldberg and Podell fraudulently and without BLG's permission obtained lines of credit from another entity based on the value of BLG's fee interest in its retained cases and used those lines of credit to market for, and refer to, or co-counsel those cases with other law firms in exchange for a portion of the legal fees. Upon information and belief, this entity was Curiam Capital."

4

allegedly misused did not "arise in any way" from the Attorney Association Agreement, the Brenes Parties will have to refer to and ask a court (or arbitrator) to interpret the agreement.

Moreover, even if the Brenes Parties do not intend to base their case on the Attorney Association Agreement, certainly LRA intends to argue and prove that all of the fees that it pledged to any lender were properly the subject of the agreement. And the law is clear that the Court is not bound by how parties plead their claims. Arbitrability is, instead, answered by focusing

> on the allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying the claims "touch matters" covered by the parties' ... agreements, then those claims must be arbitrated, whatever the legal labels attached to them.

*Collins,* 58 F.3d at 20-21 (*quoting Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987) (*citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 622 n.9 (1985))).

The legality of LRA's use of information about cases that are subject to the Attorney Association Agreement necessarily implicates an interpretation and application of that agreement. Furthermore, while the Brenes Parties emphasize the allegation that the information about some of the cases—which LRA somehow "misused" to obtain third-party credit—were *not* subject to the Attorney Association Agreement, they implicitly admit that other cases were subject to it. Thus, several key questions—such as whether particular cases are subject to the agreement, whether LRA misused information about those cases, and whether LLG was authorized to permit its affiliate, LRA, to use that information to borrow money from a third-party lender—necessarily "touch" the Attorney Association Agreement and must be arbitrated.

5

Additionally, one might also reasonably ask: if the Attorney Association Agreement is truly irrelevant, why did the Brenes Parties name LLG as a counterclaim defendant? After all, the only connection between the two is the Attorney Association Agreement.

### III.     CONCLUSION

The Brenes Parties brought LLG into this case and this forum, but most of the allegations supporting their claim refer to an agreement that mandates arbitration. Even as reframed, the two counterclaims are still sufficiently related to the Attorney Association Agreement with LLG to require arbitration

In any event, the Brenes Parties' counterclaims, as now explained (albeit without the details required to meet the pleading standards), raise serious questions of standing, which is a threshold issue that ought to be addressed.

Dated: New York, New York
April 6, 2022

SOLOMON & CRAMER LLP
*Attorneys for Plaintiff Legal Recovery Associates, LLC and Third-Party Defendant Lawrence Litigation Group, L.P.*

By:     /s/Andrew T. Solomon
Andrew T. Solomon
asolomon@solomoncramer.com

25 West 39th St., 7th Floor
New York, NY 10018
(212) 884-9102

6