# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

LEGAL RECOVERY ASSOCIATES LLC

      *Plaintiff,*

     -against-

BRENES LAW GROUP, P.C. AND TROY A. BRENES
      *Defendants,*

**Case No. 22-CV-1778**

---

BRENES LAW GROUP, P.C. AND TROY A. BRENES

      *Counterclaim Plaintiffs*,
    vs.

LEGAL RECOVERY ASSOCIATES LLC; HOWARD B. BERGER, GREGORY GOLBERG; GARY PODELL; LAWRENCE LITIGATION GROUP, LP, and DOES 1-50

      *Counterclaim Defendants,*

---

## <u>RESPONSE IN OPPOSITION TO LEGAL RECOVERY ASSOCIATES, LLC's MOTION TO DISMISS THE FIRST COUNTERCLAIM AND TO STRIKE AFFIRMATIVE DEFENSES</u>

      Brenes Law Group, P.C. and Troy Brenes, Defendants and Counterclaim Plaintiffs,

hereby respond to Plaintiff's motion to dismiss the first counterclaim and to strike affirmative

defenses.

/ / /

/ / /

## TABLE OF CONTENTS

TABLE OF CONTENTS …………………………………………….………..………… i

TABLE OF AUTHORITIES …………………………………………….…………… ii

I.      ISSUES PRESENTED………………………………………….....….… 3
II.     STATEMENT OF FACTS …………….....………………….………....... 3
III.    STANDARDS ..…………………………………………..…..…… 7
        a.  Counterclaims ……………………………………………………… 7
        b.  Affirmative Defenses ……………………………………………..… 7

IV. ARGUMENT……………………………………………..……………...… 8

        a.  BLG and Brenes Adequately Pled a Claim for Breach of Duty of
            Good Faith And Fair Dealing…..…………………………….…….…..... 8

        b.  LRA's Argument Regarding Tender Is Disingenuous
            and Unsupported ……………………………………….…….…………12

        c.  The Guarantee Is Unenforceable As the Alleged Default
            Under the Promissory Note Was Directly Caused By
            LRA's Wrongful Conduct In Preventing Either BLG
            or Brenes From Repaying the Promissory Note ………………….....…… 14

        d.  The July 8, 2019 Promissory Note and Associated
            Guarantee Are Invalid Due to A Failure of Consideration, Which Is
            a Challenge that Cannot Be Waived By An Absolute and
            Unconditional Guarantee Containing A Waiver of Defenses
            and Counter Claims ……………….....……………………………….. 16

        e.  Because LRA Refused to Accept the July 8, 2019 Promissory
            Note and Instead Counteroffered With A Modified Promissory
            Note on July 10, 2019, the July 8, 2019 Promissory
            Note and Associated Personal Guarantee Were Rendered a Nullity ………… 18

        f.  As Brenes Would Not Be Liable Under Any Personal Guarantee
            Unless and Until BLG Defaulted, Brenes Can Plead Any Defense
            or Counter Claim that BLG Could Have Pled ……………………………… 20

        g.  To Extent LRA Argues and the Court Agrees that Any Defense or
            Counterclaim Discussed Herein or Supporting Facts Thereof Are
            Not Adequately Pled, BLG and Brenes Request Leave to Amend
            the Answer and Counterclaims ……………………………………..…… 21
V.  CONCLUSION…………………………………………………………………21

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                   **Page**

*Ashcroft v. Iqbal*,

      556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) …………………………… 7

*Bell Atl. Corp. v. Twombly*,

      550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ……………………………… *7*

*Campbell-Ewald Co. v Gomez*,

      577 US 153, 136 S Ct 663, 674, 193 L Ed 2d 571 [2016] ………………………… 13

*Canterbury Realty & Equipment Corp. v. Poughkeepsie Sav. Bank*,

      135 A.D. 2d 102, 524 N.Y.S. 2d 531, 533 (N.Y. App. Div. 1988) ………………………… 14

*Dalton v. Educational Testing Serv.,*

      87 N.Y.2d 384, 387 (1995) …………………………………………………………… 8

*Erickson Beamon Ltd. v. CMG Worldwide, Inc.*,

      2014 U.S. Dist. LEXIS 112437 at *8 (S.D.N.Y Aug. 13, 2014)…………………...….. 8

*Faunus Grp. Int'l, Inc.* v. *Ramsoondar*,

      No. 12 Civ. 6927, 2014 U.S. Dist. LEXIS 67838, 2014

      WL 2038884, at **7-8 (S.D.N.Y. May 16, 2014) ………………………………… 17

*Four Winds of Saratoga Inc. v. Blue Cross & Blue Shield of Cent. New York Inc.*,

