UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LEGAL RECOVERY ASSOCIATES, LLC,
    Plaintiff/Counterclaim Defendant,
  v.
BRENES LAW GROUP, P.C. and TROY BRENES,
    Defendants/Counterclaimants.
------------------------------------------------------------x
BRENES LAW GROUP, P.C. and TROY A BRENES,
    Counterclaim Plaintiffs,
  v.
HOWARD B. BERGER, GREGORY GOLDBERG, LAWRENCE LITIGATION GROUP, L.P. and DOES 1-50,
    Counterclaim Defendants.
------------------------------------------------------------x[1]

Case No. 22-CV-1778 (AJN)

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS THE FIRST COUNTERCLAIM AND TO STRIKE AFFIRMATIVE DEFENSES

SOLOMON & CRAMER LLP
25 West 39th Street, 7th Floor
New York, New York 10018
(212) 884-9102
*Attorneys for Plaintiff*

---

[1] None of the additional counterclaim defendants in the action (*i.e.*, Howard Berger, Gregory Goldberg, Gary Podell or Lawrence Litigation Group, LP) have been served with process, as of today, April 26, 2022.

Plaintiff Legal Recovery Associates, LLC (LRA), through its counsel, Solomon & Cramer LLP, respectfully submits this reply memorandum of law in further support of its motion, pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure, to dismiss Defendants/Counterclaimants Brenes Law Group, P.C. (BLG) and Troy A. Brenes's first counterclaim and to strike Brenes's affirmative defenses.

## I.  REPLY ARGUMENT[2]

### A. BLG and Brenes's First Counterclaim Must be Dismissed Because BLG Had a Contractual Right to Pay Off the Notes to LRA and a Common Law Right to Tender, Neither of Which it Exercised

LRA demonstrated in its moving papers that BLG and Brenes's first counterclaim—alleging that LRA breached the implied duty of good faith and fair dealing by somehow preventing BLG from paying off the Notes—fails as a matter of law. LRA had no power to prevent a payoff. BLG had a contractual right to pay off the debt and could have done so by following the agreement: pay the amount due by tendering lawful money of the United States. And even if LRA had rejected the payment, BLG had a common law remedy of tender, which if done in conformance with the law would have prevented the further accrual of interest.

#### 1. BLG Failed to Exercise its Contractual Payoff Right

Nowhere in its opposition does BLG dispute that it had the clear and unequivocal right to prepay the Notes at any time. Each of the notes specifically grants BLG "the right to prepay [the] … Note, either in whole or in part, without any prepayment fee or penalty." *See*, *e.g.*, Dkt. 18-1 at p. 1.

Instead, BLG complains that the calculation of the payoff amount was ambiguous. But this is nothing more than a *post hac* contrivance. BLG never alleged that it was unable to

---

[2] We cite to BLG and Brenes's opposition brief (Dkt. 27) as "Opp."

calculate the payoff amount on its own. Moreover, its claim (today) that it could not do so because "there are multiple ways to determine how much interest had accrued" (*e.g.*, 360-days, 365-days, etc.) (Opp. at 9) and its feigned confusion about when interest started to accrue (Opp. at 11) are makeweight.

In fact, the information to make the interest calculation was plainly available to BLG. On their face, the Notes provide for "interest at the annual rate of seventeen and one half percent (17.5%) thereon from *the date hereof*, such interest to *accrue daily* and to be paid with the payment of principal on the payment date or when prepaid." Dkt. 18-1 at p. 1 (emphasis added). The two emphasized terms require no extended discussion; interest runs from "the date hereof" (*i.e.*, the date of the note) and accrues daily. As for the number of days in a year (to calculate the daily rate), the law fills in that gap. Under New York law, a "year" in a contract is 365 days. *See* General Construction Law § 58.

The actual math is elementary. If the annual rate is 17.5%, then the interest *accrues daily* at 17.5% divided by 365 days. To calculate the daily interest amount, BLG (a law firm) merely had to calculate the product of the principal, the daily interest rate, and the number of days elapsed. Similarly immaterial is BLG's supposed "concern as to whether LRA would deem the interest accrual as having begun on July 8 or later." Opp. at 11. Whether Brenes signed the Note on July 8, 9, or 10 is irrelevant. The Note is dated July 8, 2019, and interest accrues from that day—which is the "*the date hereof.*" Interest did not depend on the date of execution or delivery. Thus, to calculate interest, BLG simply had to multiply the daily accrual with the number of days elapsed to the payoff date.

