**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LEGAL RECOVERY ASSOCIATES LLC

       *Plaintiff,*

  -against-

BRENES LAW GROUP, P.C. AND TROY A.
BRENES

       *Defendants,*

_____

BRENES LAW GROUP, P.C. AND TROY A.
BRENES

       *Counterclaim Plaintiffs,*
    vs.

LEGAL RECOVERY ASSOCIATES LLC;
HOWARD B. BERGER, GREGORY
GOLBERG; GARY PODELL; LAWRENCE
LITIGATION GROUP, LP, and DOES 1-50

       *Counterclaim Defendants,*

_____

**DEFENDANTS' FIRST AMENDED ANSWER
AND COUNTERCLAIMS**

  22-CV-1778(ER)(BCM)

     BRENES LAW GROUP, P.C. and TROY A. BRENES, Defendants and Counterclaim

Plaintiffs, hereby ANSWER Plaintiff's Complaint and Counter Claim against Counterclaim

Defendants LEGAL RECOVERY ASSCOIATES LLC; HOWARD B. BERGER, GREGORY

GOLBERG; GARY PODELL; LAWRENCE LITIGATION GROUP, LP, and DOES 1-50

(hereinafter "Counterclaim Defendants").

## DEFENDANTS' ANSWER

## INTRODUCTION

1.     Defendants admit that Plaintiffs have styled their action as one to enforce to promissory notes in the amounts of $1,100,0000 and $500,000.

## JURISDICTION AND VENUE

2.     Defendants admit the promissory notes contained a forum selection clause designating any action arising from the promissory notes to be brought in state court in New York or the United States District Court for the Southern District of New York.

3.     Defendants admit the relevant promissory notes contained a clause indicating that the agreements were "deemed to have been made and delivered in the State of New York," and the parties agreed that they would be governed by New York law and that any disputes would be resolved in state or federal court in New York.

## THE PARTIES

4.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of Plaintiff's Complaint and, therefore, deny those allegations.

5.     Defendants admit the first sentence in paragraph 5. Defendants deny the second sentence and note the relevant agreements indicate: "Any notice required to be sent to Maker may be sent by mail…addressed to Maker at 27141 Aliso Creek Road, Suite 270, Aliso Viejo, CA 92656.

6.     Defendants admit that Troy Brenes is the president of Brenes Law Group, P.C. (hereinafter "BLG"). Defendants are unclear what is meant by "principal" and therefore deny

2

that sentence as they lack sufficient understanding as to what that term in meant to convey

beyond Troy Brenes being the President of BLG.

## STATEMENT OF FACTS

7.     Denied as to date of the agreement and that BLG created the promissory note.

Defendants admit the amount of the promissory note. BLG executed one promissory note

prepared by Plaintiff on July 9, 2019. That Agreement is attached hereto as Exhibit 1. However,

Plaintiff refused to honor the terms of its own agreement and demanded that BLG execute a

revised promissory note on July 10, 2019, which BLG was forced to do.

8.     Admitted.

9.     Denied.

10.     Denied in part. Defendants admit the relevant promissory notes state the

following:

> on the Payment Date (defined below), the principal sum of One Million One
> Hundred Thousand Dollars ($1,100,000), together with interest at the annual rate
> of Seventeen and one half Percent (17.5%) thereon from the date hereof, such
> interest to accrue daily and to be paid with the payment of principal on the
> Payment Date or when prepaid. Any amounts past due under this Note shall
> accrue interest at the rate of Eighteen Percent (18%) per annum until paid in full.

11.     Denied in part. Defendants admit that "Payment Date" is defined in this manner in

the relevant promissory notes. However, the agreements also provide that "[BLG] shall have the

right to prepay [these] note[s], either in whole or in part, without any prepayment fee or penalty,

but together with interest accrued to the date of prepayment."

12.     Denied. As will be explained in detail below, BLG attempted to repay the

promissory notes in full in 2019. However, Legal Recovery Associates LLC ("LRA") and

Howard B. Berger ("Berger") knowingly and in bad faith prevented BLG from repaying the

3

promissory notes. This bad faith conduct consisted of, *inter alia*, refusing to disclose the total amount owed, refusing to disclose the account information necessary for BLG to wire repayment funds, and by demanding terms be inserted into a payoff letter required by Defendants' new lender that had no relevance to the promissory notes or repayment thereof, but rather sought to force Defendants into improper concessions regarding a co-counsel relationship with a separate entity.

