# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEGAL RECOVERY ASSOCIATES LLC

    *Plaintiff,*

-against-

BRENES LAW GROUP, P.C.
    *Defendant,*

**DEFENDANT'S ANSWER AND COUNTERCLAIM**

Case No. 1:23-cv-02446

BRENES LAW GROUP, P.C., ("BLG") hereby answers Plaintiff's complaint and asserts a counter claims against LEGAL RECOVERY ASSCOIATES LLC ("LRA").

## INTRODUCTION

1. Admitted.

## JURISDICTION AND VENUE

2. Admitted.

3. Admitted.

4. Admitted.

## THE PARTIES

5. Admitted.

6. Admitted.

## STATEMENT OF FACTS

7. Admitted.

8. Admitted.

9. Denied in part. Defendant admits the interest rate is specified at 17.5%. However, the agreements allow repayment at any time by any legal tender without any prepayment or penalty.

10. Denied in part. The agreements allow repayment at any time by any legal tender without any prepayment or penalty.

11. Denied in part. Plaintiff has inserted words not present in the documents in the quotation.

12. Denied in part. Plaintiff does not correctly state the language of the document. The correct language is located on the left hand column in the sixth full paragraph, which begins with "At the option of the lender…."

13. Denied in part. Plaintiff does not correctly state the language of the document. The correct language is located on the left hand column in the sixth full paragraph, which begins with "At the option of the lender…."

14. Admitted.

15. Denied.

16. Denied. LRA had been informed many months before that BLG had entered into a line of credit with a third-party provider and viewed LRA as being in breach.

17. Admitted.

18. Denied.

19. Denied.

20. Denied.

21. Admitted in part. Defendant admits it did not make any payment to LRA in February 2024.

22. Denied. Defendant has repeatedly in late 2020 and early 2021 communicated in writing regarding LRA's bad faith efforts to prevent BLG from repaying all amounts owed under the promissory notes.

23. The "factual" statement is compound and argumentative. Plaintiff cannot reasonably admit or deny the statement. Defendant's defenses and factual support are alleged herein.

24. Denied.

25. Denied.

26. Denied in part. The statement is improperly compound and misstates the contents of the email. It also contains facts statement that Defendant lacks sufficient information to admit or deny.

27. Denied. The statement is improper and misleadingly as it misstates the contents of the communication.

28. Denied.

29. Denied.

30. Denied.

31. Denied.

### AS AND FOR CAUSE OF ACTION: BREACH OF CONTRACT

32. Defendant incorporates by reference all responses to the preceding paragraphs as though restated fully herein.

33. Denied.

34. Denied.

3

35. Denied.

36. Denied.

## DEFENDANT'S DEMAND FOR RELIEF

37. Furthermore, responding to the unnumbered Paragraphs, including sub-parts, following the heading "DEMAND FOR RELIEF" and beginning "WHEREFORE," Defendant denies that it is liable to Plaintiff in any manner and deny each and every allegation contained in such Paragraphs and all sub-parts thereof, separately and severally, to the extent said allegations imply any wrongdoing by Defendant. Defendant further denies Plaintiff is entitled to the relief requested in the "DEMAND FOR RELIEF" Paragraphs, including all sub-parts thereof. Defendant further denies each and every allegation not specifically admitted herein.

## DEFENDANT'S AFFIRMATIVE DEFENSES

38. Plaintiff's claims are barred, in whole or in part, by the defenses set forth below. Defendant incorporates by reference all facts stated under Defendant's Statement of Facts Regarding Affirmative Defenses and Counter Claim below. By setting forth these defenses, Defendant does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff. Defendant reserves the right to plead any and all affirmative defenses that may become evident or appreciated after investigation and discovery in this matter. Defendant alleges as affirmative defenses the following:

39. **First Affirmative Defense:** Plaintiff is barred from the relief sought in the complaint as a result of unclean hands.

40. **Second Affirmative Defense:** Plaintiff's claims are barred or, in the alternative, limited as Plaintiff's damages are the result of its own breach of its obligations under the

promissory notes to allow Defendant to prepay the promissory notes.

41. **Third Affirmative Defense:** Plaintiff's damages are barred or should be reduced as Plaintiff failed to mitigate its damages by taking actions designed to prevent Defendant from being able to repay the debt.

