UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEGAL RECOVERY ASSOCIATES LLC     Case No. 22-CV-1778 (ER)(BCM)

   *Plaintiff,*

-against-

BRENES LAW GROUP, P.C. et al.
   *Defendants,*

LEGAL RECOVERY ASSOCIATES, LLC,

   *Plaintiff,*     Case No. 23-CV-2446 (ER)(BCM)

-against-

BRENES LAW GROUP, P.C.,
   *Defendant.*

CONSOLIDATED CASES

**RESPONSE IN OPPOSITION TO LEGAL RECOVERY ASSOCIATES, LLC's MOTION TO STRIKE AFFIRMATIVE DEFENSES AND ALLEGATIONS**

Defendant Brenes Law Group, P.C., hereby respond to Plaintiff's Motion to Strike Certain Affirmative Defendants and Factual Allegations.

   **I.**     **ISSUES PRESENTED**

   **a.** Can Plaintiff establish that it will be prejudiced unless Defendant's First and Sixth Affirmative Defenses for unclean hands and laches are dismissed where the identical claims continue unchallenged in the consolidated case regarding two earlier promissory notes and the facts underlying Defendant's counter claim for breach of good faith and fair dealing and multiple

other unchallenged defenses in this case all rely on the same set of facts and circumstances necessary to support Defendant's First and Sixth Cause of Action.

      **b.** Whether the Court should take the extraordinary step of striking factual allegations in Defendant's answer despite guidance from the appellate courts that there is a very high bar for such action give that questions are to relevance and admissibility required the context of an ongoing and unfolding trial to be properly decided and such decisions cannot ordinarily be made based on the pleadings.

    **II.**    **STATEMENT OF FACTS**

Howard R. Berger ("Berger") is an individual who held himself out to Troy Brenes as being an employee of LRA. Case No. 1:23-cv-02446, ECF Dkt. No. 13 at para 48 (Hereinafter "Defendant's Answer").

On September 21, 2012, the SEC filed a complaint against Howard Berger.[1] The complaint alleged that no later than July 2008 through approximately early March 2010, Berger engaged in a fraudulent trade allocation scheme commonly referred to as "cherry picking." Berger utilized a direct-access trading platform to delay final allocation of the trades until the end of the trading day, frequently after the market closed, so he could determine whether the trades were profitable. Berger managed two hedge funds, Professional Traders Fund, LLC ("PTF") and Professional Offshore Opportunity Fund ("POOF"). Oftentimes, Berger cherry picked profitable trades from PTF and allocated those trades to his wife's brokerage account, and allocated unprofitable trades to POOF. As a result, Berger received at least $6.8 million in profits and avoided losses in his wife's account, and created tremendous losses to investors by passing on millions of dollars in losses to the funds he managed.

On January 15, 2013, The United States District Court for the Eastern District of New York entered final judgement against Berger. Def's Answer at para. 50. The final judgment found Berger was liable to pay $5,399,456.16 in disgorgement and was found liable for an additional $1,506,297.84, comprised of disgorgement, prejudgment interest, and a civil money penalty. *Id.* Among other things, the final judgement also enjoined Berger from using any means or instrumentality of interstate commerce, or of the mails, or of any other facility of any national securities exchange to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person. *Id.*

BLG was not aware of Berger's criminal and fraudulent history when it entered into agreements with him and LRA. *Id.* at para. 51.

In early 2019, Berger suggested to Troy Brenes ("Brenes") that BLG should shift its line of credit from a third-party lender to LRA to obtain a lower interest rate and higher credit limit. *Id.* at para. 52. The originally negotiated agreement was that LRA would provide a line of credit of $5,000,000 to $10,000,000 to BLG. *Id. As* part of the underwriting process, Berger told Brenes that he needed to submit information regarding BLG's cases for valuation. *Id.*

However, once the underwriting process was complete, Berger and LRA failed to offer a line of credit and instead offered to provide promissory notes on an as needed basis. *Id.* at para. 52. Each time a promissory note amount was requested, Berger was a part of the process of obtaining the loan. *Id.*

LRA and Berger used the information BLG had submitted without BLG's permission to raise funds from investors based on the value of BLG's fee interest in its retained cases, and used those funds to market for, and refer to, or co-counsel those cases with other law firms in

---

[1] All factual statements in the paragraph as taken from paragraph 49 of Defendant's Answer.

exchange for a portion of the legal fees. *Id.* at para. 54.

BLG thereafter entered into several promissory note agreements with LRA as follows:

| Approximate date | Amount |
| --- | --- |
| December 9, 2019 | $500,000 |
| March 5, 2020 | $250,000 |
| June 5, 2020 | $200,000 |
| August 6, 2020 | $150,000 |
| August 31, 2020 | $150,000 |
| October 13, 2020 | $150,000 |

*Id.* at para. 62. Each of these promissory notes allowed BLG to prepay the notes at any time without any instruction or limitation regarding the manner of repayment with the exception that it had to be in legal tender. *Id.* at para. 63. These Promissory Notes do not contain provisions waiving defenses and no personal guarantee applies. *Id.* at para. 65.

