UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
In re:                           :
                                        Docket #22cv1778
 LEGAL RECOVERY ASSOCIATES, LLC,  :

                  Plaintiffs,     :

   - against -                    :

 BRENES LAW GROUP, P.C., et al.,  : New York, New York
                                    April 27, 2023
                  Defendant.  :

------------------------------------ :
```

PROCEEDINGS BEFORE
THE HONORABLE BARBARA C. MOSES,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          SOLOMON CRAMER & SUMMIT LLP
                        BY:  ANDREW SOLOMON, ESQ.
                        P.O. Box 202
                        Old Westbury, New York 1156

For Defendants:         BRENES LAW GROUP
                        BY:  TROY BRENES, ESQ.
                        100 Spectrum Center Drive, Suite 330
                        Irvine, California 9261

Transcription Service:  Carole Ludwig, *Transcription Services*
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

<u>**INDEX**</u>

## <u>E X A M I N A T I O N S</u>

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-<br>Direct**</u> | <u>**Re-<br>Cross**</u> |
|---|---|---|---|---|
| None | | | | |

## <u>E X H I B I T S</u>

| <u>**Exhibit<br>Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir<br>Dire**</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                    PROCEEDINGS              3

 2          THE CLERK:  The Court now calls Legal Recovery

 3  Associates LLC v. Brenes Law Group P.C., et al., case

 4  #22cv1778.  Counsel, please make your appearances for

 5  the record.

 6          MR. TROY BRENES:  Good morning, Your Honor,

 7  Troy Brenes on behalf of the defendants.

 8          THE COURT:  Mr. Brenes, you're the defendant.

 9  Please wait.

10          MR. BRENES:  I apologize.

11          MR. ANDREW SOLOMON:  Good morning, Andrew

12  Solomon for Solomon Cramer & Summit for the plaintiff.

13          THE COURT:  Good morning, Mr. Solomon.  All

14  right, Mr. Brenes, your turn.

15          MR. BRENES:  Yes, good morning, Your Honor,

16  Troy Brenes on behalf of the defendants.

17          THE COURT:  Okay.  Mr. Brenes, you're the one

18  who asked for this conference, and you signed the

19  preconference joint statement just a week ago reciting

20  that the conference was happening at this hour on this

21  day in this courtroom.  What happened?

22          MR. BRENES:  You know, Your Honor, I apologize.

23  I don't know.  I have staff members that do the

24  calendaring.  I haven't followed up with them yet.  We

25  obviously made a mistake.  I sincerely apologize to the
```

```
 1                        PROCEEDINGS              4
 2  Court.  If the Court feels it's appropriate to sanction
 3  me, you know, I can't really argue with it.
 4            THE COURT:  Well, Mr. Solomon has graciously
 5  agreed to proceed with the conference today with you on
 6  telephone.  So I will not be sanctioning you today.  But
 7  just be aware that we are no longer routinely holding
 8  conferences and court hearings remotely.  We're old
 9  school here.  We expect lawyers to show up.  You are not
10  only a lawyer, but you're also a pro se defendant in
11  this matter, Mr. Brenes.  Have you considered retaining
12  New York counsel?
13            MR. BRENES:  Your Honor, for the case that is
14  going forward at the moment, I don't think we're going
15  to.
16            THE COURT:  Well, then you'll get some frequent
17  flier miles.
18            MR. BRENES:  Yes, understood.
19            THE COURT:  All right, so we are here primarily
20  for scheduling purposes.  The Rule 12 motion having been
21  resolved and the arbitration motion having been
22  resolved, a fair chunk of the original case is still
23  with us, including the counterclaim for breach of the
24  covenant.
25            When I was looking through your joint
```

statement, preconference statement, I noticed something

which was new news at least to me.  I'll ask you about

it first, Mr. Solomon.  You said in your preconference

statement that with respect to the guarantees the

plaintiff is only seeking to enforce the $1.1 million

guarantee against Mr. Brenes personally, not the second

500,000.  That was not how I understood the complaint.

Is that, in fact, new news or did I just misunderstand

the complaint?

MR. SOLOMON:  Your Honor, the complaint may not

have been entirely clear on that, but I believe, and I

guess I'll go back and look at it, but I believe that

the best reading of that guarantee is Mr. Brenes only

guaranteed the first one.

THE COURT:  All right, well, I'm sure that's

good news to Mr. Brenes.  But you are seeking the full

1.5 million plus interest from BLG, correct?

MR. SOLOMON:  That's correct, Your Honor.

THE COURT:  Okay, let me start by asking what I

hope is not a very complicated question although it is

one that we were scratching our heads over a little bit

in chambers as we were working on the motions.  If I

understand it, Mr. Brenes, you and/or your law firm made

arrangements with some other credit source from whom you

```
 1                         PROCEEDINGS                    6
```

 2   have borrowed enough money to pay off the Legal Recovery

 3   Associates notes, but that money is sitting in some sort

 4   of an escrow or suspense account.  I understand that

 5   there may be a dispute as to how much you owe Legal

 6   Recovery Associates.  There may be excess interest that

 7   you believe you don't owe or shouldn't owe because you

 8   tried to pre-pay earlier.  But why didn't you at a

 9   minimum pay the undisputed amount, let's say the

10   principal, and reduce the amount in controversy here?

11             MR. BRENES:  Your Honor, the concern, and this

12   has been proven out in more recent emails with the

13   plaintiffs, is to the extent we pay anything, they're

14   just going to say, well, that only applies to interest

15   or attorney's fees, and, you know, the underlying amount

16   is not going to be paid down, and you're just going to

17   keep owing us money.

