**SOLOMON CRAMER & SUMMIT LLP**
25 West 39th Street, 7th Floor
New York, NY 10018
(212) 884-9102
solomoncramer.com

October 24, 2023

**Via ECF**

Hon. Barbara Moses
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 740
New York, NY 10007

Re:   *Legal Recovery Associates, LLC v. Brenes Law Group, P.C., et al.*, 22-cv-1778-ER-BMC

Dear Judge Moses:

This firm represents Plaintiff, Legal Recovery Associates, LLC (LRA). We submit this letter in further support of LRA's letter motion for a conference in connection with its planned motion to compel (ECF 80) and in reply to Defendants Brenes Law Group, P.C. (Brenes Law) and Troy Brenes's October 23, 2023 letter in opposition (ECF 82).

## BLG Has Not Admitted Liability

Brenes Law claims that LRA seeks discovery of facts already admitted, including as to the triggering of "Payment Dates." Not so. In Action 1, LRA's allegations that a Payment Date had been triggered and that LRA had a right to accelerate (Complaint, ECF 1-1, ¶¶ 12-14) were denied in Brenes Law's Amended Answer (ECF 43). The same is true in Action 2: Brenes Law's Answer (ECF 54) denies LRA's principal allegations concerning the breach (Complaint, ECF 52, at ¶¶ 18-49, 34, 35).

## BLG Confuses Events of Default and Acceleration

Brenes Law contends that Plaintiff does not need to know the exact date of each Payment Date, but only that "prior to January 21, 2022 … at least one event occurred which … triggered the right to accelerate the loan." This argument confuses the default interest calculation with the right of acceleration.

Each "Payment Date" is significant. Default interest at 18% accrues on "[a]ny amounts past due under the Note" (ECF 1-1 at Ex. A). Brenes Law's payments became past due anytime it failed to make payment to LRA on any "Payment Date," defined in parties' agreements as "the date on

which Maker [Brenes Law] received payment of any award in respect of all product liability litigations." *Id.* The bank statements and loan statements sought in this motion will show when each Payment Date occurred, thus starting default interest on amounts that should have been repaid to LRA (but were instead diverted to California Attorney Lending II Inc.).

An Event of Default was *also* triggered by any failure to make a payment on a Payment Date. *Id.* But LRA did not, in fact, accelerate the Notes at issue in Action 1 until January 21, 2022 (ECF 1-1 at ¶ 19). When it accelerated, the entire balance of principal and interest became immediately due. Under the Notes, BLG must also pay interest at 18% on that entire accelerated amount.

The bottom line is that LRA requires precise and detailed information about when Brenes Law collected money, how much, and from what source (*i.e.*, product liability cases versus other cases) in order to calculate default interest before the date of acceleration. The bank statements and loan statements are likely to contain that data.[1]

### The Personal Guarantee

Mr. Brenes has not admitted that his obligation under the personal guarantee has ever been triggered. One trigger is the "misapplication or misappropriation of funds of the Borrower." LRA's position is that receiving case proceeds and paying them to another lender constitutes a "misapplication … of funds of the Borrower." LRA must have evidence (*e.g.*, bank statements and loan statements) to prove the point.

### Brenes Law's Defenses

Brenes Law claims that it did not have LRA's banking information. That is demonstrably untrue. LRA paid BLG by wire. When a wire is received, the sender's bank name, ABA number, and branch address are usually provided to the receiving bank and the customer. Brenes Law's bank records—including for the last three wires LRA provided from August to October 2020 (while Brenes Law was negotiating the payoff letter and a new line of credit)—would show this.

Brenes Law also claims that it had the funds to pay off LRA but did not do so because of a dispute over the calculation of interest. That is mere *ipse dixit*. Brenes Law has produced no verifiable evidence as to its financial position at the various relevant times. Brenes Law also says that LRA "knew that Defendant could not use the funds from its third-party creditor to repay the debt while there was a dispute as to what was owed." ECF 82 at 3-4. That too is an unsubstantiated statement not evidenced by any produced communication involving this "third-party creditor" or LRA.

If Brenes Law wants to argue that it would have repaid LRA, but was somehow prevented from doing so because of LRA, it must produce verifiable evidence of its financial condition and access to capital.

---

[1] If Brenes Law wants to moot the interest calculation, it can stipulate (a) that it defaulted under the Notes by failing to pay interest on the Payment Dates; (b) that interest accrues at the default rate of 18% on all of the Notes from the earliest possible date, October 27, 2020, through the date of acceleration, January 21, 2022; and (c) that, on acceleration, interest accrues on the entire balance of principal and interest at 18% through Judgment.

3

**Conclusion: A Note on Proportionality**

Underlying Brenes Law's objection to producing bank statements and financial records is "proportionality." This is ironic. In its amended initial disclosures, Brenes Law finally states its purported "economic injury": $34,892.80 (for a one percent origination fee on the amount that Brenes Law "set aside" to pay LRA). Based on that relatively minimal figure—which is not even an "injury" because Brenes Law would have incurred that fee whether it paid off LRA or kept that part of the line "reserved"—Brenes Law has put LRA through 22 months (and counting) of contentious and costly litigation to recover the more than $5.375 million in principal and interest on loans that Brenes Law admits it received but has not repaid.

Respectfully yours,

/s/Andrew T. Solomon

Andrew T. Solomon

cc: Troy A. Brenes, Esq. (via ECF)