      241 A.D.2d 906, 907, 660 N.Y.S.2d 236, 237 (1997) …………………………………… 20

*Kaluczky v. City of White Plains*,

      57 F.3d 202, 206 (2d Cir. 1995)……………………………………….……………….. 7

*Hall & Co. v. Continental Cas. Co.*,

      34 A.D.2d 1028, 310 N.Y.S.2d 950 (1970), *aff'd*, 30 N.Y.2d 517, 330 N.Y.S.2d 64,

      280 N.E.2d 890 (1972) …………………………………………………………… 18, 19

*Independent Energy Corp. v. Trigen Energy Corp.*,

      944 F. Supp. 1184, 1199 (S.D.N.Y. 1996) ……………………………………………… 17

*Milliken & Co. v. Gans*,

82 A.D.2d 781, 440 N.Y.S.2d 655 (1981) …………………………………………………….. 20

*Millgard Corp. v. E.E. Cruz/ Nab/ Frontier-Kemper*,

2002 U.S. Dist. LEXIS 23921 at \*47 (S.D.N.Y. Dec.12, 2002) ………………………….. 20

*Murphy v American Home Prods. Corp.*

, 58 N.Y.2d 293, 304 (1983) …………………………………………………………..…….. 8

*Red Tulip, L.L.C. v. Neiva*,

44 A.D. 3d 204, 211-212, 842 N.Y.S.2d 1, 7 (N.Y. App. Div. 2007) ……………………… 14

*Renegade Tech. Group, Inc. v. Pali Capital, Inc*.,

2011 Ariz. App. Unpub. LEXIS 1605 \*\*19-20, 2011 WL 6885992 (Dec. 29, 2011) ……… 14

*Rowe v Great Atl. & Pac. Tea Co.*,

46 N.Y.2d 62, 69 (1978) ………………………………………………………………….. 8, 9

*Smith v General Acc. Ins. Co.*,

91 N.Y.2d 648, 652-653, (1998) …………………………………………………………….. 8

*Walcott v. Clevite Corp.*,

13 NY2d 48, 55-56, 191 NE2d 894, 241 NYS2d 834 (1963) ………………………………. 20


**Other Authorities**

Fed. R. Civ. P. 15(a) …………………………………………………………………………… 21

## I.     ISSUES PRESENTED

**a.**     Whether Brenes Law Group, P.C. adequately pled a claim for breach of duty of good faith and fair dealing against Legal Recovery Associates LLC based on its refusal to disclose the amount owed under the promissory notes, refusal to disclose account information such that Brenes Law Group, P.C. could repay the settlement funds by wire transfer, and refusal to provide a letter confirming all funds had been repaid to LRA unless said letter included a statement that that a separate and unrelated attorney association agreement between Brenes Law Group, P.C. and another law firm was "valid, enforceable, [and] in good standing."

**b.**     Whether Troy Brenes' counterclaims and defenses are invalid by operation of the July 9, 2019 Guarantee Agreement, which was provided in conjunction with the July 9, 2019 Promissory Note,[1] or by an alleged lack of standing.

## II.     STATEMENT OF FACTS

On July 9, 2019, Howard Berger, on behalf of Legal Recovery Associates, electronically mailed a proposed promissory note offer to Troy Brenes ("Brenes") on behalf of Brenes Law Group, P.C. ("BLG"). ECF Dkt. No. 3 (hereinafter "Defendants' Answer and Counterclaims") ¶ 7 and Ex. 1.[2] Included in LRA's email communication was a request for a Personal Guarantee from Brenes in favor of LRA regarding the July 8, 2019 Promissory Note.[3]

BLG and Brenes executed the documents and returned them via electronic mail on July 9, 2019 labeled as "Signed Promissory Note 7.9.19.pdf" and "Notarized Guarantee Agreement." See, Ex. 1 to Defendants' Answer and Counter Claims; Guarantee Agreement.

---

[1] As will be described below, the first promissory note was provided to Defendants and signed and returned to Plaintiffs on July 9, 2019, although it was titled July 8, 2019 on the top right of the document. The Plaintiff refused to accept the contract and demanded a new promissory note on July 10, 2019. Reference to either the July 8 or July 9 Promissory note in Defendants' brief references the first Promissory Note.

[2] This Promissory Note shall be referred to as the "July 8, 2019 Promissory Note" hereinafter.

LRA refused, however, to accept the July 8 Promissory Note and would not provide the agreed upon consideration, i.e. LRA refused to provide the funds as required under the Promissory Note. Defendants' Answer and Counterclaims ¶ 7. Instead, LRA demanded that Plaintiff sign a new Promissory Note on July 10, 2019. *Id.* BLG signed and returned the new Promissory Note (hereinafter the July 10, 2019 Promissory Note).

There is no allegation or evidence in the record that LRA ever signed the Guarantee Agreement relating to the July 8, 2019 Promissory Note.[4] Further, there is no allegation or evidence in the record that LRA ever asked for another guarantee agreement regarding the July 10, 2019 Promissory Note.

The July 8, 2019 Promissory Note, the July 10, 2019 Promissory note, as well as the September 12, 2009 Promissory Note allowed BLG to prepay the notes at any time without any instruction or limitation regarding the manner of repayment with the exception that it had to be in legal tender. See, ECF Dkt. No. 18-1; 18-2; Ex. 1 to Defendants' Answer and Counterclaims. The relevant language provided the following:

> All sums called for, payable, or to be paid hereunder shall be paid in lawful money of the United States of America, which, at the time of payment, is legal tender for the payment of public and private debts therein.
>
> The Maker shall have the right to prepay this Note, either in whole or in part, without any prepayment fee or penalty, but together with interest accrued to the date of prepayment.