BLG goes on to claim that LRA refused to "disclose account information sufficient to allow BLG to repay the debt via wire transfer." Opp. at 11. But the Notes contain no such

requirement. Rather, each states: "All sums called for, payable, or to be paid hereunder shall be paid in lawful money of the United States of America, which, at the time of payment, is legal tender for the payment of public and private debts therein." LRA was not required to accept payment in any other format. Nor was LRA required to sign off on a payoff letter proposed by a new lender to BLG.

In sum, BLG had a clear contractual right (and simple instructions) to pay off the Notes in accordance with their terms. LRA breached no implied duty by declining to accommodate BLG's desire to alter those terms to please another lender.

### 2. BLG Could Have Avoided Any Alleged Injury by Unconditionally Tendering the Amount Due

Even if it were the case that LRA had the power to prevent BLG from paying off its indebtedness, BLG had a built-in remedy: an unconditional tender.

BLG calls LRA's tender argument "disingenuous," claiming that BLG met the tender requirements under "Section 3-603 of the Uniform Commercial Code," which it quotes in full.[3] Opp. at 12-14. But that is the revised uniform law, not New York's. The New York U.C.C. tender statute, which is differently enumerated and worded from the Uniform Statute, is N.Y. U.C.C. Law § 3-604 (McKinney). BLG discusses no case interpreting New York law.

Besides citing and quoting the wrong statute, BLG overlooks a fatal problem: the U.C.C. (in any form) does not apply here. Article 3 is "restricted to commercial paper." N.Y. U.C.C. Law § 3-103 at Cmt. 1 (McKinney). Commercial paper, as defined in N.Y. U.C.C. Law § 3-104 (McKinney), requires, *inter alia,* that the instrument "be payable on demand or at a definite

---

[3] BLG quotes and cites the wrong statute. BLG's source is https://www.law.cornell.edu/ucc/3/3-603. Cornell's website contains the revised version of Article 3, enacted in 2002, and can be found on Westlaw at § 3-603. Tender of Payment., Unif.Commercial Code § 3-603. The revised version replaced former section 3-604 (see Official Comment). However, New York has not adopted the revised version of Article 3 of the UCC. Refs & Annos, Unif.Commercial Code Refs & Annos.

time." N.Y. U.C.C. Law § 3-104(c) (McKinney). An instrument is not payable at a "definite time," if it "by its terms is otherwise payable only upon an act or event uncertain as to time of occurrence [ ] even though the act or event has occurred." N.Y. U.C.C. Law § 3-109(b)(2) (McKinney). That exclusion applies to the Notes in this case, which, by their terms were not payable at a "definite time," but only when BLG "received payment of any award in respect of all product liability litigations." *See* Dkt. 18-2 (definition of "Payment Date").

Yet even if Article 3 of the U.C.C. did apply, the "tender" would be invalid. Like the common law, the U.C.C. also requires an unconditional tender. *See, e.g., Beswick v. Weiss*, 126 A.D.2d 854, 855, 510 N.Y.S.2d 777, 779 (1987) (applying the U.C.C. and holding that the debtor's conditioning of payment on production of original note was not a conforming tender). BLG does not allege that it made an *unconditional* offer to pay off the entire loan balance. Rather, BLG requested a payoff amount and wanted LRA to sign a payoff letter from another lender, which LRA would not sign without modification. Dkt. 3 at ¶¶ 14-15 (Statement of Facts).

Nevertheless, any consideration of the U.C.C. is largely an academic exercise. The applicable law is the general common law.[4] Under common law principles, to arrest the accrual of interest, an obligor must make "an unconditional tender of payment." *Michaels v. U.S. Tennis Ass'n, Inc.*, 295 A.D.2d 222, 744 N.Y.S.2d 375, 375 (2002); *see generally* 86 *C.J.S. Tender* § 1 ("The word 'tender' has a definite, legal signification, and imports not merely the readiness and the ability to pay or perform, but also the actual production of the subject matter of the tender, an offer of it to the person entitled to receive it, and a refusal to accept it."). There are two ingredients: first, there must be an actual *tender*, *i.e.*, the presentation of a "check or other form of payment"; second, such tender must be made without conditions. A purported tender that fails

---

[4] Where Article 3 of the U.C.C. does not apply, "general common law principles" control. *Crolley v. Haygood Contracting, Inc.*, 201 Ga. App. 700, 702, 411 S.E.2d 907, 909 (1991).