13.     Denied. As will be explained in detail below, BLG attempted to repay the promissory notes in full in 2019. However, LRA and Howard B. Berger knowingly and in bad faith prevented BLG from repaying the promissory notes. This bad faith conduct consisted of, *inter alia*, refusing to disclose the total amount owed, refusing to disclose the account information necessary for BLG to wire repayment funds, and by demanding terms be inserted into a payoff letter required by Defendants new lender that had no relevance to the promissory notes or repayment thereof, but rather sought to force Defendants into improper concessions regarding a co-counsel relationship with a separate entity.

14.     Denied. As will be explained in detail below, BLG attempted to repay the promissory notes in full in 2019. However, LRA and Howard B. Berger knowingly and in bad faith prevented BLG from repaying the promissory notes. This bad faith conduct consisted of, *inter alia*, refusing to disclose the total amount owed, refusing to disclose the account information necessary for BLG to wire repayment funds, and by demanding terms be inserted into a payoff letter required by Defendants' new lender that had no relevance to the promissory notes or repayment thereof, but rather sought to force Defendants into improper concessions regarding a co-counsel relationship with a separate entity.

15.     Denied in Part. The promissory note states the following:

4

As collateral security for the indebtedness, obligations and other liabilities of Maker to Lender hereunder, whether now or hereafter arising, Maker hereby transfers, grants, assigns and pledges to Lender a continuing first-priority, perfected security interest in all of Maker's right, title and interest in, to and under the following property, whether now or hereafter existing, and whether now owned or hereafter acquired (collectively, the "Collateral"): (a) all proceeds, receivables, property, cash and other consideration payable to Maker or any of its affiliates, in connection with the Case (whether as a result of judgment, settlement or otherwise), including, without limitation, contingent fees, common benefit fees, reimbursable expenses and any interest awarded or later accruing on the foregoing; and (b) all proceeds of any of the property described in the preceding clause (a).

Moreover, once Plaintiff breached by knowingly acting in bad faith to prevent repayment of the loans, Defendants were no longer bound by these conditions.

16.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of Plaintiff's Complaint and, therefore, deny those allegations. Defendants are unable to locate this statement in the relevant promissory notes. Regardless, Once Plaintiff breached by knowingly acting in bad faith to prevent repayment of the loans, Defendants were no longer bound by these conditions.

17.    Denied in part as to date. However, Defendants admit they did arrange a new line of credit with a third-party creditor. However, Defendants again note that BLG attempted to repay the promissory notes in full in 2019. However, LRA and Howard B. Berger knowingly and in bad faith prevented BLG from repaying the promissory notes. This bad faith conduct consisted of, *inter alia*, refusing to disclose the total amount owed, refusing to disclose the account information necessary for BLG to wire repayment funds, and by demanding terms be inserted into a payoff letter required by Defendants' new lender that had no relevance to the promissory notes or repayment thereof, but rather sought to force Defendants into improper concessions regarding a co-counsel relationship with a separate entity.

18.    Denied. Defendants admit they did arrange a new line of credit with a third-party creditor. However, Defendants again note that BLG attempted to repay the promissory notes in full in 2019. However, LRA and Howard B. Berger knowingly and in bad faith prevented BLG from repaying the promissory notes. This bad faith conduct consisted of, *inter alia*, refusing to disclose the total amount owed, refusing to disclose the account information necessary for BLG to wire repayment funds, and by demanding terms be inserted into a payoff letter required by Defendants' new lender that had no relevance to the promissory notes or repayment thereof, but rather sought to force Defendants into improper concessions regarding a co-counsel relationship with a separate entity.

19.    Denied. Defendants admit they did arrange a new line of credit with a third-party creditor. However, Defendants again note that BLG attempted to repay the promissory notes in full in 2019. However, LRA and Howard B. Berger knowingly and in bad faith prevented BLG from repaying the promissory notes. This bad faith conduct consisted of, *inter alia*, refusing to disclose the total amount owed, refusing to disclose the account information necessary for BLG to wire repayment funds, and by demanding terms be inserted into a payoff letter required by Defendants' new lender that had no relevance to the promissory notes or repayment thereof, but rather sought to force Defendants into improper concessions regarding a co-counsel relationship with a separate entity. Plaintiffs cannot act in bad faith to prevent Defendants from repaying the loan in full in 2019 and then demand years later to recover interest that accrued after Plaintiff prohibited Defendants from repaying the loan in full.