42. **Fourth Affirmative Defense:** Defendant's performance was excused, and Defendant would have performed their obligations under the promissory notes but for Plaintiff's interference with defendant's ability to perform.

43. **Fifth Affirmative Defense:** Defendant's performance was excused as Plaintiff's conduct made it an impossibility for Defendant to perform.

44. **Sixth Affirmative Defense:** Plaintiff's claims are barred or, in the alternative should be limited, under the doctrine of Laches, as Plaintiff acted to prohibit Defendant from paying off its debts in 2020 and 2021 under the promissory notes and then waited an unreasonable amount of time to claim Defendant refused to pay the debts.

45. **Seventh Affirmative Defense:** Plaintiff's claims are barred or, in the alternative should be limited, as Plaintiff acted in bad faith to prevent Defendant from repaying the debts owed under the promissory notes in 2020 and 2021.

46. **Eighth Affirmative Defense:** Plaintiff's claims are barred or, in the alternative should be limited, as Defendant made a tender offer to repay all amounts owed under all promissory notes to LRA. Defendant specifically stated it was ready and willing to pay all amounts Plaintiff claimed were owed, Defendant just need the alleged amount and account information necessary to send payment. Plaintiff refused to provide this information when requested. Specifically, no interest on these promissory notes should be deemed to have accrued as of September 2020.

47. **Ninth Affirmative Defense:** BLG may void the promissory note agreements as they are part of LRA's "private placement" agreements and Howard Berger meets the definition of a "Bad Actor" as defined in Rule 506 of Regulation D under the Securities Act of 1933, to implement Section 926 of the Dodd-Frank Wall Street Reform and Consumer Protection Act. As result, LRA recovery should be barred or, in the alternative should be limited in respect to accrued interest.

## STATEMENT OF FACTS REGARDING DEFENDANT'S AFFIRMATIVE DEFENSES AND COUNTER CLAIM

48. Howard R. Berger ("Berger") is an individual and resides and is domiciled in the state New York. Berger has held himself out to Troy Brenes as being an employee of LRA.

49. On September 21, 2012, the SEC filed a complaint against Berger. The complaint alleged that no later than July 2008 through approximately early March 2010, Berger engaged in a fraudulent trade allocation scheme commonly referred to as "cherry picking." Berger utilized a direct-access trading platform to delay final allocation of the trades until the end of the trading day, frequently after the market closed, so he could determine whether the trades were profitable. Berger managed two hedge funds, Professional Traders Fund, LLC ("PTF") and Professional Offshore Opportunity Fund ("POOF"). Oftentimes, Berger cherry picked profitable trades from PTF and allocated those trades to his wife's brokerage account, and allocated unprofitable trades to POOF. As a result, Berger received at least $6.8 million in profits and avoided losses in his wife's account, and created tremendous losses to investors by passing on millions of dollars in losses to the funds he managed.

50. On January 15, 2013, The United States District Court for the Eastern District of New York entered final judgement against Berger. The final judgment found Berger was liable

to pay $5,399,456.16 in disgorgement and was found liable for an additional $1,506,297.84, comprised of disgorgement, prejudgment interest, and a civil money penalty. Among other things, the final judgement also enjoined Berger from using any means or instrumentality of interstate commerce, or of the mails, or of any other facility of any national securities exchange to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

51. BLG was not aware of Berger's criminal and fraudulent history when it entered into agreements with him and LRA.

52. In early 2019, Berger suggested to Troy Brenes ("Brenes") that BLG should shift its line of credit from a third-party lender to LRA to obtain a lower interest rate and higher credit limit. The originally negotiated agreement was that LRA would provide a line of credit of $5,000,000 to $10,000,000 to BLG. As part of the underwriting process, Berger told Brenes that he needed to submit information regarding BLG's cases for valuation.

53. However, once the underwriting process was complete, Berger and LRA failed to offer a line of credit and instead offered to provide promissory notes on an as needed basis. Each time a promissory note amount was requested, Berger was a part of the process of obtaining the loan.

54. LRA and Berger used the information BLG had submitted without BLG's permission to raise funds from investors based on the value of BLG's fee interest in its retained cases, and used those funds to market for, and refer to, or co-counsel those cases with other law firms in exchange for a portion of the legal fees.

55. On July 9, 2019, Berger, on behalf of LRA electronically mailed a proposed promissory note offer to Troy Brenes ("Brenes") on behalf of Brenes Law Group, P.C. ("BLG").