From late 2020 through early 2021, BLG made repeated efforts to repay the debt owed to LRA under all above-identified promissory notes, including all accrued interest. *Id.* at para. 67. LRA intentionally and knowingly breached the promissory notes by acting in bad faith so as to prevent BLG from being able to repay any debts owed under the promissory notes. *Id.* at para. 68.

BLG negotiated a new line of credit from a third-party entity that included the requirement of prepayment of all debts owed to LRA. *Id.* at para. 69. The third-party entity simply requested that LRA agree to sign a letter indicating the promissory notes had been paid off once the funds were transferred. *Id.*

In bad faith, LRA refused to sign the payoff letter. *Id.* at para. 67. LRA demanded that the letter, which solely involved repayment of loans between BLG and LRA, include language regarding unrelated agreements between BLG and another law firm. *Id.* Specifically, LRA demanded the letter include language stating that BLG's attorney association agreement between BLG and another law firm was "valid, enforceable, [and] in good standing." *Id.* Brenes repeatedly explained to agents of LRA that it was improper to hold BLG's ability to pay its debts to LRA and obtain alternative funding hostage by demanding that BLG falsely state that an agreement with a separate entity not having anything to do with those debts was enforceable and in good standing. However, LRA refused to withdraw its bad faith demand. *Id.*

BLG's third-party credit provider ultimately agreed to dispense with the requirement of a payoff letter after substantial delay. *Id.* at para. 71. Therefore, on October 29, 2020, BLG notified LRA and Berger that the payoff letter was no longer necessary and that BLG was ready, willing and able to pay off all amounts owed to LRA and that all BLG needed to do so was the current amount owed and the account information necessary to wire the money. *Id.* Despite this communication and numerous additional communications through January 2021, LRA still refused to disclose the amount owed or the relevant account information so that BLG could pay off the debts owed to LRA pursuant to all promissory notes. *Id.*

BLG eventually gave up the effort to repay LRA as it was clear that LRA would not cease its bad faith efforts to hold BLG hostage by preventing repayment from the third-party lender and thereby preventing other lenders to work with BLG. *Id.* at para. 72. BLG entered into the credit line agreement with the third-party entity and notified LRA of same. *Id.*

After substantial further delay, LRA eventually disclosed what it alleged it was owed. *Id.* at para. 73. However, LRA insisted that BLG was required to pay all interest that accrued from

the date LRA knowingly and in bad faith acted to block BLG's ability to repay the loan to the present. LRA has consistently held that any payments made by BLG would be applied to disputed interest first. *Id,*

### III. ARGUMENT

#### a. Plaintiff's Motion to Strike Defendants' First and Sixth Affirmative Defenses Should Be Denied As Defendants Cannot Establish Prejudice

Motions to strike affirmative defenses are generally disfavored, see *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), vacated on other grounds, 478 U.S. 1015, 106 S. Ct. 3324, 92 L. Ed. 2d 731 (1986), and in considering such a motion, all reasonable inferences will be drawn in favor of the non-moving party, see *Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, No. 07 Civ. 9580(HB), 2008 U.S. Dist. LEXIS 92988, 2008 WL 4833001, at *4 (S.D.N.Y. Nov. 5, 2008). For a plaintiff to prevail on a motion to strike an affirmative defense: "(1) there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense." *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010); accord *Cognex Corp. v. Microscan Sys., Inc.*, 990 F. Supp. 2d 408, 418 (S.D.N.Y. 2013). Here, because Plaintiff did not move to strike the same affirmative defenses in the other consolidated case and because the facts underlying these alleged defenses are the same as those supporting all of Defendants' Affirmative Defenses, Plaintiff cannot establish that it will suffer prejudice unless these Affirmative Defenses are stricken.

This case was consolidated with case number on August 3, 2023 because the case involves the same parties and common underlying facts and defenses. See, Case No. 1:23-cv-02446, ECF Dkt. No. 17.  Both actions involve a series of promissory notes between Brenes Law

Group, P.C. and LRA and Defendant's allegations that Plaintiff breached the promissory notes and acted in unfair and unlawful manner by intentionally preventing Brenes Law Group, P.C. from repaying the promissory notes and then claiming Brenes Law Group, P.C. owed interest that accrued after the date Defendant tried to repay the loan amounts. Howard Berger was the negotiating party on behalf of LRA and involved in all efforts to frustrate Plaintiff's ability to repay the loans. In both cases, BLG asserted Affirmative defenses for Unclean Hands and Laches. The facts necessary to support Defendant's counter claim of breach of duty of good faith and fair dealing and the unchallenged affirmative defenses are the same as those necessary to support Defendant's Unclean Hands and Laches defenses, which relate to Plaintiff's bad faith effort to prevent BLG from repaying the debts and then claiming BLG owed interest for the time periods after LRA knowingly prevented BLG from repaying the debt. Therefore, Plaintiff cannot establish prejudice as no new or different discovery will be required unless these Affirmative Defenses are dismissed.

    b. **Defendants' Truthful Allegations Regarding Howard Berger's History of Intentionally Violating Fiduciary and Good Faith Duties to Others and the Resulting Judgement Against Him Should Not Be Stricken Pursuant to Rule 12(f)**