18             THE COURT:  Well --

19             MR. BRENES:  And that --

20             THE COURT:  Well, to a point, I understand you,

21   and I understand that if you don't pay every penny that

22   they think you owe at the moment, they'll continue

23   running the meter, meaning accruing interest on the

24   unpaid amount.  But accruing interest on a couple of

25   hundred thousand dollar is, seems to me, would put you

```
 1                      PROCEEDINGS              7

 2   in a much better position than accruing interest on 1.5

 3   million plus.  Doesn't it?

 4          MR. BRENES:  Your Honor, so first off there was

 5   a question of where we would even be able to pay the

 6   money to --

 7          THE COURT:  That was true a couple of years

 8   ago, but that's clearly not the case now, right?

 9          MR. BRENES:  Correct, correct, but by the point

10   it came out where we could pay this money to, you know,

11   their claim for interest and attorney's fees had gotten

12   so large, that it's going to eat up a huge chunk of the

13   payment.  And my concern, frankly, was, you know, there

14   would be some – I was concerned about doing that, Your

15   Honor.  I thought it would just have the effect that,

16   again, most of it would just be eaten up by their claim

17   for attorney's fees, for interest, and that I didn't

18   think it would actually benefit me in any way.

19          THE COURT:  Oh, look, you can read the

20   contract, I was going to say as well as I can.  Maybe

21   not quite as well as I can.  But you can read a

22   contract, you're a lawyer, and you can do the math.

23   Obviously, I can't make you do what I think would be the

24   sensible thing here, but I kind of think maybe you've

25   been shooting yourself in the foot a little bit here.
```

```
 1                        PROCEEDINGS              8
 2    Have you had any settlement discussions?  Let me ask Mr.
 3    Solomon that question.
 4         MR. SOLOMON:  The answer is yes.  Mr. Brenes at
 5    some point asked me to provide, indicated that he was
 6    going to pay off what you just said, Your Honor, and
 7    asked me to provide a calculation of how much we think
 8    is owed, and I provided him a spreadsheet, and I sent
 9    that to him, and it's an Excel spreadsheet, so he can
10    manipulate it anyway he wants.  I sent that over, and he
11    never responded.
12         THE COURT:  So how much - when did you have
13    these conversations, Mr. Solomon?
14         MR. SOLOMON:  I'm estimating about a month ago.
15         THE COURT:  All right, and as of about a month
16    ago, what was your number on your Excel spreadsheet?
17    There's 1.6 million in principal, right?
18         MR. SOLOMON:  I don't have it, the number
19    handy, and the reason why --
20         THE COURT:  To the best of your recollection.
21         MR. SOLOMON:  I couldn't even tell you because
22    I know that there's a consolidated action, so there's
23    those notes also.  You know, it's the entire - we sued
24    on the first two notes, and then there were I think four
25    other notes.  I think the total, maybe the whole total
```

```
 1                        PROCEEDINGS                    9
 2   principal's 3 million --
 3            THE COURT:  There are other notes that I don't
 4   know about?
 5            MR. SOLOMON:  Well, you do know about them.
 6   Well, they may not be present, but what happened here is
 7   that we filed the original action based on the default
 8   on the first two notes, and that default was triggered
 9   by the fact that Mr. Brenes had arranged this
10   alternative financing.  There was another default on the
11   other four notes because Mr. Brenes we believe has
12   collected money on some of his cases which triggers off
13   the payment obligation on the other note, and about a
14   year, in January, I sent him a letter saying, hey, you
15   know, have you collected any money and --
16            THE COURT:  In January of?
17            MR. SOLOMON:  2022.
18            THE COURT:  Thank you.
19            MR. SOLOMON:  And he didn't respond to that.
20   And then we saw on his website some indication that he
21   had received money on some of his cases.
22            THE COURT:  Because he settled some cases?
23            MR. SOLOMON:  Correct.  So, again, you know,
24   Mr. Brenes wouldn't provide any information, so I
25   contacted him and said I'm going to amend the complaint
```

```
 1                        PROCEEDINGS              10
 2  to add these additional notes, and Mr. Brenes wasn't
 3  inclined to agree to allow me to amend.  And rather than
 4  engaging in motion practice over what I think is a
 5  pretty straightforward issue which is a Rule 15
 6  amendment, I filed the second action which was related
 7  to this action.  It was accepted by the court as
 8  related.  That action I served it under the note.  Mr.
 9  Brenes' time to answer expired on the 24th.  I discussed
10  that with him.
11           I don't want to put words in his mouth, but I
12  believe he thinks there's some defect in service, which
13  I disagree with.  So I sent him an email yesterday
14  morning saying, look, Mr. Brenes, if you don't file an
15  answer or appear in that other action, then I'm not
16  going to have any choice but to move for a default
17  judgment.  And that was yesterday morning.  I haven't
18  heard back from him about that either.  So he's in
19  default on those, technically in default, although I
20  guess if he said, look, I want to file an answer today,
21  would be forced to allow him to do so.
22           THE COURT:  All right, let me --
23           MR. SOLOMON:  So there's 3 million plus a lot
24  of interest.
25           THE COURT:  The second action, I'm following
```

```
 1                          PROCEEDINGS              11
 2   along at home here, the second action has also been
 3   referred to Judge Ramos but has not – why do I not know
 4   about this case?  Because it has not been referred to me
 5   --
 6            MR. SOLOMON:  Oh, I stand corrected.
 7            THE COURT:  -- and that's why.  It's been
 8   designated to me, let me just read the docket here.
 9   It's been designated to me but not referred to me.  In
10   other words, Judge Ramos has not yet activated me in
11   that case.  If he decides to refer that case for
12   pretrial or for other purposes to a magistrate judge,
13   it'll come to me, and at that point I'll probably put
14   the cases on a consolidated schedule and may suggest to
15   Judge Ramos that they be consolidated and get you where
16   you perhaps would've been in the first instance.
17            Mr. Brenes, are there going to be counterclaims
18   in the second case?
19            MR. BRENES:  Well, once I'm served with it,
20   Your Honor, we haven't been served with anything, and I
21   tried to explain that to plaintiff's counsel.
22            THE COURT:  All right.
23            MR. BRENES:  So, Your Honor, there will be
24   counterclaims.
25            THE COURT:  Will it be good faith and fair
```

```
 1                        PROCEEDINGS                12
 2   dealing?
 3           MR. BRENES:  Yes.
 4           THE COURT:  Well, maybe we'd better wait for
 5   the pleadings in that case to sort themselves out before
 6   we talk about consolidating them or putting them on a
 7   paired discovery schedule.  But, Mr. Brenes, if I can
 8   just get out of my lane for a minute, as you chose to
 9   heard me say, the other case isn't actually my case yet.
10   However, as long as I have you both here, it seems to me
11   that service is probably not something that either side
12   wants to spend time, money, and legal fees on.  Mr.
13   Solomon, did you send him, did you mail him a waiver
14   request?
15           MR. SOLOMON:  No, I served him under the
16   contact, and the contract provides for service by
17   certified mail.  So we served him by certified mail.  I
18   filed an affidavit of service.  Under Rule 4 I can use
19   New York procedure, and under New York procedure I'm
20   allowed to serve (indiscernible) service agreement.  I
21   have law on that, First Department law on that.
22           THE COURT:  Yeah, but do you want to have to
23   fight a motion on that?  Why don't you send him a waiver
24   request under Rule 4?
25           MR. SOLOMON:  Well, I would expect Mr. Brenes
```