*Id.*

All three Promissory Notes provided that payments on the notes would be due from BLG as it resolved product liability cases, and that LRA had the option to accelerate full repayment if: (a) repayment was not made when due, (b) any default occurs in the performance of any

---

[3] A true and correct copy of the relevant email chain is attached to Defendants' Answer and Counterclaims as Ex. 1, and a copy of Guarantee Agreement is provided at ECF Dkt. No. 18-3 (hereinafter "Guarantee Agreement").

covenant, obligation, warranty or provision contain the note; (c) any warranty, representation, financial information or statement made or furnished to LRA by BLG prove to have been false in any material respect when made; (d) any bankruptcy claims commenced regarding BLG or its partners or principals. *Id.*

The July 10, 2019 Promissory differed from the July 8 Promissory Note in substantial ways that altered the rights and obligations of the parties, and would have exposed Brenes, as a Guarantor, to substantial additional personal risk had he been asked to guarantee the July 10, 2019 Promissory Note or any subsequent notes. These changes include, but are not limited to, the following:

> As collateral security for the indebtedness, obligations and other liabilities of Maker to Lender hereunder, whether now or hereafter arising, Maker hereby transfers, grants, assigns and pledges to Lender a continuing first-priority, perfected security interest in all of Maker's right, title and interest in, to and under the following property, whether now or hereafter existing, and whether now owned or hereafter acquired (collectively, the "Collateral"): (a) all proceeds, receivables, property, cash and other consideration payable to Maker or any of its affiliates, in connection with the Case (whether as a result of judgment, settlement or otherwise), including, without limitation, contingent fees, common benefit fees, reimbursable expenses and any interest awarded or later accruing on the foregoing; and (b) all proceeds of any of the property described in the preceding clause (a). Maker shall take all steps necessary to perfect and evidence the perfection of the first-priority security interest granted herein, and hereby covenants and agrees to take all such actions in connection therewith as Lender may reasonably request, including, but not limited to, executing and delivering all further instruments and documents, and any other actions relating to the renewal or extension of any provision for the continuing first-priority perfected security interest of Lender in the Collateral, to carry into effect the purposes of this Note or better to assure and confirm the validity, enforceability and priority of Lender's security interest in the Collateral or to enable Lender to exercise and enforce its rights and remedies hereunder or under the UCC. Maker hereby irrevocably authorizes Lender to file a UCC financing statement naming Maker as debtor and Lender as secured party and describing the Collateral.
>
> Maker hereby represents, warrants and covenants for the benefit of Lender as follows: (g) it is and will be at all times the legal and beneficial owner of the

---

[4] The Guarantee Agreement attached to the LRA's Complaint and the Solomon Declaration was not signed by LRA.

Collateral, free and clear of any lien, security interest, option or other charge or encumbrance except those of the foregoing created by this Note;….(i) it has entered into a retainer agreement with each client it represents in the Case, which retainer agreements comply with all applicable laws, rules and regulations (including all applicable rules of professional conduct), are enforceable in accordance with their respective terms, and create a right of Maker to be paid fees for the legal services rendered by it to the applicable clients; (j) it shall comply in all respects with all applicable laws, rules, regulations and orders and shall not use any proceeds of the loan evidenced hereby in any manner that violates any applicable law, rule, regulation or order.

***

No failure on the part of Lender to exercise, and no delay in exercising, any right, power, privilege or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof by Lender preclude any other or further exercise thereof or the exercise of any other right, power, privilege or remedy of Lender. No amendment or waiver of any provision of this Note, nor consent to any departure by the Maker therefrom, shall in any event be effective unless the same shall be in writing and signed by Maker, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

*Id*.

The Guarantee Agreement by its terms was limited to the July 8, 2019 Promissory Note. See, ECF Dkt. No. 18-3 p. 2 of 8. (Noting under "Definitions" that the Guarantee obligation were limited to the promissory note issued on same date and "herewith," and noting under "Recitals" that the guarantee was only as to the obligations of the Borrower under the Note.). The Guarantee Agreement did require repayment unless and until "default of the Borrower with respect to any payment when due…." See, ECF Dkt. 18-3 p. 2 (page 1 of the Guarantee Agreement). Under Section 1(b) of the Guarantee Agreement, Brenes' liability was further expressly limited notwithstanding any statement to the contrary to situations where the "Borrower fails to repay any indebtedness [owed under the July 8 Promissory Note] as result of" certain limited circumstances. None of these circumstances accounted for where BLG repeatedly tried to repay the debt but LRA acted wrongfully to prevent BLG from being able to do so. *Id.*

In September 2020, BLG sought to repay the entire debt owed to LRA stemming from all promissory notes taken by BLG from LRA, including all accrued interest. Defendants' Answer and Counterclaims ¶ 12.

BLG negotiated a new line of credit from a third-party entity that included the requirement of prepayment of all debts owed to LRA. *Id.* at ¶ 14. The third-party entity simply requested that LRA sign a letter indicating the promissory notes had been paid off once the funds were transferred. *Id.*

In bad faith, LRA refused to sign the payoff letter. *Id.* at ¶ 15. LRA demanded that the letter, which solely involved repayment of loans between BLG and LRA, include language regarding unrelated agreements between BLG and another law firm. *Id.* Specifically, LRA demanded the letter include language stating that BLG's attorney association agreement between BLG and another law firm was "valid, enforceable, [and] in good standing." *Id.* Troy Brenes repeatedly explained to agents of LRA that it was improper to hold BLG's ability to pay its debts to LRA and obtain alternative funding hostage by demanding that BLG falsely state that an agreement with a separate entity not having anything to do with those debts was enforceable and in good standing. *Id.* However, LRA refused to withdraw its bad faith demand.