4

to comply with these two requirements is ineffective. *See, e.g., Gamman v. Silverman,* 135 A.D.3d 814, 815, 24 N.Y.S.3d 347, 348-49 (2016) (explaining that a tender that was not "unconditional" does not stop the accrual of interest); *Cohen v. Transcon. Ins. Co.,* 262 A.D.2d 189, 191, 693 N.Y.S.2d 529, 531 (1999) (same); *Michaels*, *supra.*

Tender was BLG's self-help remedy. Its very purpose "is to enable the debtor to relieve himself or herself of interest and costs." 74 Am. Jur. 2d Tender § 2. But BLG failed to take advantage. It never made an unconditional offer to pay the entire balance, opting instead to deposit a sum of money with its new lender, while attempting to convince LRA to sign off on another lender's payoff letter. Dkt. 3 at ¶¶ 12-14, 17-20 (Statement of Facts).

Having failed to make a conforming tender, BLG cannot take refuge under the implied duty of good faith. That duty is breached "only when [a party's] … action destroys or injures the contract rights of the other party." *Int'l Bus. Machines Corp. v. Martson*, 37 F. Supp. 2d 613, 619 (S.D.N.Y. 1999). This requires proof of proximate cause and damages, *see Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank,* 392 F.3d 520, 525 (2d Cir. 2004), which cannot be established here because, as explained above, LRA did not and could not prevent a payoff or tender. Any injury that BLG (and Brenes, as guarantor) suffered was entirely self-inflicted.

### B. Under the Terms of the Unconditional Guarantee, Brenes's Counterclaim Must Be Dismissed

Despite having executed an unconditional guarantee of payment with both general and specific waivers of all defenses (Dkt. 18-3), Brenes individually asserts a counterclaim (which belongs to BLG) and various boilerplate affirmative defenses.

In moving to dismiss, LRA cited controlling Second Circuit authority for the settled proposition that waivers of defenses in an unconditional guarantee are fully enforceable under New York law. These cases included: *JPMorgan Chase Bank, N.A. v. Reifler*, 614 F. App'x 11

5

(2d Cir. 2015); *Exp.-Imp. Bank of U.S. v. Agricola Del Mar BCS*, 334 F. App'x 353, 354-55 (2d Cir. 2009); *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 188 F.3d 31, 38 (2d Cir. 1999). These cases are based on the seminal New York Court of Appeals decision in *Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 93, 485 N.E.2d 974, 975 (1985) ("disclaimer in the guarantee is sufficiently specific to foreclose as a matter of law the defenses and counterclaims based on fraud, negligence or failure to perform a condition precedent asserted against plaintiff banks").

Brenes does not mention these cases in his opposition. His response is principally based on *Canterbury Realty & Equip. Corp. v. Poughkeepsie Sav. Bank*, 135 A.D.2d 102, 524 N.Y.S.2d 531 (1988)—a case that provides a narrow exception to an unconditional guarantee where the guarantor can show, as a defense, that "the default or acceleration of repayment in the underlying contract was triggered by wrongful conduct of the beneficiary of the guarantee." Opp. at 14. The first problem with *Canterbury* is that it is relevant only as an exception to "unconditional" guarantees; it did not involve, affect, or negate waivers of defenses. This very point of distinction is made in *Am. Exp. Bank, Ltd. v. Coker,* No. 89 CIV. 1989 (MJL), 1990 WL 100888, *2 (S.D.N.Y. July 13, 1990) (distinguishing *Canterbury*, where guarantee is unconditional and contains broad waivers of defenses); *see also JPMorgan Chase Bank, N.A. v. Meritage Homes Corp.*, No. 2:11-CV-01364-PMP, 2012 WL 3809235, at *14 (D. Nev. Sept. 4, 2012) (applying New York law and distinguishing *Canterbury* based on waivers in the guarantee). The second problem is that Brenes has not alleged that LRA, through bad faith conduct or otherwise, caused the Notes to be accelerated. His dispute relates to BLG's aborted attempt to pay off the balance. For this reason, too, the *Canterbury* exception is inapplicable. *See Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 25 N.Y.3d 485, 495-496, 36

6

N.E.3d 80, 87-88 (2015) (limiting *Canterbury* to instances where lender's "post-execution conduct triggered the event that accelerates or causes the guarantor's liability").