20.    Denied. BLG attempted to repay the promissory notes in full in 2019. However, LRA and Howard B. Berger knowingly and in bad faith prevented BLG from repaying the promissory notes. This bad faith conduct consisted of, *inter alia*, refusing to disclose the total

amount owed, refusing to disclose the account information necessary for BLG to wire repayment funds, and by demanding terms be inserted into a payoff letter required by Defendants' new lender that had no relevance to the promissory notes or repayment thereof, but rather sought to force Defendants into improper concessions regarding a co-counsel relationship with a separate entity.

## AS AND FOR FIRST CAUSE OF ACTION: BREACH OF CONTRACT
## (AGAINST BRENES)

21.    Defendants incorporate by reference all responses to the preceding paragraphs as though restated fully herein.

22.    Denied.

23.    Denied.

24.    Denied.

25.    Denied.

## AS AND FOR A SECOND CAUSE OF ACTION: BREACH OF GUARANTY
## (AGAINST TROY BRENES)

26.    Defendants incorporate by reference all responses to the preceding paragraphs as though restated fully herein.

27.    Denied. Defendants have not breached any terms of either the alleged contract or the alleged guarantee agreement. Moreover, the terms of the alleged agreement differ from what is alleged here.

28.    Denied.

## DEMAND FOR RELIEF

Furthermore, responding to the unnumbered Paragraphs, including sub-parts, following the heading "DEMAND FOR RELIEF" and beginning "WHEREFORE," Defendants deny that they are liable to Plaintiff in any manner and deny each and every allegation contained in such Paragraphs and all sub-parts thereof, separately and severally, to the extent said allegations imply any wrongdoing by Defendants. Defendants further deny Plaintiff is entitled to the relief requested in the "PRAYER FOR DAMAGES" Paragraphs, including all sub-parts thereof. Defendants further deny each and every allegation not specifically admitted herein.

## DEFENDANTS' AFFIRMATIVE DEFENSES

Defendants assert that Plaintiff's claims are barred, in whole or in part, by the defenses set forth below. Defendants further incorporate by reference all facts stated under Counterclaimants' Statement of Facts below. By setting forth these defenses, Defendants do not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff. Defendants reserve the right to plead any and all affirmative defenses that may become evident or appreciated after investigation and discovery in this matter. Defendants allege as affirmative defenses the following:

1.      Plaintiff is barred from the relief sought in the complaint as a result of unclean hands.

2.      Plaintiff's claims are barred or, in the alternative, limited as Plaintiff's damages are the result of its own breach of its obligations under the promissory notes to allow Defendants to prepay the promissory notes.

3.      Plaintiff's damages are barred or should be reduced as Plaintiff failed to mitigate

its damages by taking actions designed to prevent Defendants from being able to repay the debt.

4.      Defendants' performance was excused, and Defendants would have performed their obligations under the promissory notes but for Plaintiff's interference with defendants' ability to perform.

5.      Defendants' performance was excused as Plaintiff's conduct made it an impossibility for Defendants to perform.

6.      Plaintiff's claims are barred or, in the alternative should be limited, under the doctrine of Laches, as Plaintiff acted to prohibit Defendants from paying off their debts in 2020 and 2021 and then waited an unreasonable amount of time to claim Defendants refused to pay the debts.

7.      Plaintiff's claims are barred or, in the alternative should be limited, as Plaintiff acted in bad faith to prevent Defendants from repaying the debts in 2020 and 2021.

8.      Plaintiff's claims are barred or, in the alternative should be limited, as to hold otherwise would violate New York's Usury laws.

9.      Plaintiff's claims are barred or, in the alternative should be limited, as Plaintiff exerted undue influence and duress on Defendants to demand unreasonable terms in the promissory notes.

## **COUNTERCLAIM DEFENDANTS**

1.      As indicated in Plaintiff's Complaint, Legal Recovery Associates LLC ("LRA") alleges it is a corporation organized under the law of New York and having its principal place of business in New York.