7

Included in LRA's email communication was a request for a Personal Guarantee from Brenes in favor of LRA regarding the July 8, 2019 Promissory Note.

56. BLG and Brenes executed the documents and returned them via electronic mail on July 9, 2019 labeled as "Signed Promissory Note 7.9.19.pdf" and "Notarized Guarantee Agreement."

57. The Personal Guarantee was limited in application solely to the July 8, 2019 Promissory Note.

58. The Personal Guarantee Agreement states that regardless of any language in the Guarantee Agreement, including any statement regarding waiver of defenses, Brenes would only be liable under specifically limited and enumerated circumstances, The exact language provides as follows:

(b) Anything herein the contrary notwithstanding, the Guarantor shall be liable hereunder only to the extent that the Borrower fails to repay any Indebtedness as a result of:

(i) fraud or willful misconduct by the Borrower or any of its Affiliates (including the Guarantor), agents or representatives in connection with the Note;

(ii) the Borrower's or the Guarantor's misapplication or misappropriation of funds of the Borrower;

(iii) the Borrower's or the Guarantor's misapplication or misappropriation of insurance proceeds; or

(iv) any act of criminal conduct by the Borrower or any of its Affiliates (including the Guarantor), agents or representatives;

(v) any representation, warranty, certification or other statement made or deemed made by the Guarantor or the Borrower at any time given by the Guarantor or the Borrower pursuant to or in connection with this Agreement or the Note shall have been false in any material respect as of the date made;

(vi) the Guarantor is convicted of or pleads guilty to a felony, or the Guarantor willfully violates any material laws or material legal requirements relating to the business property or assets of the Borrower;

(vii) the Guarantor is disbarred or suspended from the practice of law in any State material to the operations of the Borrower or otherwise suffers the loss of license or ability or right to practice law in any State material to the operations of the Borrower, or the Borrower ceases to or is restricted from operating as a law firm or being involved in the practice of law, or is disallowed from receiving or sharing case proceeds pursuant to any disciplinary action; or

(viii) the Guarantor leaves the law firm of Brenes Law Group, PC, whether by resignation, dismissal or otherwise, or the Guarantor practices law or is otherwise in any way involved in the practice of law other than through the law firm of Brenes Law Group PC, whether individually or through any other law firm or other enterprise.

9

59. LRA refused, however, to accept the July 8 Promissory Note and would not provide the agreed upon consideration. Instead, LRA demanded that Plaintiff sign a new Promissory Note on July 10, 2019. BLG signed and returned the new Promissory Note. This promissory note differed substantially in respect to material terms.

60. LRA never requested another personal guarantee agreement, nor did Brenes offer one.

61. BLG entered into a second promissory note with LRA on or about September 12, 2019.

62. BLG thereafter entered into several additional promissory note agreements with LRA as follows:

| Approximate date | Amount |
| --- | --- |
| December 9, 2019 | $500,000 |
| March 5, 2020 | $250,000 |
| June 5, 2020 | $200,000 |
| August 6, 2020 | $150,000 |
| August 31, 2020 | $150,000 |
| October 13, 2020 | $150,000 |

63. Each of these promissory notes allowed BLG to prepay the notes at any time without any instruction or limitation regarding the manner of repayment with the exception that it had to be in legal tender.

64. The relevant language provided the following:

> All sums called for, payable, or to be paid hereunder shall be paid in lawful money of the United States of America, which, at the time of payment, is legal tender for the payment of public and private debts therein.
> The Maker shall have the right to prepay this Note, either in whole or in part, without any prepayment fee or penalty, but together with interest accrued to the date of prepayment.

65. These additional Promissory Notes do not contain provisions waiving all defenses.

66. Each of these additional Promissory Notes state that "Payment date" means the date on which Maker [BLG] receives payment of any award in respect of all product liability litigations, whether as a result of judgment, settlement or otherwise."

67. From late 2020 through early 2021, BLG made repeated efforts to repay the debt owed to LRA under all above-identified promissory notes, including all accrued interest.

68. LRA intentionally and knowingly breached the promissory notes by acting in bad faith so as to prevent BLG from being able to repay any debts owed under the promissory notes.

69. BLG negotiated a new line of credit from a third-party entity that included the requirement of prepayment of all debts owed to LRA. The third-party entity simply requested that LRA agree to sign a letter indicating the promissory notes had been paid off once the funds were transferred.