Defendant's allegations in its complaint include allegations regarding the final judgement entered against Berger relating to his intentional fraud, breach of fiduciary duty, and violation of good faith stemming from his fraudulent scheme to steal millions of dollars from his own clients. *See*, Case No. 1:23-cv-02446, ECF Dkt. No. 13 at para. 49-50. As part of the judgement, Berger was enjoined from using any means or instrumentality of interstate commerce, or of the mails, or of any other facility or any national securities exchange to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person. *Id.* Further, as

7

alleged in the Answer, Plaintiff through the efforts of Berger breached the promissory notes and excused Defendants duty by acting in bad faith to prevent Defendant from exercising its rights to repay the debts owed. Berger and LRA's conduct in entering into promissory notes regarding which they had no intention to honor and then acting to prevent Defendant from exercising its rights under the contract is sort of fraudulent and deceitful practice Berger is prohibited from doing. Relying on *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887 (2d Cir. 1976) and its progeny Plaintiff seeks to strike these allegations as immaterial and impertinent. However, these cases are inapposite.

First, as explained in *Lipsky*, there is a very high bar for a court to tamper with the pleadings:

> In deciding whether to strike a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible. The Federal Rules of Civil Procedure have long departed from the era when lawyers were bedeviled by intricate pleading rules and when lawsuits were won or lost on the pleadings alone. Thus the courts should not tamper with the pleadings unless there is a strong reason for so doing.
>
> Evidentiary questions, such as the one present in this case, should especially be avoided at such a preliminary stage of the proceedings. Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided. And ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint - on the grounds that the material could not possibly be relevant - on the sterile field of the pleadings alone.

*Lipsky* 551 F.2d at 893-895 (citations omitted). As the Lipsky court noted the court should refrain from striking pleadings at this preliminary stage as questions of relevancy and admissibility require context not present at the pleading stage.

Second, the decision to affirm the lower court's decision to strike pleadings in *Lipsky* is inapposite of this case because in *Lipsky* the stricken allegations related to an entity not involved

in the case. *Id.* at 893-894. Unlike *Lipsky,* Berger is a direct representative of LRA and is a central figure in this case as all communications between BLG and LRA involved Berger. Facts relating to the judgment against Berger for such a massive and widespread fraudulent scheme and theft could be probative of his credibility as a witness, whether Berger and LRA were knowingly breaching the consent order by entering into the agreements with BLG, or whether the failure to disclose this information alone could represent a breach of the agreements. Defendant respectfully requests that the motion to strike these pleadings be denied.

### c. Defendant Withdraws It's Ninth Affirmative Defense

While the relevant case law indicates that Plaintiff's efforts to obtain funds from investors, which included investors gaining an ownership stake in Plaintiff, that Plaintiff then turned around and loaned to Defendant for development of its business in exchange for a profit of 17% interest for a contract not limited to nine months represents a private placement scheme and the loans themselves were securities, Defendant will withdraw this affirmative defense as to the promissory notes at issue in this complaint. See, *Exchange Nat. Bank of Chicago v. Touche Ross & Co.*, 544 F2d 1126 (1976)(developing family resemblance test for determining what is a security).

### IV.   CONCLUSION

For the foregoing reasons, Defendant respectfully requests an order denying the Motion to Strike Defendant's First and Sixth Affirmative Defenses as well as the Motion to Strike factual allegation regarding Howard Berger. Defendants voluntarily withdraws its Ninth Affirmative defense.

Dated: September 1, 2023             Respectfully Submitted,

By: /s/ Troy A. Brenes

Troy A. Brenes (admitted PHV)
Brenes Law Group, P.C.
100 Spectrum Center Drive, Ste. 330
Irvine, California 92618
Tel: 949.397.9360
Fax: 949.607.4192
Tbrenes@breneslawgroup.com

Counsel for Defendants and Counterclaim Plaintiffs

SERVICE LIST
Legal Recovery Associates v. Brenes Law Group, P.C., et al.
Case No. 22-cv-1778 (ER) (BCM)

STATE OF CALIFORNIA, COUNTY OF ORANGE COUNTY

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 100 Spectrum Ctr. Dr., Suite 330, Irvine, California, 92618.

On September 1, 2023, I served the foregoing documents described as: **RESPONSE IN OPPOSITION TO LEGAL RECOVERY ASSOCIATES, LLC's MOTION TO STRIKE AFFIRMATIVE DEFENSES AND ALLEGATIONS** on all interested parties in this action by placing a true copy thereof addressed as follows:

Andrew Todd Solomon
SOLOMON & CRAMER, LLP
25 West 39th St., Ste 7th floor
New York, NY 10018

**ATTORNEYS FOR PLAINTIFF & COUNTER DEFENDANT
LEGAL RECOVERY ASSOCIATES LLC**

[ x ]   BY REGULAR MAIL - I deposited such envelope in the mail at Irvine, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business.

[ x ]   (State)   I declare under penalty of perjury under the laws of the State of California that the above is true and correct

Executed on September 1, 2023, at Irvine, California.

_____
Troy A. Brenes