PROCEEDINGS                    13

to agree to accept service.  I also would've expected

Mr. Brenes to agree to the amendment, but I'm not going

to ask him for a waiver.  I'm going to move for a

default judgment.

THE COURT:  Don't spin your wheels, gentlemen.

Both of you, this is silly.  Mr. Brenes, you should

accept service of the complaint in the second action.

Mr. Solomon, you shouldn't move for a default because

it'll be vacated as soon as Mr. Brenes puts his hand up

and says, oh, we have a motion, we weren't properly

served.  Let me come and make that motion now.  And

you're going to be a couple of hundred thousand dollars

in legal fees into it before you can turn around.  This

is ridiculous.

Mr. Brenes, why don't you accept service in

that case?

MR. BRENES:  Your Honor, if there's a request

for waiver of service pursuant to Rule 4, we're happy to

accept it.  Our concern this is just mailed, we got it

weeks after it was mailed.  We would like time to

actually prepare an adequate answer, and that's why we

want proper service.  This is, you know, you saw the

earlier motion practice, Your Honor.  We want to make

sure we, you know, do a well-written response on the

```
 1                         PROCEEDINGS              14
 2   answer.
 3            THE COURT:  All right, so if you send him a
 4   waiver, he says he'll accept service.  That gets him 60
 5   days instead of 20.  That's the quid pro quo.  Can you
 6   all live with that?
 7            MR. SOLOMON:  I honestly think that he
 8   shouldn't be getting 60 days from this point because the
 9   complaint is exactly the same --
10            THE COURT:  If he asks Judge Ramos for it,
11   he'll get it.  Send him the waiver, do yourself a favor.
12            MR. SOLOMON:  Fine.
13            THE COURT:  All right, you're both on record.
14   Mr. Solomon is representing to me that, with some
15   reluctance because he doesn't think he should have to do
16   it, he's going to send the Rule 4 waiver papers.  And,
17   Mr. Brenes, you're representing to me that you will
18   waive service and get yourself the 60 days when you
19   receive that package, correct?
20            MR. BRENES:  Yes, Your Honor.
21            THE COURT:  Okay, great.  Now let's turn to
22   this case.  Let's put some dates on the calendar subject
23   to rearrangement down the road if both cases end up
24   coming together, either formally or informally.  Where's
25   my form?  Here's my form.  The first question is is any
```

```
1                         PROCEEDINGS                    15
```

2   further amendment or joinder of additional parties

3   contemplated in this case, and I think the answer is

4   that plaintiff would like to make the two cases into

5   one.  Mr. Brenes, what's your feeling about that, by the

6   way?  Suppose it was 60 days from now and you were

7   actually in the second case.

8           MR. BRENES:  Your Honor, I think that's fine to

9   consolidate them.  You know, we're going to want to look

10  at our answer and see if there's additional defenses.

11  We'll assert to the second group of notes, but I don't

12  think there's an issue with consolidating the two cases.

13          THE COURT:  All right, so rather than give you

14  a short deadline for joinder or amendment, which I would

15  normally do in a case that stands on its own, I am going

16  to on the assumption that the waiver is going to happen

17  and so forth, I'm going to give the parties a deadline

18  of three months from now, which is when, Ms. Kay?

19          THE CLERK:  One minute.

20          THE COURT:  We switched over our main

21  calendaring software yesterday, and we're still

22  recovering from that, gentlemen, give us a minute.