Seeing the unreasonable response from LRA, BLG's third-party credit provider agreed to dispense with the requirement of a payoff letter. *Id.* at ¶ 16. Therefore, on October 29, 2020, BLG notified LRA and Berger that the payoff letter was no longer necessary and that all BLG needed to pay off all debts owed by BLG to LRA was the current amount owed and the account information necessary to wire the money. *Id.* Despite this communication and numerous additional communications through January 2021, LRA still refused to disclose the amount owed

or the relevant account information so that BLG could pay off the debts owed to LRA pursuant to all promissory notes. *Id.*

BLG eventually gave up the effort to repay LRA as it was clear that LRA would not cease its bad faith efforts to hold BLG hostage by preventing repayment from the third party lender and thereby preventing other lenders to work with BLG. *Id.* at ¶ 17.

BLG was able to eventually negotiate another line of credit, which included setting aside an estimated amount owed to LRA. *Id.* at ¶ 18.

### III.    STANDARDS

#### a.  Counterclaims

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  The court must accept as true material facts alleged in the complaint and draw all reasonable inferences in the non-movant's favor. *See Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir. 1995).

#### b.  Affirmative Defenses

To survive a motion to strike Affirmative Defenses pursuant to Rule 12(f), Defendants "must only state their affirmative defenses pursuant to Rule 8(c) and need not meet the

plausibility standard of *Twombly* and *Iqbal*." *Erickson Beamon Ltd. v. CMG Worldwide, Inc.*, 2014 U.S. Dist. LEXIS 112437 at *8 (S.D.N.Y Aug. 13, 2014).

IV.    **ARGUMENT**

a.    **BLG and Brenes Adequately Pled a Claim for Breach of Duty of Good Faith And Fair Dealing**

In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance. *Smith v General Acc. Ins. Co.*, 91 N.Y.2d 648, 652-653, (1998). This covenant embraces a pledge that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Dalton v. Educational Testing Serv.,* 87 N.Y.2d 384, 387 (1995). While the duties of good faith and fair dealing do not imply obligations "inconsistent with other terms of the contractual relationship," *Murphy v American Home Prods. Corp.,* 58 N.Y.2d 293, 304 (1983), they do encompass "any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Rowe v Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 69 (1978)(quoting 5 Williston, Contracts § 1293, at 3682 (rev. ed. 1937)). LRA contends that the counterclaim for breach of the duty of good faith and fair dealing should be dismissed because BLG allegedly did not plead any facts that would allow a trier of fact to draw an inference that LRA interfered with any of BLG's rights under the agreement, including the ability to repay. This argument fails for multiple reasons.

The promissory notes provided that BLG could repay the loans at any time without any instruction or limitation regarding the manner of repayment with the exception that it had to be in legal tender.[5] The benefit of these provisions to BLG was that the contract could be repaid at any

---

[5] See, ECF Dkt. Nos. 18-1 and 18-2, p. 2 of 5. ("All sums called for, payable, or to be paid hereunder shall be paid in lawful money of the United States of America, which, at the time of payment, is legal tender for the payment of

time and in any manner that counted as legal tender in order to prevent further interest from

accruing. These provisions also benefited BLG in that it allowed BLG the option to obtain

alternative financing with better terms so long as LRA was repaid. However, LRA acted in bad

faith to prevent BLG from obtaining the benefit of these terms by preventing BLG from being

able to repay the promissory notes by: (1) refusing to disclose the amount owed, (2) refusing to

disclose account information necessary for BLG to wire repayment in legal tender, (3) and by

demanding terms be inserted into a payoff letter required by Defendants' new lender that had no

relevance to the promissory notes or repayment thereof, but rather sought to force Defendants

into improper concessions regarding a co-counsel relationship with a separate entity. ECF Dkt.

No. 3 ("Defendant's Answer and Counterclaims), pp. 14-15. As will be discussed below, each of

these allegations are more than sufficient to allow the Court to draw a reasonable inference that

LRA sought to deny BLG the benefits of the contract.

The clearest and most simple evidence of LRA's bade faith was its refusal to disclose the

amount owed such that BLG could repay the debt. The duty to act in good faith includes "any

promises which a reasonable person in the position of the promisee would be justified in

understanding were included." *Rowe v Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 69

(1978)(quoting 5 Williston, Contracts § 1293, at 3682 (rev. ed. 1937)). Any reasonable person in

the position of BLG would be reasonably justified in believing that the contract included a

promise by LRA to disclose the amount owed so that BLG could ensure that the total amount

owed had been repaid. The only reasonable explanation for LRA refusing to provide this

---

public and private debts therein. *** The Maker shall have the right to prepay this Note, either in whole or in part, without any prepayment fee or penalty, but together with interest accrued to the date of prepayment.").

information is that LRA was seeking to prevent BLG from repaying the debt as allowed in the promissory notes.

LRA's argument that regardless of LRA's bad faith BLG could still have ascertained the amount owed on its own is unavailing for several reasons. First, the argument fails to account for the fact that there are multiple ways to determine how much interest had accrued and that the contract was silent as to method to be applied to the amount owed under the promissory note. See, ECF Dkt. Nos. 18-1 p. 2; 18-2 p. 2 (Footnote 1 of both promissory notes indicates the drafter should consider specifying how interest accrual will be calculated but this clarification was never made). Among the most common conventions are 30/360, 30/365, actual/360, actual/365, and actual/actual.[6] These approaches vary in the following ways:

- 30/360 - calculates the daily interest using a 360-day year and then multiplies that by 30 (standardized month).
- 30/365 - calculates the daily interest using a 365-day year and then multiplies that by 30 (standardized month).
- actual/360 - calculates the daily interest using a 360-day year and then multiplies that by the actual number of days in each time period.
- actual/365 - calculates the daily interest using a 365-day year and then multiplies that by the actual number of days in each time period.
- actual/actual - calculates the daily interest using the actual number of days in the year and then multiplies that by the actual number of days in each time period.