The only argument that Brenes advances on his waiver problem—albeit without mentioning the Second Circuit precedent—is under the doctrine of "failure of consideration." Opp. at 16-17. It's not easy to follow. According to Brenes, he signed an initial form of the July 8, 2019 Note, but LRA insisted that he sign a revised version in the same amount with the same date. Because he delivered the Guarantee with the first version, which was superseded, Brenes claims there was a "failure of consideration" and "the guarantee is a nullity." Opp. at 17-18. He also claims that LRA's post-execution "bad faith" creates a "failure of consideration" for the Guarantee.

Brenes bandies the phrase, "failure of consideration," without delving into its meaning. It arises where "one who has promised to give some performance fails, without its own fault, to receive, in some material respect, the agreed quid pro quo for that performance." 22A N.Y. Jur. 2d Contracts § 544. It "is only a defense where such failure is so complete or material to defeat the purpose of the contract." *Sidman v. Concord Arena Parking, LLC*, No. 15-CV-7426-CBA-SJB, 2021 WL 7740041, at *9 (E.D.N.Y. Oct. 8, 2021), *report and recommendation adopted*, No. 15 CV 07426 CBA SJB, 2022 WL 912753 (E.D.N.Y. Mar. 29, 2022). Such failure of consideration "giv[es] the disappointed party the right to rescind the contract." *Id*. In the context of a promissory note transaction, a failure of consideration might occur where the promisor can show that the promisee "failed to transfer any funds or give any financial benefits to the defendants pursuant to the promissory notes." *Porat v. Rybina*, 177 A.D.3d 632, 633, 111 N.Y.S.3d 625, 628 (2019). By contrast, a breach of an implied covenant of good faith and fair dealing, like the one alleged here, could not possibly amount to a "failure" of the consideration

7

that BLG had already received in exchange for giving the Notes. *See, generally, Gap Inc. v. Ponte Gadea New York LLC*, 524 F. Supp. 3d 224, 238 (S.D.N.Y. 2021) (distinguishing "failure of consideration" with breaches of contract); *Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 678 (2d Cir. 1989) ("As an extraordinary remedy, rescission is appropriate only when a breach may be said to go to the root of the agreement between the parties"). Because LRA performed the principal purpose of the transaction—the advancement of funds—no "failure of consideration" argument is plausible.

At most, Brenes's argument is about whether the Guarantee that he signed covers the promissory note in question. This is a question of contractual interpretation. The answer is found in the plain language of the agreements themselves. The "Note" is defined in the Guarantee as "the Promissory Note of even date herewith issued by Brenes Law Group, PC (the 'Borrower') to the Lender, as such Promissory Note may from time to time be amended, restated, replaced, novated, supplemented or otherwise modified (as so amended, restated, replaced, novated, supplemented or otherwise modified from time to time, the 'Note')." Dkt. 18-3 at "Certain Definitions." At the very least, the second version of the July 8, 2019 Note is a replacement of the prior version.[5] Furthermore, the guaranteed obligations cover "Indebtedness," which is defined broadly to encompass "any and all of all present and future indebtedness and obligations of the Borrower, mature or contingent, at any time and from time to time outstanding, in connection with the Note." Dkt. 18-3 at ¶ 1(a). The second version of the Note would thus also qualify as "future indebtedness."

Brenes's reliance on *Hall & Co. v. Cont'l Cas. Co.*, 34 A.D.2d 1028, 310 N.Y.S.2d 950 (1970), *aff'd,* 30 N.Y.2d 517, 280 N.E.2d 890 (1972), is unavailing. There, the instrument at

---

[5] We assume that BLG is not arguing that it is obligated under both versions of the July 8, 2019 Note.

8

issue was a surety bond, which as a matter of law could be discharged "by any alteration of the contract." *Id.* at 1029, 310 N.Y.S.2d at 952-53. The original "proposal," to which the surety bond was to apply, was dated February 22, 1966 and was never accepted. The operative contract was not executed until nearly seven months later, on September 12, 1966, with different payment terms. 34 A.D.2d at 1029, 310 N.Y.S.2d at 952. Under these circumstances, the court held that the issuer of the surety bond was not answerable for the default on the later-executed contract.