2.      Howard R. Berger ("Berger") is an individual and resides and is domiciled in the state New York. Berger has held himself out to Troy Brenes as being an employee and agent of

LRA. After LRA, through its agent Berger, began to act in bad faith to prevent BLG from repaying its debts in late 2020, BLG discovered the following concerning information posted on the U.S. Securities and Exchange Commission regarding Berger and his propensity to act in bad faith and violate fiduciary duties:

> On September 21, 2012, the SEC filed a complaint against defendant Howard Brett Berger ("Berger") and his wife, Michelle Berger, as a relief defendant (collectively the "Bergers"). The complaint alleged that no later than July 2008 through approximately early March 2010, Berger engaged in a fraudulent trade allocation scheme commonly referred to as "cherry picking." Berger utilized a direct-access trading platform to delay final allocation of the trades until the end of the trading day, frequently after the market closed, so he could determine whether the trades were profitable. Berger managed two hedge funds, Professional Traders Fund, LLC ("PTF") and Professional Offshore Opportunity Fund ("POOF") (collectively, the "Funds"). Oftentimes, Berger cherry picked profitable trades from PTF and allocated those trades to his wife's brokerage account, and allocated unprofitable trades to POOF. As a result, Berger received at least $6.8 million in profits and avoided losses in his wife's account, and created tremendous losses to investors by passing on millions of dollars in losses to the Funds he managed.

On January 15, 2013, The United States District Court for the Eastern District of New York entered final judgement against Berger and his wife. The final judgment found the Bergers were jointly and severally liable to pay $5,399,456.16 in disgorgement and Berger was found liable for an additional $1,506,297.84, comprised of disgorgement, prejudgment interest, and a civil money penalty. Among other things, the final judgement also enjoined Berger from using any means or instrumentality of interstate commerce, or of the mails, or of any other facility of any national securities exchange to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

3.     Gregory Goldberg ("Goldberg") is an individual and resides and is domiciled in the state New York. Berger has held himself out to Troy Brenes as being an employee and agent of Lawrence Litigation Group, LLP and LRA.

4.    Gary Podell ("Podell") is an individual and resides and is domiciled in the state New York. Podell is believed to be an owner and investor in LRA and is a partner in Lawrence Litigation Group, LLP.

5.    Lawrence Litigation Group, LLP ("Lawrence") holds itself out as a limited liability partnership engaged in the practice of law with its primary place of business in the District of Columbia.  Per its filings with the District of Columbia, Lawrence has three partners – Goldberg, Podell, and Tae Shin. Tae Shin is an individual and resident of Florida.

6.    The true names and capacities of those Counterclaim Defendants designated as DOES 1 through 50, inclusive, whether individual, corporate, associate or otherwise are unknown to Counterclaimants at the time of filing this Complaint, and Counterclaimants, therefore have sued said Counterclaim Defendants by such fictitious names. When the true names, identities or capacities of said fictitiously designated Counterclaim defendants are ascertained, Counterclaimants will seek leave of court to amend this complaint to insert the true names, identities, and/or capacities of DOE Counterclaim Defendants, together with the proper charging allegations.

7.    Counterclaim Plaintiff believe, and therefore allege, that each unknown Doe Counterclaim Defendant 1-50 are, in some manner, legally responsible for the events and happenings set forth in this Complaint, and proximately caused injury and damages to Counterclaim Plaintiffs, as alleged herein.

/ / /

/ / /

/ / /

/ / /

## DIVERSITY JURISDICTION REMAINS

8. Adding these Counterclaim Defendants to this Action does not destroy diversity jurisdiction as complete diversity still exists between Defendants, Brenes Law Group, P.C. and Troy A. Brenes, and all other parties.

9. Defendant Brenes Law Group, P.C. is a corporation that is both organized under and has its principal place of business in the state of California. Defendant Troy Brenes is an individual that resides and is domiciled in the state of California.