70. In bad faith, LRA refused to sign the payoff letter. LRA demanded that the letter, which solely involved repayment of loans between BLG and LRA, include language regarding unrelated agreements between BLG and another law firm. Specifically, LRA demanded the letter include language stating that BLG's attorney association agreement between BLG and another law firm was "valid, enforceable, [and] in good standing." Brenes repeatedly explained to agents of LRA that it was improper to hold BLG's ability to pay its debts to LRA and obtain alternative funding hostage by demanding that BLG falsely state that an agreement with a separate entity not having anything to do with those debts was enforceable and in good standing. However,

11

LRA refused to withdraw its bad faith demand.

71. BLG's third-party credit provider ultimately agreed to dispense with the requirement of a payoff letter after substantial delay. Therefore, on October 29, 2020, BLG notified LRA and Berger that the payoff letter was no longer necessary and that BLG was ready, willing and able to pay off all amounts owed to LRA and that all BLG needed to do so was the current amount owed and the account information necessary to wire the money. Despite this communication and numerous additional communications through January 2021, LRA still refused to disclose the amount owed or the relevant account information so that BLG could pay off the debts owed to LRA pursuant to all promissory notes.

72. BLG eventually gave up the effort to repay LRA as it was clear that LRA would not cease its bad faith efforts to hold BLG hostage by preventing repayment from the third-party lender and thereby preventing other lenders to work with BLG. BLG entered into the credit line agreement with the third-party entity and notified LRA of same.

73. After substantial further delay, LRA eventually disclosed what it alleged it was owed. However, LRA insisted that BLG was required to pay all interest that accrued from the date LRA knowingly and in bad faith acted to block BLG's ability to repay the loan to the present. LRA has consistently held that any payments made by BLG would be applied to disputed interest first.

74. LRA and Berger's conduct as described herein constitutes what the United States Securities and Exchange commission define as "private placements," which allow LRA and LLG to avoid regulation under the Investment Company Act of 1940 and the Securities Act of 1933. However, Rule 506(d) provides that if any "Bad Actor" is involved in the transactions, including solely as a negotiator, anyone may terminate any part of the transaction. Berger meets the definition of a Bad Actor.

75. Pursuant to Rule 506(d), BLG has the right to declare void the additional promissory notes negotiated between Berger and BLG.

# COUNTER CLAIMS BY BRENES LAW GROUP, P.C. AGAINST LEGAL RECOVERY ASSOCIATES LLC

## I.

**COUNTER CLAIM FOR BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**

76. BLG incorporates by reference all factual allegations included in the Counter Claimants Statement of Facts above.

77. LRA breached the duty of good faith and fair dealing owed to BLG by intentionally and knowingly preventing BLG from repaying the debts in 2020 and 2021.

78. This bad faith conduct consisted of, *inter alia*, refusing to disclose the total amount debt owed, refusing to disclose the account information necessary for BLG to wire repayment funds, and by demanding terms be inserted into a payoff letter required by BLG's new lender that had no relevance to the promissory notes or repayment thereof, but rather sought to force BLG into improper concessions regarding an attorney association agreement relationship with a separate entity. It also includes subsequently demanding payment of interest accrued after it knowingly and in bad faith acted to prevent BLG from paying of the loan amounts.

79. As a result of LRA's breach of the duty of good faith and fair dealing BLG suffered financial harm. This includes any interest that was owed to LRA that accrued after September 2020.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## DEFENDANT'S PRAYER FOR RELIEF

WHEREFORE, Defendant prays this Court:

(a) That Plaintiff Legal Recovery Associates LLC recover nothing or, in the alternative, that said Defendant be limited to recovery of the loan amount and interest that was due as of September 2020 when Plaintiff acted to knowingly and in bad faith prevent Defendant from repaying the loans.

(b) That Defendant be awarded reasonable attorneys' fees and litigation expenses incurred in this action against LRA; and

Dated: July 28, 2023                 Respectfully Submitted,


By: \_\_\_/s/ Troy A. Brenes_____
    Troy A. Brenes on behalf of
    Brenes Law Group, P.C.


## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the foregoing was served on the 28th day of July 2023 via the courts CM/ECF system, which caused all parties of record to be served by electronic means.

/s/ Troy A. Brenes
Troy A. Brenes