23          MR. SOLOMON:  Just for what it's worth, Your

24  Honor, if I can have a moment.  Just in terms of the

25  consolidation, you know, given the fact that it would be

```
 1                        PROCEEDINGS                  16

 2  60 days probably until there's an answer an then there

 3  might be motion practice, I'm not committed to the idea

 4  of consolidating except for purposes of discovery.

 5          THE COURT:  But you wanted to bring the cases

 6  as one in the first place.

 7          MR. SOLOMON:  Well, that's true, but now I

 8  don't want --

 9          THE COURT:  Now you're going to get what you

10  want.

11          MR. SOLOMON:  Well, I'm not getting what I want

12  because it's the delay.  I want to avoid --

13          THE COURT:  We can deal with that.  I'm not

14  going to - I'm not locking you in here.  I'm just going

15  to give you a deadline by which you have to fish or cut

16  bait.

17          THE CLERK:  Okay, three months from today is

18  July 27.

19          THE COURT:  Okay, is that a weekday?

20          THE CLERK:  A Thursday.

21          THE COURT:  All right, so, gentlemen, by July

22  27 you will either submit a stipulation to consolidate

23  the two cases or you will submit a status update letter

24  in the low numbered case, which is this one, explaining

25  that you are in disagreement and why you are in
```

```
 1                          PROCEEDINGS                    17
 2  disagreement, and we will take it from there.  All
 3  right?
 4              MR. BRENES:  Understood, Your Honor, thank you.
 5              THE COURT:  Okay, now there are no further
 6  pleading motions in this case because we've already done
 7  that. There was an answer.  Oh, there's a bit of a loose
 8  end left in this case with regard to jurisdiction
 9  because one of the parties is, I'm trying to remember,
10  an LLC, right?
11              MR. SOLOMON:  Yes.
12              THE COURT:  So the question is, Mr. Brenes, is
13  whether I need to make you to, I need to make you amend
14  your counterclaim to affirmatively allege the
15  appropriate jurisdictional facts.  Have you given that
16  some thought?
17              MR. BRENES:  Yes, Your Honor, Mr. Solomon and I
18  actually discussed that.  We were, we weren't a hundred
19  percent clear on what Court wanted.  Mr. Solomon filed a
20  statement showing that there, confirming there was
21  jurisdiction.
22              THE COURT:  Right.
23              MR. BRENES:  I'm happy to amend the complaint
24  if the Court likes.  We were unsure if you wanted us to
25  do that.
```

```
 1                          PROCEEDINGS                    18
 2           THE COURT:  It wouldn't be the complaint; it
 3   would be the counterclaim, right?
 4           MR. BRENES:  Yes, correct.
 5           THE COURT:  So why don't you do that.  Let me
 6   give you two weeks from today which is, what, Ms. Kay?
 7   This is really a terrible program, isn't it?  It was so
 8   much better the old way.
 9           THE CLERK:  It was.  It's May 11, Your Honor.
10           THE COURT:  Okay, so by May 11, Mr. Brenes, I'd
11   like you to amend your counterclaim.  I don't expect a
12   substantive amendment.  I'd just like you to adequately
13   allege the necessary jurisdictional facts as they have
14   been updated for you.  Okay?
15           MR. BRENES:  Yes, Your Honor.
16           THE COURT:  All right.  Now, let's talk about
17   discovery.  The first step is automatic disclosures
18   under Rule 26(a)(1).  You have both suggested April 26
19   for your automatic disclosures.  That was yesterday.
20   Did you serve your automatic disclosures?
21           MR. SOLOMON:  Your Honor, I actually --
22           MR. BRENES:  For the plaintiff we have mailed
23   those, yes, Your Honor.
24           THE COURT:  You did mail yours, Mr. Brenes,
25   thank you.  And Mr. Solomon.
```

```
 1                     PROCEEDINGS                  19
 2          MR. SOLOMON:  I did not.
 3          THE COURT:  All right --
 4          MR. SOLOMON:  I have them to go though, so I'll
 5  serve them today.
 6          THE COURT:  All right, I'll give you till
 7  tomorrow, how about that?
 8          MR. SOLOMON:  Okay.
 9          THE COURT:  So April 28 will be your deadline,
10  and if you've forgotten anything, Mr. Brenes, you still
11  have a day to get it in the mail.
12          MR. SOLOMON:  Your Honor, could we have a
13  stipulation that discovery is to be served by email, not
14  by U.S. mail?
15          THE COURT:  You haven't done that already?
16          MR. SOLOMON:  No.
17          THE COURT:  Any objection, Mr. Brenes?
18          MR. BRENES:  I couldn't hear Mr. Solomon, Your
19  Honor, I apologize.
20          THE COURT:  He suggested that the parties
21  stipulate on the record that discovery requests and
22  responses may be served by email not U.S. mail.
23          MR. BRENES:  I think that's fine, Your Honor.
24          THE COURT:  All right, is it just going to be
25  for discovery or do you want to make that a stipulation
```

1

2  for all pleadings, motions, and other papers?

3          MR. SOLOMON:  From plaintiff's perspective all

4  papers can be emailed.  I do not want paper.

5          THE COURT:  You don't want paper.  Mr. Brenes,

6  do you want paper?

7          MR. BRENES:  I generally like to see both, but

8  basically, you know, a courtesy copy of electronic of

9  anything that's being mailed.

10          THE COURT:  Well, you just agreed to email for

11  discovery related materials.  I assume you didn't say it

12  but I'll say it that would be written discovery demands

13  and responses.  If a significant document production is

14  going to be made, I don't think you want to

15  automatically do that by email every time depending on

16  what it is.  There may be other arrangements that you

17  need to make for the document production.  Maybe you

18  have a site, maybe some things need to be paper.  I

19  don't know what you got.

20          But Mr. Brenes seems to be saying that with

21  respect to non-discovery pleadings and papers, he still

22  wants a copy by U.S. mail.

23          MR. SOLOMON:  Well, he's not entitled to

24  pleadings because they're filed on the ECF system.