The method used results in a substantial difference in the amount owed. Below is a table illustrating how the interest accrual method impacts the amount owed using the first promissory note amount and the same time frame used by LRA in its example:

| Date of Note | Principal | Payment Date | Interest Days | Interest Rate | Accured Interest | Payoff | METHOD |
|---|---|---|---|---|---|---|---|
| 7/8/2019 | $1,100,000 | 10/29/2020 | 479 | 17.50% | $ 252,623.29 | $ 1,352,623.29 | actual/365 days |

---

[6] **See,** https://www.investopedia.com/terms/d/daycount.asp.

| 7/8/2019 | $1,100,000 | 10/29/2020 | 479 | 17.50% | $ 256,131.94 | $ 1,356,131.94 | actual/360 days |
|----------|-----------|-----------|-----|--------|--------------|-----------------|-----------------|
| 7/8/2019 | $1,100,000 | 10/29/2020 | 479 | 17.50% | $237,328.77 | $1,337,328.77 | 30/365 |
| 7/8/2019 | $1,100,000 | 10/29/2020 | 479 | 17.50% | $240,625.00 | $1,340,625.00 | 30/360 |
| 7/8/2019 | $1,100,000 | 10/29/2020 | 479 | 17.50% | $252,188.11 | $1,352,188.11 | actual/actual |

LRA's conclusion that the appropriate method was "(annual interest rate/365) x interest days" is not supported by any allegation in the pleadings or the promissory notes themselves. There were also concerns as to whether LRA would deem the interest accrual as having begun on July 8, 2019 or later, given that LRA refused to honor the July 8, 2019 promissory and demanded a revised contract a few days later. Given LRA's refusal to disclose the amount owed, BLG had no way of determining what amount should be repaid.

LRA also acted in bad faith by refusing to disclose account information sufficient to allow BLG to repay the debt via wire transfer. The promissory notes did not provide any instruction or limitation regarding the manner of repayment with the sole exception that it had to be in legal tender. Therefore, any reasonably person in the position of BLG would be reasonably justified in believing that the promissory notes allowed repayment via wire transfer – which is legal tender. Repayment by wire transfer is highly beneficial in that it ceases accrual of interest more quickly than regular mail, guarantees the repayment amount is received by the correct parties, and prevents any claim that the repayment funds were not actually received. LRA had no legitimate basis for refusing to accept repayment via wire transfer – particularly when LRA also refused to disclose any alternative location for the funds to be sent.

Finally, LRA also acted in bad faith by refusing to agree to sign a pay-off letter if and when LRA was fully repaid under the promissory notes unless the letter included language that had no relevance to the promissory notes or repayment thereof, but rather sought to force

11

Defendants into improper concessions regarding a co-counsel relationship with a separate entity. Although not an express term of the promissory note, a person would be reasonably justified in believing that the promissory notes would include a promise by LRA to confirm repayment had been made once LRA had been fully repaid. LRA's refusal to agree to confirm this in writing resulted in months of delay and substantial additional accrued interest as BLG's new lender initially would not move forward with the line of credit absent confirmation of pay-off by LRA. Ultimately after much delay, BLG's new lender agreed to forgo the payoff letter so long as a sum more than sufficient to repay LRA was set aside.

### b. **LRA's Argument Regarding Tender Is Disingenuous and Unsupported**

LRA argues that BLG cannot plausibly state a claim for breach of the duty of good faith and fair dealing against LRA because BLG could allegedly have just availed itself of the "common law right of tender." This argument fails because Plaintiff did in fact plead facts demonstrating BLG made a valid tender offer. Moreover, Defendants intentionally refused to disclose the amount owed or information allowing Plaintiff to actually make the payment, which LRA appears to be arguing is necessary for a valid tender.

Section 3-603 of the Uniform Commercial Code states the following regarding "Tender of Payment:"

(a) If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument, the effect of tender is governed by principles of law applicable to tender of payment under a simple contract.

(b) If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an indorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates.

(c) If tender of payment of an amount due on an instrument is made to a person entitled to enforce the instrument, the obligation of the obligor to pay interest after

the due date on the amount tendered is discharged. If presentment is required with respect to an instrument and the obligor is able and ready to pay on the due date at every place of payment stated in the instrument, the obligor is deemed to have made tender of payment on the due date to the person entitled to enforce the instrument.

U.C.C. § 3-603.[7]

In this case, repeatedly notified LRA that it was ready, willing and able to pay off the entire debt owed to LRA without any limitation or condition. All BLG asked for was confirmation of the final amount owed and account information so that all funds could be wired to LRA's account. LRA refused to respond as to the amount owed, wiring instructions, or any other instructions for where and how to repay the debt. BLG's alleged actions meet the requirements of tender, particularly in light of LRA's bad faith refusal to respond.