This case is nothing like *Hall.* The Guarantee, as explained above, expressly covers all modifications including the replacement of the first note with a new note. *See* Guarantee, Dkt. 18-3 at "Certain Definitions" and ¶ 1 "Guarantee." Moreover, the Guarantee and both versions of the July 8, 2019 Note were executed roughly contemporaneously (within days) as part of the same transaction, the replacement being signed and delivered a day after the first version.

Finally, in Part IV(f) of his opposition, Brenes responds to Plaintiff's argument that he lacks standing to assert the obligor's claims and defenses under the Notes by claiming that as a guarantor he can "plead any defense which the principal could have pleaded." Opp. at 20. That may be true as a generic proposition, but not here. First, Brenes's Guarantee was an "independent obligation" and a "guarantee of payment." Because the agreement is independent, the guarantor "may not assert setoffs or defenses which arise independently from the guarantee." *Marcus Dairy, Inc. v. Jacene Realty Corp.*, 225 A.D.2d 528, 528–29, 638 N.Y.S.2d 779, 780 (1996). Second, Brenes generally and specifically waived all defenses "to the fullest extent permitted by law," including "any defense based upon or arising out of any defense which the Borrower may have to the payment or performance of any part of the Indebtedness" (Dkt. 18-3 at ¶ 4(d)), and provisions of this kind are enforceable. *See Sterling Nat. Bank v. Biaggi*, 47 A.D.3d 436, 437, 849 N.Y.S.2d 521, 522 (2008); *Reliance Const. Ltd. v. Kennelly*, 70 A.D.3d 418, 419,

9

893 N.Y.S.2d 548, 549 (2010). Third, by asserting a counterclaim here—supposedly side-by-side or in the shoes of the principal obligor (BLG)—Brenes exceeds the rights of the borrower, who itself agreed to make "all payments … without setoff, *counterclaim* or other defense." Note, Dkt. 18-1 at fifth par., left column (emphasis added); Guarantee, Dkt. 18-3 at ¶ 1(a). *See, e.g., Tabatznik v. Turner,* No. 14 CIV. 8135 (JFK), 2016 WL 1267792, at *6 (S.D.N.Y. Mar. 30, 2016) (enforcing waiver by borrower of right to counterclaim).

### C. Brenes's Boilerplate Affirmative Defenses Are Insufficiently Pleaded

As demonstrated in LRA's moving papers, even if Brenes had not waived his affirmative defenses, they are insufficiently pleaded to meet the notice or plausibility pleading requirements. Dkt. 19 at 6-7. Brenes appears to concede the point, admitting that "certain defenses could have been more clearly stated." Opp. at 21.[6]

### II. CONCLUSION

For the reasons stated in its moving brief and in this reply, LRA respectfully requests that the Court dismiss the first counterclaim asserted by both defendants, BLG and Brenes, and strike all of the affirmative defenses asserted by Brenes.

Dated: New York, New York
April 26, 2022

        SOLOMON & CRAMER LLP
        *Attorneys for Plaintiff Legal Recovery*
        *Associates LLC*

        By:   /s/Andrew T. Solomon
                Andrew T. Solomon

---

[6] Brenes could have amended as of right by serving an amended answer within 21 days after receiving Plaintiff's Rule 12(b) motion. Fed. R. Civ. P. 15(a)(1)(B). Having failed to amend in time, Brenes must obtain leave, which he requests. But with his response he should have provided a proposed amendment showing which defenses he would amend, which he would drop, and what new defenses he would assert. *See, generally, In re Crude Oil Commodity Litig.*, No. 06 CIV.6677 NRB, 2007 WL 2589482, at *4 (S.D.N.Y. Sept. 8, 2007); *Huelbig v. Aurora Loan Servs., LLC*, No. 10 CIV. 6215 RJH THK, 2011 WL 4348281, at *3 (S.D.N.Y. May 18, 2011), *report and recommendation adopted*, No. 10 CIV. 6215 RJH THK, 2011 WL 4348275 (S.D.N.Y. Sept. 16, 2011). Brenes does describe some fixes, but ignores most of the others.

asolomon@solomoncramer.com

25 West 39th Street, 7th Floor
New York, New York 10018
(t) 212-884-9102
(f) 516-368-3896

11