10. Cross-Defendant Legal Recovery Associates LLC ("LRA") is a limited liability company organized under the laws of the state of New York. Its principal place of business is also located in the state of New York. On February 14, 2023, LRA filed a statement with this Court further indicating the following:

   a. LRA's members are Pencore Holdings LLC, Swing Rock Trading LLC, and Curiam Investments 2 LLC.

   b. Pencore Holdings LLC's sole member is a traditional trust, the Trustee of which is Bradley Saft, a citizen of Florida.

   c. Swing Rock Trading LLC's sole member is a traditional trust, the trustee of which is Greg Goldberg, a citizen of Puerto Rico.

   d. Curiam Investments 2 LLC's members are entities that are ultimately owned by Owen Cyrulnik (a citizen of New Jersey), Ross Wallin (a citizen of New York), Andrew Dodd (a citizen of a foreign state), and Michael Platt (a citizen of a foreign state).

11. Pencore Holdings LLC is a corporation organized under the laws of South Dakota. It's principal place of business is in the state of North Dakota.

12. Swing Rock Trading, LLC is Limited Liability Company that is both organized under and has its principal place of business in the State of New York. Based on LRA's

statement, Plaintiff alleges Swing Rock Trading, LLC's sole member is a traditional trust, the trustee of which is Greg Goldberg, a citizen of Puerto Rico.

13.    Curiam Investments 2 LLC is a Limited Liability Company that is both organized under and has it principal place of business in the state of Delaware.

## STATEMENT OF FACTS REGARDING DEFENDANTS' AND COUNTERCLAIMANT PLAINTIFFS' AFFIRMATIVE DEFENSES AND COUNTER CLAIMS

1.    On or about December 29, 2016, BLG entered into attorney association agreement with a law firm called Lawrence regarding certain product liability cases.

2.    On or about March 3, 2017, BLG and Lawrence amended their co-counsel relationship agreement to, *inter alia*, include a requirement that Lawrence contribute a minimum dollar amount on a monthly basis towards working up and litigating the joint cases.

3.    These agreements were negotiated with Berger and Goldberg.

4.    Because Lawrence held itself out as having its primary place of business in the District of Columbia and that it was subject to the rules of D.C. Rules of Professional Conduct, BLG required that Lawrence guarantee in the contract that, Lawrence "as a law firm with its primary place of business in the District of Columbia, represents it is in compliance and shall remain in compliance with the D.C. Rules of Professional Conduct relating to participation by non-lawyers." Troy Brenes also specifically requested that Lawrence confirm that the law firm was managed by a lawyer admitted to practice in the D.C. bar and was in fact practicing primarily in the D.C., which Lawrence did.

5.    In or around early 2019, Berger and Goldberg suggested to Troy Brenes that BLG should shift its line of credit from a third-party lender to LRA, an affiliated entity to LLG.

6.    The originally negotiated agreement was that LRA would provide a line of credit of $5,000,000 to $10,000,000 to BLG. However, once the underwriting process was complete, LRA failed to offer a line of credit and instead offered to provide promissory notes on an as needed basis. Each time a promissory note amount was requested, Berger was a part of the process of obtaining the loan.

7.      Upon information and belief, LRA, Berger, Goldberg and Podell fraudulently and without BLG's permission obtained lines of credit from another entity based on the value of BLG's fee interest in its retained cases and used those lines of credit to market for, and refer to, or co-counsel those cases with other law firms in exchange for a portion of the legal fees. Upon information and belief, this entity was Curiam Capital.

8.      By September 2019, Lawrence breached the co-counsel agreement by refusing to contribute the minimum monthly financial contribution. Despite repeated requests for Lawrence to meet its obligations, Lawrence has not contributed in any way whether in the form of financial contribution or litigation work to any of the cases retained by Lawrence or BLG under the Attorney Association Agreement since September 2019.

9.      BLG has also learned that Lawrence breached the co-counsel agreement in other ways. BLG subsequently learned that LRA formed Lawrence as a sham law firm that was never compliant with the D.C. ethics rules that allow participation by and fee splitting to non-lawyers. The sole purpose of Lawrence appears to have been to allow non-lawyers to market for product liability cases and then refer those cases to legitimate law firms in exchange for a portion of the attorney fees without making any effort to comply with the D.C. ethics rules that allow fee splitting to non-lawyers.