25          THE COURT:  Excellent point.  Mr. Brenes,

```
 1                        PROCEEDINGS                21

 2   you're actually not entitled to paper.

 3            MR. BRENES:  Your Honor, honestly, I was

 4   talking more about discovery, I apologize.  It's kind of

 5   an extra safety mode, but I'll withdraw that request,

 6   Your Honor.  We're willing to accept electronic service

 7   for everything.

 8            THE COURT:  Okay, great.  Now, with regard to

 9   written discovery it is my practice, as you know because

10   you read my order, to give the parties a deadline by

11   which they must get started with their written discovery

12   by which they must serve their initial document demands

13   and any initial interrogatories.  And you suggested

14   yesterday for that as well.  Maybe you want a little

15   more time than that.  Have you served any written

16   discovery, Mr. Solomon?

17            MR. SOLOMON:  Plaintiff has already served --

18            THE COURT:  All right.  Defendant.

19            MR. BRENES:  I would like a little more time,

20   Your Honor.  I would like a week if that's possible.

21            THE COURT:  A week is possible.  What's a week

22   from today, Ms. Kaye?

23            THE CLERK:  A week from today is --

24            MR. SOLOMON:  May 4.

25            THE CLERK:  -- May 4, Your Honor.
```

PROCEEDINGS                    22

1

2          THE COURT:  All right, you have until May 4 to

3  get your initial written discovery demands out.  Mr.

4  Brenes, a caution for you because you do not regularly

5  practice in this district.  Under our local civil rules,

6  in particular Local Civil Rule 33.3, interrogatories are

7  fairly severely restricted, particularly at the outset

8  of the case.  You may not, you may wish to hold off on

9  interrogatories because they are of, in my view,

10  somewhat limited use, particularly in a case like this

11  where everybody already knows everybody.  So asking

12  initial interrogatories for like people's names is

13  generally a waste of a good interrogatory.  But that

14  obviously is your call not mine.

15          Now, fact discovery and all other, fact

16  depositions and all other fact discovery you have

17  suggested August, excuse me, July 26.  That's three

18  months.  Mr. Solomon, what're you thinking of in terms

19  of fact discovery here?  Do you need to take

20  depositions?

21          MR. SOLOMON:  I'll take one deposition

22  probably.

23          THE COURT:  You'll take one, and that will be

24  of Mr. Brenes?

25          MR. SOLOMON:  Correct.

```
 1                         PROCEEDINGS                    23

 2              THE COURT:  Mr. Brenes, what about you?

 3              MR. BRENES:  Yes, Your Honor, we're planning on

 4   three.

 5              THE COURT:  And who might those be?

 6              MR. BRENES:  There's three gentlemen, I forget

 7   his last name, Your Honor, I apologize.  A gentleman by

 8   the name of George that was involved in a lot of the

 9   emails, a gentleman by name of Howard Berger, and Greg -

10   -

11              THE COURT:  Tordell.

12              MR. BRENES:  Yes.  Yes.

13              MR. SOLOMON:  Wait, it's Gary Tordell and Greg

14   Goldberg.

15              THE COURT:  Thank you.

16              MR. BRENES:  Greg Goldberg.

17              THE COURT:  Too many G names.

18              MR. BRENES:  And potentially Gary Tordell.  So

19   four at most, Your Honor.

20              THE COURT:  All right, I'm going to give you an

21   extra month then because I know how this goes,

22   particularly in the summer.  Last Friday in August, Ms.

23   Kay, is?

24              THE CLERK:  August 25.

25              THE COURT:  25?
```

```
 1                        PROCEEDINGS              24

 2          THE CLERK:  Correct.

 3          THE COURT:  All right, so August 25 is your

 4   deadline to complete all remaining fact discovery,

 5   including fact depositions.  Please remember, gentlemen,

 6   that if you anticipate needing or just think you might

 7   want to send some follow-up document demands or

 8   interrogatories post-deposition, don't schedule your

 9   depositions for the last week in August.  You're going

10   to have to discipline yourself that way.  Because under

11   my rules I think this is everybody's rules, it's

12   certainly my rules, your discovery deadline is not the

13   deadline for serving discovery requests.  It is the

14   deadline for getting discovery done.

15          So all discovery requests must be reserved far

16   enough in advance of the deadline to allow the person

17   served to respond on whatever the relevant schedule is

18   under the Federal Rules of Civil Procedure.  So if you

19   send document demands, for example, you have to get them

20   out 30 days prior to the close of discovery.  So just a

21   word to the wise, if you are anticipating contention

22   interrogatories, whatever it is, after depositions, get

23   your depositions done in July not in August.

24          Now, what do you anticipate in terms of expert

25   discovery or is that just a placeholder, Mr. Solomon?
```