LRA's reliance on *Campbell-Ewald Co. v Gomez*, 577 US 153, 136 S Ct 663, 674, 193 L Ed 2d 571 [2016], *as rev* (Feb. 9, 2016) is unavailing. The case involved the question of whether "an unaccepted offer to satisfy the names plaintiff's individual claim [was] sufficient to render a case moot when the complaint seeks relief on behalf of the plaintiff and a class of persons similarly situated." *Id.* at 156, 170. The case did not address the requirements for a valid tender offer under common law. While the concurrence does contain some *dicta* discussing tender offers, there is no indication that the requirements of a tender offer would not be met by an entity stating that it was ready and willing to pay all debt owed as soon as the Defendant confirmed the amount and the method of payment. *Id.*

---

[7] Available at https://www.law.cornell.edu/ucc/3/3-603

**c.  The Guarantee Is Unenforceable As the Alleged Default Under the Promissory Note Was Directly Caused By LRA's Wrongful Conduct In Preventing Either BLG or Brenes From Repaying the Promissory Note**

Even where a guarantor of a contract has provided a broad unconditional guarantee and has waived all defenses and counterclaims, including as to the enforceability of the underlying contract, the guarantor may still avoid liability under the guarantee if the default or acceleration of repayment in the underlying contract was triggered by wrongful conduct of the beneficiary of the guarantee. See e.g., *Canterbury Realty & Equipment Corp. v. Poughkeepsie Sav. Bank*, 135 A.D. 2d 102, 524 N.Y.S. 2d 531, 533 (N.Y. App. Div. 1988)(holding that despite the language of the unconditional guarantees under which the guarantors waived any of Canterbury's defenses to the enforceability of the primary obligation, the guarantor could still challenge enforceability of the guarantee and underlying contract to the extent the beneficiary of the guarantee brought about the condition precedent on the underlying contract, i.e. default, through wrongful conduct); *Red Tulip, L.L.C. v. Neiva*, 44 A.D. 3d 204, 211-212, 842 N.Y.S.2d 1, 7 (N.Y. App. Div. 2007)(recognizing principle from *Canterbury* that if bank brought about default through wrongful conduct than the guarantee associated with the contract would not be enforceable despite the guarantors having offered an "absolute and unconditional" guarantee and having waived all defenses and counterclaims); *Renegade Tech. Group, Inc. v. Pali Capital, Inc*., 2011 Ariz. App. Unpub. LEXIS 1605 **19-20, 2011 WL 6885992 (Dec. 29, 2011)(recognizing principle from *Canterbury* that a guarantee will not be enforced if the default on the associated contract was brought about by wrongful conduct).

In *Canterbury Realty & Equipment Corp.,* Poughkeepsie Savings Bank ("Bank") provided a loan to Canterbury Realty and Equipment Corporation ("Canterbury") on February 9, 1983. 135 A.D. 2d 102, 103. As part of the loan transaction, Canterbury Industries ("CI"), the

14

parent corporation of Canterbury, and other individuals, signed instruments under which they "irrevocably and unconditionally [guaranteed] * * * payment when due, whether by acceleration or otherwise, of any and all liabilities of [Canterbury] to the Bank." *Id.* at 104. The guarantee also provided that "[no] invalidity, irregularity or unenforceability of all or any part of the liabilities hereby guaranteed * * * shall affect, impair or be a defense to this guaranty." *Id.* The guarantee agreement authorized the Bank to accelerate the total amount due under the loan and, without notice to Canterbury, demand payment thereof from the guarantors upon the happening of various events,  among which those relevant here were "an adverse change in the financial condition of [Canterbury], or suspension of business of [Canterbury] * * * or if the Bank deems itself insecure." *Id.* On February 2, 1984, the Bank notified Canterbury that it would no long honor Canterbury's checks and would retain all of Canterbury's future receivables. *Id.* at 105. The Bank then gave Canterbury and the guarantors written notice of default, acceleration and demand for payment of Canterbury's debt in full. *Id.* Litigation ensued, which included a motion for summary judgement by the bank against the guarantors to collect the amounts owed under the underlying contract in light of the unconditional guarantees and waiver of defenses. *Id.* at 105-106.

On appeal, the court noted "[i]n our view, Supreme Court correctly denied the Bank's motion for summary judgment on its counterclaims, despite the language of the unconditional guarantees under which the guarantors effectively waived any of Canterbury's defenses to the enforceability of the primary obligation." *Id.* at 106. The guarantors only obligated themselves unconditionally to make payments on Canterbury's liabilities "when due." *Id.* The court explained that to the extent the Bank brought about the condition precedent that allowed it to accelerate the loan repayments and the default through wrongful conduct, then the guarantors

15

would be excused from their obligations. *Id.* at 106-108. "As Justice Holmes vividly put it in applying the principle to an analogous situation: 'If, within the time allowed for performance the plaintiff made performance [by the primary obligor] impossible, it is unimaginable that any civilized system of law would allow it to recover [against the surety] upon the bond for a failure to perform.'" *Id.* at 107-108 (citing *Porto Rico v. Title Guaranty & Surety Co.*, 227 U.S. 382, 389 (1913)).

Here, the Guarantee Agreement did require repayment unless and until "default of the Borrower with respect to any payment when due…." See, ECF Dkt. 18-3 p. 2 (page 1 of the Guarantee Agreement). Under Section 1(b) of the Guarantee Agreement, Brenes' liability was further expressly limited notwithstanding any statement to the contrary to situations where the "Borrower fails to repay any indebtedness [owed under the July 8 Promissory Note] as result of" certain limited circumstances. None of these circumstances accounted for where BLG repeatedly tried to repay the debt but LRA acted wrongfully to prevent BLG from being able to do so. *Id.*

As in *Canterbury,* Brenes has alleged facts that would allow a reasonable trier of fact to infer that LRA intentionally and wrongfully interfered with BLG's and Brenes' ability to repay the promissory notes, by refusing to disclose the amount owed, refusing to provide information necessary for the funds to be repaid, and by demanding unreasonable and unrelated terms in a payoff letter. These wrongful actions directly caused the alleged default and accelerated repayment, i.e., that BLG arranged a line of credit with a third-party provider without fully repaying LRA.