10.     Rule 5.4 of the Rules of Professional Conduct for D.C. prohibits fee splitting to non-lawyers unless certain requirements are met. These include: (1) that the law firm has a lawyer licensed in D.C., (2) the sole purpose of the law firm is providing legal services to clients, (3) the non-lawyers involvement is to provide professional services which assist the law firm in providing legal services to client as opposed to providing finical investment, (4) and the non-lawyers must not be partners in the law firm. Lawrence has not complied with these requirements and, therefore, cannot be deemed a legitimate law firm. Indeed, BLG is informed and believes and thereupon alleges that Lawrence did not even employ a lawyer licensed to practice law in D.C. until years after it was formed and marketed and sent product liability cases to BLG.

11.     LRA formed Lawrence as a sham law firm for the sole purpose of nonlawyers

marketing for and sharing in attorney fees from product liability cases. BLG has already raised

these concerns informally with the D.C. Bar and a formal complaint is being prepared.

12.     In September 2020, BLG sought to repay the entire debt owed to LRA stemming

from all promissory notes taken by BLG from LRA, including all accrued interest. BLG did this

in part because it was concerned that LRA would hold BLG hostage by refusing to provide

further loan amounts if BLG challenged Lawrence for its breach of the Attorney Association

Agreement with BLG.

13.     Confirming BLG's fears, LRA acted in bad faith to prevent BLG from repaying

its debts under the promissory notes.

14.     BLG negotiated a new line of credit from a third-party entity that included

amounts specifically earmarked to pay all debts owed to LRA. The third-party entity simply

requested that LRA sign a letter indicating the promissory notes had been paid off once the funds

were transferred.

15.     In bad faith, LRA refused to sign the payoff letter. LRA demanded that the letter,

which solely involved repayment of loans between BLG and LRA, include language regarding

unrelated agreements between Lawrence and BLG. Specifically, LRA through its agent Berger

demanded the letter include language stating that BLG's attorney association agreement between

BLG and Lawrence, as discussed above, was "valid, enforceable, [and] in good standing." Troy

Brenes repeatedly explained to agents of LRA, including specifically Berger, that it was

improper to hold BLG's ability to pay its debts to LRA and obtain alternative funding hostage by

demanding that BLG falsely state that an agreement with a separate entity not having anything to

do with those debt was enforceable and in good standing. However, LRA and Berger refused to

withdraw its bad faith demand.

16.     Seeing the unreasonable response from LRA, BLG's third-party credit provider

agreed to dispense with the requirement of a payoff letter. Therefore, on October 29, 2020, BLG

notified LRA and Berger that the payoff letter was no longer necessary and that all BLG needed

to pay off all debts owed by BLG to LRA was the current amount owed and the account

information necessary to wire the money.  Despite this communication and numerous additional communications through January 2021, LRA still refused to disclose the amount owed or the relevant account information so that BLG could pay off the debts owed to LRA pursuant to all promissory notes.

17.    BLG eventually gave up the effort to repay LRA as it was clear that LRA would not cease its bad faith efforts to hold BLG hostage by preventing repayment from the third party lender and thereby preventing other lenders to work with BLG.

18.    BLG was able to eventually negotiate another line of credit, which included setting aside an estimated amount owed to LRA. BLG has had to pay interest on that amount since early 2021.

<u>COUNTER CLAIMS BY COUNTERCLAIMANTS<br>BRENES LAW GROUP, P.C. AND TROY BRENES</u>

**I.**

**COUNTER CLAIM FOR BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING BY BLG AND TROY BRENES AGAINST LRA**

1.    Counterclaim Plaintiffs incorporates by reference all factual allegations included in the Counter Claimants Statement of Facts above.

2.    LRA breached the duty of good faith and fair dealing owed to BLG and Troy Brenes by intentionally and knowingly preventing BLG from repaying the debts in 2020 and 2021.

3.    This bad faith conduct consisted of, *inter alia*, refusing to disclose the total amount debt owed, refusing to disclose the account information necessary for BLG to wire repayment funds, and by demanding terms be inserted into a payoff letter required by BLG's new lender that had no relevance to the promissory notes or repayment thereof, but rather sought to force BLG into improper concessions regarding an attorney association agreement relationship with a separate entity.

4.    As a result of LRA's breach of the duty of good faith and fair dealing Counterclaim Plaintiffs suffered financial harm. This includes, *inter alia,* any interest that was

owed to LRA that accrued after September 2019. It also includes the interest that BLG accrued on the funds that were set aside by BLG to repay LRA in early 2021.