| | |
|---|---|
| 1 | PROCEEDINGS                    25 |

```
 2              MR. SOLOMON:  Before we get to that, I'm sorry,
 3    the August 25 date that's the date for the completion of
 4    fact depositions?
 5              THE COURT:  No.  That's the completion --
 6              MR. SOLOMON:  That's fact discovery.
 7              THE COURT:  -- of fact discovery.
 8              MR. SOLOMON:  Okay.
 9              THE COURT:  That's why I'm saying get your fact
10    depositions done in July, which you were planning to
11    anyway.
12              MR. SOLOMON:  Okay.  In terms of experts, I
13    don't foresee having an expert.
14              THE COURT:  Okay.
15              MR. SOLOMON:  Maybe there'll be a rebuttal.
16              THE COURT:  Mr. Brenes, do you anticipate
17    experts?
18              MR. BRENES:  We may, Your Honor.  I think it
19    would be limited.  I don't see this as a big expert
20    case.  But we may have somebody on computing interest
21    and potentially on --
22              THE COURT:  That's what we have Excel for.  You
23    don't need an expert for that.  What else?
24              MR. BRENES:  And good faith generally and
25    contracts.  Your Honor, again, I'm just disclosing what
```

```
 1                          PROCEEDINGS                    26

 2   are the potentials.  I haven't decided for sure I need

 3   somebody on that.

 4         THE COURT:  I understand.

 5         MR. BRENES:  But that's the only thing I can

 6   envision calling someone on.

 7         THE COURT:  So let's do this then.  Rather than

 8   build in an expert discovery schedule which my guess is

 9   you're not going to need, let me bring you back for a

10   status conference in July or August when you have a

11   better idea.  And at that point if you wish me to add in

12   an extra few months for expert discovery, I can do that.

13   But I'm not going to build the schedule out to include

14   expert discovery at this time.

15         So the order that you get from me later today

16   will say that fact discovery and all discovery will

17   close on August 25, which means that I'd like to see you

18   in late July or early August.  Which is better for your,

19   Mr. Solomon?

20         MR. SOLOMON:  Neither.  They're both good.

21         THE COURT:  Okay, Mr. Brenes.

22         MR. BRENES:  Either is, oh, early August would

23   be preferred, Your Honor.

24         THE COURT:  All right, can we have a date in

25   the first week of August, Ms. Kay, for a status
```

```
 1                        PROCEEDINGS                27
 2   conference?
 3            THE CLERK:  Sure, Wednesday, August 2 at 11
 4   a.m.
 5            THE COURT:  All right, so I'll see you for a
 6   status conference on Wednesday, August 2 at, did you say
 7   10, Ms. Kay?
 8            MR. SOLOMON:  11.
 9            THE CLERK:  We're available 10 and 11.
10            THE COURT:  All right, which do you prefer?
11            (pause in proceeding)
12            THE COURT:  Let's say 11 o'clock in the
13   morning, and that's here in New York, New York, Mr.
14   Brenes.
15            MR. BRENES:  Understood, Your Honor, thank you.
16            THE COURT:  A flight.  And one week prior to
17   that, which would be July --
18            MR. SOLOMON:  July 26.
19            THE COURT:  All right, one week prior, which
20   counsel tells me is July 26, I would like a joint status
21   update letter from both sides please in which you update
22   me on the progress of discovery.  Hopefully, you tell me
23   it's all going swimmingly.  If there are discovery
24   disputes that I have not previously been made aware of
25   that need judicial intervention, you can make me aware
```

```
 1                         PROCEEDINGS              28

 2   of them in that letter.  You can let me know at that

 3   time whether you think you're going to need additional

 4   discovery time for experts, in which case we'll work out

 5   an appropriate schedule at the conference.

 6           And you should also update me in that letter on

 7   your settlement efforts.  I don't want confidential

 8   details, this is a public letter, but tell me are you

 9   talking, are you not talking, are you going to JAMS.  Do

10   you want to come in for a settlement conference with me?

11   If I remain your assigned magistrate judge, that is if

12   you chose to stick with the present arrangement rather

13   than consent to me for all purposes, then I am then your

14   magistrate judge, one of the services that we offer free

15   of charge is a magistrate judge supervised settlement

16   conference which would be here in person and where I

17   would require your clients to come in, Mr. Solomon.  I

18   would say to Mr. Brenes I require his clients to come in

19   as well, but I think he is his client.  So it's easier

20   from his side than for your side.

21           We also have a court annexed mediation program

22   free of charge where I can send you to a lawyer who is

23   experienced in commercial litigation and has volunteered

24   to act as mediator.  In fact, I can do that now if

25   there's any interest.  Mr. Solomon, any interest in
```

PROCEEDINGS                    29

either of those?

      MR. SOLOMON:  We'd be interested in a settlement conference.  I'm not falling over myself for a court annexed mediator program.

      THE COURT:  Youd rather come in and see me.

      MR. SOLOMON:  Correct.

      THE COURT:  So what about you, Mr. Brenes?

      MR. BRENES:  That's fine, Your Honor.

      THE COURT:  Well, I can certainly do that.  I think maybe, well, a couple of things.  If you come in and see me as your mediator, the first thing I'm going to ask you is are we mediating both cases or just one because, really, it would be silly I think to just mediate the one and not the other.  And then the second thing I'm going to ask you is are you ready to settle.  Because I have too many cases and not enough time or law clerks.  I can only do one settlement conference per case ordinarily, except in extraordinarily rare circumstances.  It's a fairly big deal.  I set aside a half a day on my calendar.  I make you submit various pre-settlement things.  I make you come in in person with your clients so that I can twist their arm in person and so on.  And as I said, I can only do it once. It's not a warmup.

```
 1                        PROCEEDINGS                    30
 2           So if you need to turn over the motor with
 3  regard to settlement, don't book a settlement conference
 4  with me.  If you need to close a deal because you only
 5  got so far and you didn't get any further, then book a
 6  settlement conference with me.
 7           So, Mr. Solomon, is it worth the candle for me
 8  to book you in with me now?
 9           MR. SOLOMON:  Here's the thing.  You correctly
10  state that any settlement conference to be meaningful
11  would have to require the consolidated case.
12           THE COURT:  I think so.
13           MR. SOLOMON:  The truth of the matter is a
14  really meaningful settlement conference wouldn't resolve
15  this case and the pending arbitration.  And it's not
16  outside of your jurisdiction, I mean you can settle
17  anything anyway --
18           THE COURT:  If I have consent from all of the
19  relevant parties, sure, I can do that.
20           MR. SOLOMON:  Right.  So that's the only way it
21  makes sense.  I mean I think, and I don't know if Mr.
22  Brenes and I have had enough discussions about whether
23  we're trying to do that at this point.
24           THE COURT:  Okay, Mr. Brenes, what's your view?
25           MR. BRENES:  I apologize, Mr. Solomon cut out.
```

```
 1                       PROCEEDINGS              31
 2  Your Honor, what I would say --
 3            MR. SOLOMON:  You need to stay closer to your
 4  microphone.
 5            MR. BRENES:  I think a settlement can with you
 6  make sense.  I do think it should (indiscernible) it
 7  should to include both cases in front of you.
 8            THE COURT:  In which case, since they're not
 9  both in front of me at the moment --
10            MR. BRENES:  (indiscernible) spoken, Your
11  Honor, I apologize.
12            THE COURT:  No, I understand.
13            MR. BRENES:  The other one we expect to get in
14  front of you as well, the related case on a second group
15  of notes.
16            THE COURT:  Maybe.  So let's do this.  I'm not
17  going to schedule a settlement conference before me now.
18  At any time between now and our August status conference
19  you may by letter application write to me and say please
20  give us a settlement conference date, we're ready.  You
21  have to give me a few weeks lead time to get that
22  together because I book up in advance, but I'm always
23  happy to get a letter application that's agreed to by
24  both sides that says we're ready and we want to come in
25  for a settlement conference.  So I won't book it now,
```