> **d. The July 8, 2019 Promissory Note and Associated Guarantee Are Invalid Due to A Failure of Consideration, Which Is a Challenge that Cannot Be Waived By An Absolute and Unconditional Guarantee Containing A Waiver of Defenses and Counter Claims**

16

Regardless of absolute and unconditional guarantees and waivers of defenses and counter claims, a guarantor may always counterclaim or defend against the enforceability of the underlying contact and associated guarantee based on a failure of consideration. *See e.g., Faunus Grp. Int'l, Inc.* v. *Ramsoondar*, No. 12 Civ. 6927, 2014 U.S. Dist. LEXIS 67838, 2014 WL 2038884, at **7-8 (S.D.N.Y. May 16, 2014); *CIT Grp./Commercial Servs., Inc. v. Prisco*, 640 F. Supp. 2d 401, 410 (S.D.N.Y. 2009), *citing Walcutt v. Clevite Corp*., 13 N.Y.2d 48, 191 N.E.2d 894, 241 N.Y.S.2d 834 (1963). Indeed, without consideration, the guaranty is unenforceable. *Id.* "'[F]ailure of consideration exists wherever one who has promised to give some performance fails without his or her fault to receive in some material respect the agreed quid pro quo for that performance. Failure of consideration gives the disappointed party the right to rescind the contract.'" *Independent Energy Corp. v. Trigen Energy Corp*., 944 F. Supp. 1184, 1199 (S.D.N.Y. 1996), quoting *Fugelsang v. Fugelsang*, 131 A.D.2d 810, 517 N.Y.S.2d 176, 177 (2d Dept.1987). An action for rescission based on failure of consideration lies "[w]here a plaintiff has received little or nothing of value . . . ." *Id., citing Yochim v. Mount Hope Cemetery Ass'n*, 163 Misc. 2d 1054, 623 N.Y.S.2d 80, 82, (N.Y. City Ct. 1994). An argument for failure of consideration can be based on conduct that occurs after the contract is signed. *Faunus*, 2014 U.S. Dist. LEXIS 67838 at **8-9. In this matter, there was a failure of consideration because LRA refused to provide the agreed upon loan under the July 8, 2019 promissor note but incontract to which the personal guarantee was associated, and regarding the subsequent

There was a failure of consideration regarding the July 8, 2019 promissory note on which the Guarantee attached, because LRA refused to provide the loan amount specified in the agreement after BLG signed and returned the promissory note on July 9, 2019. Instead, LRA issued new contract on July 10, 2019 and demanded that BLG sign the new promissory note

before any loan would be provided. Therefore, the July 8, 2019 promissory note never existed and/or was rescinded by LRA. To the extent LRA claims the contract did somehow still exist despite its refusal to provide the consideration, BLG and Brenes exercise their right to rescind the contract.  In either case, the guarantee is a nullity as the underlying promissory note to which it was attached either never existed or was rescinded.

There was also failure of consideration because regarding conduct after the parties entered the promissory notes and guarantee because LRA's bad faith refusal to allow BLG or Brenes to repay the loan as allowed under the contract resulted in BLG having to incur substantially increased interest payments.

> **e. Because LRA Refused to Accept the July 8, 2019 Promissory Note and Instead Counteroffered With A Modified Promissory Note on July 10, 2019, the July 8, 2019 Promissory Note and Associated Personal Guarantee Were Rendered a Nullity**

"A surety bond [also known as a personal guarantee] attaches to the principal contract and must be construed in conjunction therewith, so that, if no underlying agreement ever came into existence, there is nothing to which the surety's obligation can attach and it is, therefore, a nullity." *Hall & Co. v. Continental Cas. Co.*, 34 A.D.2d 1028, 310 N.Y.S.2d 950 (1970), *aff'd*, 30 N.Y.2d 517, 330 N.Y.S.2d 64, 280 N.E.2d 890 (1972). Further, where a party offers a guarantee of the performance of a contract and the contract is changed prior to acceptance by the parties, the guarantee is rendered void. *Id.* Stated more simply, a guarantee that refers to a contract has not been finalized or is subsequently modified before acceptance of all parties, is a nullity.

In *Hall* a company named Hall & Company ("Hall") sent a proposal to Bash Apartments Corp. ("Bash") on February 22, 1966 for Bash to perform construction in exchange for sum of

money to be paid via a semi-monthly basis. *Id.* On April 4, 1966, a company named Continental issued a guarantee on behalf of Hall in favor Bash. *Id.* Bash did not sign and return the proposal until September 8, 1966. Further,  Bash modified the payment section of the proposal to state that payment would be made within 10 days after work had been completed. *Id.* Hall signed and accepted the modified proposal, but Continental did not issue a new guarantee for the modified contract. *Id.* After the work was completed, Bash sought to collect from Continental under the guarantee as Hall allegedly defaulted on payment. *Id.* The court ruled that the guarantee was void as it was attached to the proposal from Hall which never came into existence because Bash's modification of the payment terms was a counteroffer and not acceptance of the proposal to which the guarantee was attached. *Id.*