## II.
## COUNTER CLAIM FOR UNJUST ENRICHMENT BY BLG AGAINST ALL COUNTERCLAIM DEFENDANTS

5.      Counterclaim Plaintiff incorporates by reference all factual allegations included in the Statement of facts above.

6.      Counterclaim Defendants LRA, Berger, Goldberg, Podell, and Lawrence are liable to BLG for unjust enrichment.

7.      Berger, Goldberg and Podell fraudulently and without BLG's permission obtained lines of credit from another entity based on the value of BLG's fee interest in its retained cases and used those lines of credit to market for cases and refer or co-counsel those cases with other law firms in exchange for a portion of the legal fees.

8.      Upon information and belief, the entity was Curiam Capital.

9.      Upon information and belief, Lawrence was used as an intermediary to refer or co-counsel on some of these cases.

10.     Counterclaim Defendants' conduct caused them to be unjustly enriched at BLG's expense. Counterclaim Defendants should be required to disgorge any profits, whether past or future, that were gained by leveraging the value of BLG's cases to obtain lines of credit and then using those lines of credit to market for cases and co-counsel or refer those cases to other law firms in exchange for rights to any fees recovered. Counterclaim Defendants should also be prohibited from recovery of the difference in the between the interest rate offered to them on the line of credit obtained from Curiam Capital versus what LRA charged to BLG.

## III.
## COUNTER CLAIM FOR FRAUD AND FRADULENT CONCEALMENT AGAINST ALL COUNTERCLAIM DEFENDANTS

11.     Counterclaim Plaintiff incorporates by reference all factual allegations included in the Statement of facts above.

12.     Counterclaim Defendants LRA, Berger, Goldberg, and Podell are liable to BLG

for fraud.

13.     LRA, Berger, Goldberg and Podell fraudulently and without BLG's permission obtained lines of credit from another entity based on the value of BLG's fee interest in its retained cases and used those lines of credit to market for cases and refer or co-counsel those cases with other law firms in exchange for a portion of the legal fees. Upon information and belief, this entity was Curiam Capital.

14.     Counterclaim Defendants obtained these lines of credit by fraudulently representing to Curiam Capital that they had permission to leverage the attorney fees in the cases represented by BLG in order to obtain a line of credit.

15.     In the alternative, Counterclaim defendants fraudulent concealed from Curiam Capital and BLG that it was seeking leverage the value of the attorney fees in the cases represented by Brenes Law Group, P.C. to obtain these lines of credit from Curiam Capital even though Counterclaim Defendants did not own such interest and did not have the authority to do so.

16.     BLG has been injured by Counterclaimants fraud or fraudulent concealment in that the value of BLG's attorney fees were leveraged without BLG's permission to obtain lines of credit that were then used to finance other law firms.

**PRAYER FOR RELIEF**

WHEREFORE, Defendants and Counterclaim Plaintiffs, pray this Court:

(a)     That Plaintiff Legal Recovery Associates LLC recover nothing or, in the alternative, that said Defendant be limited to recovery of the loan amount and interest that was due as of September 2020 when Plaintiff acted to knowingly and in bad faith prevent Defendants from repaying the loans.

(b)     That Defendants and Counterclaim Plaintiffs be awarded damages from LRA in the amount of the interest accrued on the funds that were put aside in early 2021 by BLG to account for an estimated amount of the debt owed to LRA.

(c)     That Defendants and Counterclaim Plaintiffs be awarded reasonable attorneys'

fees and litigation expenses incurred in this action against LRA; and

      (d)    That Counterclaim Defendants be ordered to pay Defendants and Counterclaim Plaintiffs statutory costs, disbursements, and such other and further relief as is just and proper, including disgorgement of present and future profits obtained by said persons and entities by leveraging the value of BLG's attorney fees in its retained cases in order to obtain lines of credit and then using said lines of credit to market for cases and then refer those cases to other law firms in exchange for a portion of the attorney fees.

Dated:  May 19, 2023          Respectfully Submitted,

                     By:     /s/ Troy A. Brenes
                         Troy A. Brenes on behalf of himself and
                         Brenes Law Group, P.C.