PROCEEDINGS                    32

but we'll be watching our mail, and when you think it

makes sense, maybe after you've had some paper

discovery, maybe after the consolidation hopefully has

happened, maybe after you've given some thought to

getting the arbitration issues under the same roof,

you'll write to me and we'll set it up.

            If we do the cases that I sent to arbitration

as well as the cases I didn't send to arbitration, we

need some additional parties, correct, some additional

individual parties?  I can't remember.

            MR. SOLOMON:  Well, those parties are the same

parties that were named but it's stayed as to those

parties.  But it's the same people.

            THE COURT:  Okay.

            MR. SOLOMON:  So it's the same three or – two

people I bring in and Mr. Brenes would be the same

person.

            THE COURT:  Okay, well, that makes it easier

then.  So, again, I'm not going to give you a settlement

conference date now, but the door's open, and you have

only to ask.  For your planning purposes I conduct

settlement conferences in the afternoons Monday through

Thursday.  I try not to hold them on Friday because I

lose people's attention.  Because we are in federal

```
 1                        PROCEEDINGS                    33
 2   court and not across the street in state court, bring a
 3   sandwich because if we're not settled at 5 o'clock,
 4   we'll still be here at 6.  And if we're not settled at 6
 5   o'clock and nobody's falling asleep yet, we'll stay
 6   until we settle the case.
 7            MR. SOLOMON:  Right.
 8            THE COURT:  I mean I aim to settle the case by
 9   5 o'clock, but it doesn't always work out that way.
10            Let's see.  Let me ask to you a little bit
11   about summary judgment and joint pretrial orders.  I'm
12   not going to give you a hard summary judgment filing
13   date.  What my order is going to say is that summary
14   judgment papers, if there are summary judgment motions,
15   will be due 30 days after the close of discovery.  So if
16   discovery should be extended, for example, should we add
17   on a component for expert discovery, your summary
18   judgment date will move with it and will always be 30
19   days after the close of all discovery.
20            If you still have both the district judge and a
21   magistrate judge, if you're still before Judge Ramos,
22   check his individual practices.  I believe he requires
23   premotion letters for summary judgment, in which case
24   that's what will be due at the 30-day mark.  If he
25   doesn't, then whatever it is that he requires in the way
```

1                          PROCEEDINGS                    34

2  of summary judgment papers will be due at the 30-day

3  mark.  If there are no summary judgment papers, your

4  joint pretrial order is due at the 30-day mark.  And,

5  again, if you're before the district judge as well as

6  me, you will need to comply with the district judge's

7  individual practices with respect to what he wants to

8  see in a JPTO.  If you've consented to me for all

9  purposes, then obviously you need to look at my

10 individual practices which, of course, are the best and

11 the most sensible and tell you what I need to see in a

12 JPTO.

13          Not proselytizing here, but for your

14 consideration as you give some thought to whether you

15 want to stick with the current arrangement or consent to

16 the magistrate judge for all purposes, one of the things

17 you get when you consent to magistrate judge

18 jurisdiction, generally speaking, is a firm trial date

19 because I don't try felony criminal cases, and

20 consequently, once I give you a trial date, it's highly,

21 highly likely that the trial is actually going to happen

22 on that date.  The choice is, of course, yours.  It must

23 be unanimous.  And if you disagree about whether to

24 consent or not, I do not want to hear about it.  I never

25 want to know what the voting is on a matter like that.

```
 1                        PROCEEDINGS                    35
 2            Let me cover a couple of other things with you.
 3    All discovery requests and notices, I think I said this
 4    before, have to be served in time to allow the responses
 5    to come in before the discovery cutoff date.  Discovery
 6    disputes can be brought to my attention by letter
 7    application in accordance with Local Civil Rule 37.2 and
 8    my individual practices.  What this means for lawyers
 9    who are, normally practice in this district is we almost
10    never have formal notice discovery motions.  We almost
11    always resolve discovery disputes based on letter
12    applications and whatever discussion we have at the
13    discovery conference.
14            All of our court conferences and hearings will
15    be here in courtroom 20A unless there are compelling
16    circumstances that require us to go remote.  I will give
17    you blanket authorization to conduct your depositions
18    remotely if you wish to do so.  You don't have to, but
19    you can.
20            Applications for extensions or adjournments
21    must be made in advance.  Do not ask me for forgiveness
22    after the fact.  Ask me for permission in advance.  You
23    can do it by letter motion.  You have to talk to your
24    opponent first because the letter motion has to tell me
25    whether it's on consent or not.  If you do ask for an
```

PROCEEDINGS                    36

1

2  extension or an adjournment, don't make us do all the

3  work for you and call you back.  Tell us in your letter

4  how long an extension you want and whether there are any

5  particular days that you would like to adjourn the

6  conference or whatever it is until.  We may not be able

7  to accommodate you, but at least we'll know what you're

8  shooting for.