Like in *Hall,* the underlying July 8, 2019 promissory note to which the personal guarantee attached was never accepted by LRA and was rendered nullity as LRA refused to comply with the terms of the agreement, including providing the agreed upon loan, and instead made a counter offer by demanding the BLG enter into a new contract on July 10, 2019. LRA emailed the promissory note and associated personal guarantee on July 9, 2019. [citation]. The promissory note and associated guarantee were accepted, signed and returned to LRA on the same day. However, LRA refused honor the terms of the promissory note and refused to provide the agreed upon consideration for the promissory note and associated guarantee. Instead, LRA demanded a new promissory note on July 10, 2019 that contained substantially different terms.[8] BLG signed the new promissory note on July 10, 2019. LRA did not ask for, nor did Brenes ever offer a new guarantee relating to the new promissory note.

---

[8] These new terms are described under the Statement of Facts Section above.

**f.   As Brenes Would Not Be Liable Under Any Personal Guarantee Unless and Until BLG Defaulted, Brenes Can Plead Any Defense or Counter Claim that BLG Could Have Pled**

If the creditor sues the guarantor, the latter can plead any defense which the principal could have pleaded. *See Milliken & Co. v. Gans*, 82 A.D.2d 781, 440 N.Y.S.2d 655 (1981)(holding guarantor had the right to avail himself of any defense available to the principal); *Millgard Corp. v. E.E. Cruz/ Nab/ Frontier-Kemper*, 2002 U.S. Dist. LEXIS 23921 at *47 (S.D.N.Y. Dec.12, 2002), *summ. judg. granted*, 2003 U.S. Dist. LEXIS 20928 (S.D.N.Y. Nov. 18, 2003)(holding guarantor stands in the shoes of the principal and may assert as its own defenses to its surety obligation the principal's contractual defenses); *Walcott v. Clevite Corp.*, 13 NY2d 48, 55-56, 191 NE2d 894, 241 NYS2d 834 (1963)(confirming guarantor can assert defense of failure of consideration regarding the contract he guaranteed); M.S. v. WEB RECORDS, INC., 2001 U.S. Dist. LEXIS 8472 at *31, 2011 WL 685923, (N.D. Ill. June 13, 2001)(holding guarantor can assert defenses and claims of principal regarding contract where the principal debtor has consented to the guarantor raising the principal's defenses or where the principal and the guarantor are sued together). Here, LRA has sued the principal (BLG) and the alleged guarantor (Brenes) together and BLG has no objection to Brenes asserting its defenses and claims. As such, Brenes has standing.

LRA's reliance on *Four Winds of Saratoga Inc. v. Blue Cross & Blue Shield of Cent. New York Inc.*, 241 A.D.2d 906, 907, 660 N.Y.S.2d 236, 237 (1997) and *Am.-Eur. Art Assocs., Inc. v. Trend Galleries, Inc.,* 227 A.D.2d 170, 171, 641 N.Y.S.2d 835, 836 (1996) for the proposition that a guarantor does not have standing to pursue a breach of implied duty of good faith either as a defense or counterclaim is misplaced. As neither case involves a guarantor

bringing such a claim or defense via the guarantor standing in the shoes of the principal to the contract these cases are simply inapposite.

> ### g.  To Extent LRA Argues and the Court Agrees that Any Defense or Counterclaim Discussed Herein or Supporting Facts Thereof Are Not Adequately Pled, BLG and Brenes Request Leave to Amend the Answer and Counterclaims

A party may amend an answer once as a matter of course within 21 days of serving its original answer, or with consent of the court.  Fed. R. Civ. P. 15(a). Leave to amend "shall be freely given when justice so requires." *Id.* Here, Defendants were unfamiliar with New York law at the time of the answer but acted in good faith and with all due diligence to assert all applicable defenses and factual support at the time of the Answer. However, in the process of responding to LRA's Motion to Dismiss, Defendants have become aware that certain defenses could have been more clearly stated.

For example, while Defendants clearly pled facts evidencing a tender offer was denied and requested associated damages, including a prohibition of LRA being able to collect interest after late 2019 and that LRA pay the interest BLG incurred by setting funds aside to account for the debt, Defendants did not include a specific defense entitled denial of tender offer. Arguably, however, such a defense could come within the unclean hands, failure to mitigate, or other defenses discussing Plaintiff tried to perform but Defendant refused to accept payment.

Similarly, Defendants pled facts indicating LRA refused to provide consideration for the July 8, 2019 contract as LRA refused to honor the contract or provide the loan amount until Plaintiff signed a new contract with different terms. However, Defendants did not formally state a specific defense entitled of lack of consideration.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request an order denying the Motion to Dismiss the First Counterclaim and to Strike Affirmative Defenses.


Dated:  April 19, 2022                    Respectfully Submitted,



                                          By:/s/ Troy A. Brenes_____

                                          Troy A. Brenes (admitted PHV)
                                          Brenes Law Group, P.C.
                                          100 Spectrum Center Drive, Ste. 330
                                          Irvine, California 92618
                                          Tel: 949.397.9360
                                          Fax: 949.607.4192
                                          Tbrenes@breneslawgroup.com

                                          Counsel for Defendants and Counterclaim Plaintiffs

## **CERTIFICATE OF SERVICE**

I CERTIFY that on April 19 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all registered participants.

/s/Troy A. Brenes