9          Are you planning to submit a confidentiality

10  stipulation and/or an ESI protocol to be reviewed by the

11  Court?  Mr. Solomon.

12          MR. SOLOMON:  So I think we agreed to the form

13  of confidentiality stipulation.  So we'll circulate

14  that.

15          THE COURT:  All you have to do it is sign it

16  and submit it, and if you haven't edited it beyond all

17  recognition, I'll probably so order it.

18          MR. SOLOMON:  I don't intend to edit it very

19  much at all.

20          THE COURT:  Okay.

21          MR. SOLOMON:  And then on ESI I think there may

22  be an issue.  I don't really know what the issue is.  I

23  raised it with Mr. Brenes that, you know, we wanted, if

24  there's going to be email production, that we wanted

25  email productions in a format that I could load into

PROCEEDINGS                37

Relativity with the appropriate metadata so that it
populates the field, date, time, to/from.

THE COURT:  I assume there's going to be email
production from your side.

MR. SOLOMON:  Correct.

THE COURT:  Okay, Mr. Brenes, I assume there's
going to be some email production from your side?

MR. BRENES:  Yes, Your Honor.

THE COURT:  Do you both have Relativity?  I
understand it's quite the thing these days.

MR. BRENES:  Your Honor, this is Troy Brenes.
I don't.  You know, from what I told the plaintiffs,
what I heard from defense [sic] is we want everything in
native, we want all native metadata.  I'm not sure
that's proportional.  I want to see what they're
actually requesting in their discovery requests.

You know, typically in a case like this, we're
not talking about a very complicated production of
documents.  I think it should be, we should be able to
print these emails out and give it to them.  But we'll
certainly look at what they're requesting.

THE COURT:  Well, the two of you need to
discuss that, and I will direct you to have that
discussion within the next two weeks.  I don't require

that you enter into a written ESI protocol.  Many

lawyers prefer to, and they submit it to me to be

reviewed and so ordered.  That's fine, but that's

optional.

        I don't require that you submit a protocol.  I

do require that within the first two weeks after this

conference you actually have a substantive discussion

with one another and cover all of the relevant ESI

topics such as have all of the necessary hold

arrangements been made?  Have people who may have

relevant text messages or emails on their phone been

told that this is not a good time to swap out their

phones, for example?  Who are the custodians going to

be?  In what format is electronic evidence going to be

produced?  Is it going to be printed out?  Which could

conceivably be sensible if it's a small, slim

production.  Or is it going to be produced in native

format which, Mr. Brenes, doesn't actually I think cost

you anymore.  You just have to go about it a little bit

differently.  And so on.

        So have those discussions.  If you can agree on

a protocol and wish me to review it and so order it,

feel free to send it in to me at any time.  What I don't

want to see is a dispute three months or six months down

```
 1                        PROCEEDINGS                    39
 2  the line where one of you is accusing the other of
 3  spoliating electronic evidence or holding out on native
 4  format or some such thing because the first thing I'm
 5  going to ask you is did you guys talk about this back in
 6  April.  So talk about it back in April.
 7            I will give you a Rule 502(d) order giving you
 8  maximum possible protection under Evidence Rule 502(d)
 9  against the inadvertent disclosure of privileged
10  information.  And your trial estimate is – wait, I have
11  this in your letter somewhere – a week.  You have a week
12  estimate for trial.
13            MR. SOLOMON:  I think it's three days.
14            MR. BRENES:  Your Honor, I think we had three
15  days.
16            THE COURT:  Okay, that's better.  And who has
17  requested a jury here?
18            MR. SOLOMON:  Not plaintiffs.  This is a
19  waiver.
20            THE COURT:  You have a jury waiver in your --
21            MR. SOLOMON:  Correct.
22            THE COURT:  Right, so it'll be a non-jury
23  trial.  Right?
24            MR. SOLOMON:  As far as I'm concerned.
25            THE COURT:  Okay, another thing to consider
```

```
 1                        PROCEEDINGS              40
 2   when considering whether to consent to the magistrate
 3   judge or not, my practice in a non-jury trial is to have
 4   the direct come in by affidavit.  That speeds things up
 5   quite a bit.  I don't remember off the top of my head
 6   whether Judge Ramos does that or not.  So no jury.  All
 7   right, any questions, Mr. Solomon?
 8             MR. SOLOMON:  If we were to consent to you for
 9   all purposes, does another magistrate judge get assigned
10   to settlement conference, is that the way that works?
11             THE COURT:  Not officially.  That's a good
12   question though.  Officially no.  If you consent to me
13   for all purposes, you only have one judge officially
14   assigned to your case, and that's me.  But if you would
15   rather do settlement with a judge who's not your trial
16   judge, I can arrange that off book, so to speak.
17             MR. SOLOMON:  Great, thank you.
18             THE COURT:  Mr. Brenes, any questions?
19             MR. BRENES:  No, Your Honor.
20             THE COURT:  All right, thank you both very
21   much.  We'll be adjourned.
22             MR. SOLOMON:  Thank you, Judge.
23             MR. BRENES:  Thank you.
24             (Whereupon, the matter is adjourned.)
25
```

41

C E R T I F I C A T E

    I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of LEGAL RECOVERY v. BRENES LAW GROUP, et al., Docket #22cv1778, was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature_____*Carole Ludwig*_____

                  Carole Ludwig

Date:  October 10, 2023