UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
LEGAL RECOVERY ASSOCIATES, LLC,                22-cv-1778 (ER)(BCM)

            Plaintiff,

    -against-

BRENES LAW GROUP, P.C. et al.,

            Defendants.
----------------------------------------------------------x
LEGAL RECOVERY ASSOCIATES, LLC,

            Plaintiff,                23-cv-2446 (ER)(BCM)

    -against-

BRENES LAW GROUP, P.C.,

            Defendant.
----------------------------------------------------------x
CONSOLIDATED CASES
----------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT


Dated: January 16, 2024

                                 Solomon Cramer & Summit LLP
                                 *Attorneys for the Plaintiff*
                                 25 West 39th Street, 7th Floor
                                 New York, New York 10018
                                 (212) 884-9102

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.      INTRODUCTION ....................................................................................................... 1

II.     PROCEDURAL HISTORY .......................................................................................... 2

III.    STATEMENT OF UNDISPUTED FACTS ................................................................ 4

        A.      The Parties ....................................................................................................... 4

        B.      The Notes and Guarantee ............................................................................... 3

        C.      BLG Received Proceeds from Settlements of Products Liability Cases ................ 4

        D.      BLG's Loan and Security Agreement with CAL ............................................. 5

        E.      BLG Elects to Not Pay Off LRA's Notes ........................................................ 6

        F.      LRA Accelerates and BLG Defaults ............................................................... 8

IV.     ARGUMENT ............................................................................................................... 8

        A.      Summary Judgment Standards ....................................................................... 8

        B.      Plaintiff Has Satisfied Its Evidentiary Burden on its Motion for Summary
                Judgment on the Notes ................................................................................ 10

                1.      Execution and Delivery ...................................................................... 10

                2.      Demand ............................................................................................. 10

                3.      Failure to Pay .................................................................................... 13

        C.      There is an Absence of Evidence to Support Essential Elements of Brenes Law
                Group's Defenses ......................................................................................... 14

                1.      BLG's First Defense of Unclean Hands is Invalid ............................. 14

                2.      BLG's Second Defense (and First Counterclaim) for Breach of the Implied
                        Covenant of Good Faith and Fair Dealing Is Factually and Legally
                        Meritless ........................................................................................... 14

                        (a)     New York Law on the Implied Covenant ....................................... 14

                        (b)     Application of New York Law ........................................................ 16

|  |  | i. | LRA Did Not Breach the Implied Covenant | 16 |
|  |  | ii. | LRA Did Not Act in Bad Faith | 18 |
|  |  | iii. | BLG Suffered No Damage from Any Alleged Breach | 18 |
|  | 3. | The Third, Fourth, Fifth, and Seventh Affirmative Defenses Are All Duplicative of the Second | 20 |
|  | 4. | The Sixth Defense of Laches Is No Defense to a Claim at Law | 20 |
|  | 5. | The Eighth Affirmative Defense of Tender Is Factually Without Support | 21 |
|  | 6. | The Other Defenses Were Dismissed or Withdrawn | 22 |
| D. | The First Counterclaim Should Be Dismissed | | 22 |
| E. | Mr. Brenes Is Liable Under the Personal Guarantee | | 22 |
|  | 1. | New York Law on Guarantee Agreements | 22 |
|  | 2. | LRA Has Established Its Prima Facie Case for Summary Judgment on Troy Brenes's Personal Guarantee | 23 |
|  | 3. | Troy Brenes Has No Defense | 24 |
| V. | CALCULATION OF DAMAGES | | 25 |
| VI. | CONCLUSION | | 25 |

# TABLE OF AUTHORITIES

Page(s)

## Cases

*AAI Recoveries, Inc. v. Pijuan*,
13 F. Supp. 2d 448 (S.D.N.Y. 1998) .......................................................................10

*Babylon Assoc. v. County of Suffolk*,
101 A.D.2d 207 (2d Dept. 1984) ............................................................................15

*Balderramo v. Go New York Tours Inc.*,
No. 15-CV-2326, 2023 WL 2751039 (S.D.N.Y. Mar. 31, 2023) ...........................21

*Bank of New York Mellon Tr. Co., Nat'l Ass'n for Registered Certificate Holders of Morgan
Stanley Cap. I Inc. v. Morgan Stanley Mortg. Cap., Inc.*, No. 11CIV505CMGWG,
2017 WL 698607 (S.D.N.Y. Feb. 10, 2017) ...........................................................20

*Barbara v. MarineMax, Inc.*,
577 F. App'x 49 (2d Cir. 2014) ..............................................................................15

*Blue v. Koren*,
72 F.3d 1072 (2d Cir. 1995) ....................................................................................14

*Boscorale Operating, LLC. v. Nautica Apparel, Inc.*,
298 A.D.2d 330 (1st Dept. 2002) ............................................................................15

*Brady v. Town of Colchester*,
863 F.2d 205 (2d Cir. 1988) ............................................................................ 8-9, 10

*Canterbury Realty & Equip. Corp. v. Poughkeepsie Sav. Bank*,
135 A.D.2d 102 (3rd Dept. 1988) ...........................................................................24

*Chase Manhattan Bank, N.A. v. Reale*,
No. 92 CIV. 1042 (JSM), 1992 WL 297576 (S.D.N.Y. Oct. 7, 1992) .....................9

*Citibank, N.A. v. Jacobsen*,
No. 19 CIV. 959 (ER), 2020 WL 7046841 (S.D.N.Y. Dec. 1, 2020) ............... 22-23

*Cohen v. Transcon. Ins. Co.*,
262 A.D.2d 189 (1st Dept. 1999) ............................................................................21

*Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*,
25 N.Y.3d 485 (2015) ....................................................................................... 22-23

*Curley v. Vill. of Suffern*,
  268 F.3d 65 (2d Cir. 2001)......................................................................................9

*Exp.-Imp. Bank of U.S. v. Agricola Del Mar BCS*,
  334 F. App'x 353 (2d Cir. 2009) .........................................................................24

*F.D.I.C. v. Giammettei*,
  34 F.3d 51 (2d Cir. 1994).......................................................................................9

*Filner v. Shapiro*,
  633 F.2d 139 (2d Cir. 1980)..................................................................................14

*Fletcher v. Atex, Inc.*,
  68 F.3d 1451 (2d Cir. 1995)....................................................................................9

*Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*,
  111 F.3d 284 (2d Cir. 1997)......................................................................... 15-16, 18

*Gamman v. Silverman*,
  135 A.D.3d 814 (2d Dept. 2016) ..........................................................................21

*George Town Assocs. S.A. v. Abakan, Inc.*,
  No. 15CV3435 DLC, 2015 WL 4923040 (S.D.N.Y. Aug. 18, 2015) ....................20

*Golden Unicorn Enters., Inc. v. Audible, Inc.*,
  No. 21-CV-7059 (JMF), 2023 WL 6143567 (S.D.N.Y. Sept. 20, 2023) ...............16

*HSH Nordbank AG New York Branch v. St.*,
  421 F. App'x 70 (2d Cir. 2011) ............................................................................24

*Inner City Telecomm. Network, Inc. v. Sheridan Broad. Corp.*,
  No. 10 CIV. 3567 (LAP), 2010 WL 2835559 (S.D.N.Y. July 13, 2010) ...............10

*Int'l Gateway Exch., LLC v. W. Union Fin. Servs., Inc.*,
  333 F. Supp. 2d 131 (S.D.N.Y. 2004)...................................................................15

*Jamaica Sav. Bank v. Sutton*,
  42 A.D.2d 856 (2d Dept. 1973) ............................................................................21

*JPMorgan Chase Bank, N.A. v. Reifler*,
  614 F. App'x 11 (2d Cir. 2015) ............................................................................24

*M/A-COM Sec. Corp. v. Galesi*,
  904 F.2d 134 (2d Cir. 1990)..............................................................................18, 20

*Michaels v. U.S. Tennis Ass'n, Inc.*,
   295 A.D.2d 222, 744 N.Y.S.2d 375 (2002) ..................................................................21

*Morgan Stanley v. Discover Fin. Servs.*,
   26 Misc. 3d 1215(A), 907 N.Y.S.2d 104 (Sup. Ct. 2010) ......................................16

*NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*,
   262 F. Supp. 2d 134 (S.D.N.Y. 2003) .......................................................................15

*Optima Media Grp. Ltd. v. Bloomberg L.P.*,
   No. 17-CV-01898 (AJN), 2021 WL 1941878 (S.D.N.Y. May 14, 2021) ..............18

*Pace v. Air & Liquid Sys. Corp.*,
   171 F. Supp. 3d 254 (S.D.N.Y. 2016)........................................................................1

*Pereira v. Cogan*,
   267 B.R. 500 (S.D.N.Y. 2001)...................................................................................10

*Phoenix Bulk Carriers, Ltd. v. Am. Metals Trading, LLP*,
   No. 10 CIV. 2963 NRB, 2013 WL 5863608 (S.D.N.Y. Oct. 31, 2013) ................19

*Point Prods. A.G. v. Sony Music Ent., Inc.*,
   215 F. Supp. 2d 336 (S.D.N.Y. 2002) .......................................................................18

*Rabb v. Jessica Assocs.*, No. 93 CIV. 8565 (RPP),
   1995 WL 387687 (S.D.N.Y. June 29, 1995) ........................................................ 20-21

*Raven v. Dansville Properties, Inc.*,
   130 A.D.2d 943 (4th Dept. 1987) ..............................................................................21

*Ray Legal Consulting Grp. v. DiJoseph*,
   37 F. Supp. 3d 704 (S.D.N.Y. 2014).........................................................................18

*Rudin v. Talisman, Rudin & Delorenz, P.C.*,
   14 Misc. 3d 1218(A), 836 N.Y.S.2d 489, 2005 WL 5097015 (Sup. Ct. 2005) ......15

*RXR WWP Owner LLC v. WWP Sponsor, LLC*,
   132 A.D.3d 467 (1st Dept. 2015).................................................................................16

*Shmueli v. Whitestar Dev. Corp.*,
   148 A.D.3d 1814 (4th Dept. 2017) .............................................................................16

*State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*,
   374 F.3d 158 (2d Cir. 2004)................................................................................. 14-15

*W.W.W. Assocs., Inc. v. Giancontieri*,
    77 N.Y.2d 157 (1990) ...............................................................................................12

**Rules and Statutes**

Fed. R. Civ. P. 56(c)(1) .................................................................................................9

**Other Authorities**

10A Fed. Prac. & Proc. Civ. § 2723 (4th ed.) ..............................................................9

74 Am. Jur. 2d Tender § 2 ...........................................................................................22

86 C.J.S. Tender § 1 ...................................................................................................21

86 C.J.S. Tender § 19 .............................................................................................21-22

Plaintiff Legal Recovery Associates, LLC ("LRA"), through its counsel, Solomon Cramer & Summit LLP, submits this memorandum of law in support of its motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on its cause of action for breach of contract in both consolidated cases and to dismiss the first counterclaim in both cases.[1]

## I.  <u>INTRODUCTION</u>

This is an action to enforce eight promissory notes given by defendant Brenes Law Group, P.C. ("BLG") in the aggregate principal amount of $3,000,000 (the "Notes") and an unconditional personal guaranty (the "Guarantee Agreement") provided by co-defendant Troy Brenes ("Brenes").

The key facts on Plaintiff's *prima facie* claims are undisputed. BLG issued the Notes to LRA to set the terms for repaying loans that LRA had extended to it. Under every one of the Notes, BLG was required to make payments when it recovered money on its product liability cases. But instead of repaying LRA, it maintained those proceeds for itself or used them to pay a subsequent lender, California Attorney Lending II, LLC ("CAL").

BLG's failure to pay LRA from its case proceeds was an event of default under each of the Notes and its grant of a security interest to CAL violated negative covenants in the first two Notes. Based on these events of default, LRA accelerated the entire balance of the Notes and demanded immediate payment. BLG failed to respond and has paid nothing.

BLG's principal defense and first counterclaim are based on the implied covenant of good faith and fair dealing. It alleges that LRA prevented it from prepaying the Notes by

---

[1] The motion is based on: Plaintiff's Rule 56.1 Statement of Material Facts ("SOF"); the Declaration of counsel, Andrew T. Solomon, dated January 16, 2024 ("Solomon Decl."), which presents prior court filings and documents produced in discovery in the case, which is permissible for this purpose, *see Pace v. Air & Liquid Sys. Corp.*, 171 F. Supp. 3d 254, 272 (S.D.N.Y. 2016); the Declaration of Howard Berger, dated January 16, 2024 ("Berger Decl."); and the Declaration of George Lui, dated January 16, 2024 ("Lui Decl.").

refusing to provide BLG with a payoff amount, by declining to sign another lender's payoff letter, and by failing to provide wire instructions. LRA sought dismissal of this defense and counterclaim but lost because it could not, in that context, challenge the truthfulness of BLG's claims.

On summary judgment, however, unfounded allegations and implausible defenses have no currency. The evidence puts the lie to Defendants' principal defense and BLG's first counterclaim. In fact, LRA provided BLG with the payoff calculation right after it was requested, on August 4, 2020, and then provided wire instructions and updated payoff balances on two other occasions at the start of 2021. BLG was not *prevented* from paying off the Notes; it *chose* not to pay. In any event, what BLG classifies as bad faith was nothing more than LRA seeking to negotiate payoff terms that protected its financial interests, which is permitted. Moreover, BLG suffered no damage.

Finally, Brenes, as guarantor, has no defense. He triggered the guarantee by causing BLG to breach the first Note and by explicitly disavowing its validity. His guarantee is unconditional, he waived all defenses (except full payment), and even if he could avail himself of BLG's defenses, they are ineffectual.

## II.  PROCEDURAL HISTORY

Plaintiff initially sued BLG and Brenes in state court to enforce the first two notes. (ECF 1-1.[2]) Defendants removed (ECF 1), answered, and submitted three counterclaims, the second and third of which were also asserted as third-party counterclaims against LRA's affiliate, Lawrence Litigation Group, L.P. [sic] ("Lawrence"), and three individuals associated with LRA and Lawrence (ECF 3). The Court stayed the second and third counterclaims pending arbitration.

---

[2] "ECF" cites are to the docket in the first-filed action (22-cv-1778); "ECF 2d Action" cites are to the docket in the second-filed action (23-cv-2446).

(ECF 29.)[3] Defendants also voluntarily dismissed the third-party counterclaims against the individual defendants (ECF 31) and filed a First Amended Answer and Counterclaims, which addressed jurisdictional deficiencies (ECF 43).

LRA moved to dismiss the first counterclaim and the affirmative defenses. In a Report and Recommendation, Judge Moses recommended that the District Court dismiss the first counterclaim, insofar as it was asserted by Brenes, and strike the eighth and ninth affirmative defenses, but otherwise denied the motion. (ECF 33.) The District Court adopted the report and recommendation. (ECF 36.)

On February 23, 2023, LRA filed a second action against BLG seeking to enforce the other six notes. (ECF 52.) The actions were consolidated on August 3, 2023 (ECF 50) and the Court entered an order re. consolidated proceedings (ECF 51).

In response to BLG's answer in the second action (ECF 54), Plaintiff moved to strike the first, sixth, and ninth affirmative defenses (ECF 60-62). BLG responded by withdrawing the ninth affirmative defense (which purported to assert a defense under federal securities laws), while offering no substantive defense for the viability of the first and sixth affirmative defenses (unclean hands and laches), which it refused to withdraw (ECF 65). Plaintiff filed a short reply (ECF 66). The motion is *sub judice*.

Fact discovery closed on December 20, 2023. (ECF 93.) The District Court referred dispositive motions to Judge Moses (Amended Order of Reference, ECF 67), who directed summary judgment motions to be filed within 30 days after the close of discovery (ECF 64 at ¶ 9), or by January 19, 2024.

---

[3] The BLG Parties were supposed to update the Court on the status of the arbitration every three months starting May 1, 2023. (ECF 29.) They have never done so.

## III.  STATEMENT OF UNDISPUTED FACTS

### A.  The Parties

Plaintiff LRA is a New York-based company that, among other activities, provides funding to law firms. (ECF 52 at ¶ 5; ECF 54 at ¶ 5.) Defendant BLG is a California-based law firm. (ECF 52 at ¶ 6; ECF 54 at ¶ 6.) BLG's president is Brenes. (ECF 43 at p. 2 ¶ 6.[4])

### B.  The Notes and Guarantee

From July 8, 2019 to October 13, 2020, BLG, as "Maker," gave LRA, as "Lender," eight promissory notes in the aggregate principal amount of $3,000,000. (SOF ¶ 1.) Troy Brenes guaranteed the first Note, pursuant to a Guarantee Agreement, dated as of July 8, 2019, which he signed before a notary public. (SOF ¶ 2.)[5] The Notes and Guarantee Agreement evidenced Defendants' obligation to repay monies that LRA had loaned to BLG. (SOF ¶ 1.)[6]

### C.  BLG Received Proceeds from Settlements of Products Liability Cases

Beginning no later than November 2020, BLG started generating proceeds from settlements of products liability litigations it brought on behalf of its clients. (SOF ¶¶ 3-7.)

████████████████████████████████████████████████████

███████████████████████████████████████. (SOF ¶ 7.)

---

[4] When citing to BLG's First Amended Answer and Counterclaim, we provide the page and paragraph number because paragraph numbers restart.

[5] In his Amended Answer, Troy Brenes refers to the Guarantee Agreement as the "alleged guarantee" (ECF 43 at p. 7 ¶ 27) and "denie[s]" Plaintiff's allegation that "Troy Brenes executed a Guarantee Agreement, dated as of July 8, 2019" (ECF 1-1 at ¶ 9; ECF 43 at p. 3 ¶ 9). In a request to admit, Plaintiff asked BLG to admit that "The document filed at Doc. No. 18-3 is a Guarantee Agreement signed by Troy Brenes." (Solomon Decl. Ex. 10.) BLG objected but did not admit or deny, claiming that the "request is compound and not complete in and of itself and the responding party should not be forced to log on to the ECF Docket to browse the case file to locate the document being referred to." (Solomon Decl. Ex. 11.) That is ridiculous. The objection should be deemed defective, and the request deemed admitted. *Guadalupe v City of New York*, 15CIV0220CMJCF, 2016 WL 3570545, at *3 (SDNY June 24, 2016). Notably, the Court, in its Report and Recommendation on the motion to dismiss, treated the genuineness and execution of the Guarantee Agreement as unchallenged. (ECF 33 at p. 5.)

[6] Notes 1-2 are exhibits to the Complaint in the first action (ECF 1-1); Notes 3-8 are exhibits to the Complaint in the second action (ECF 2d Action 1-1 to 1-6).

No payments, however, were made to LRA from those proceeds. (SOF ¶ 4.) But BLG did make payments from the case proceeds to another lender, CAL.[7] ██████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████. (SOF ¶ 5.)

Perhaps not every payment that BLG made to CAL came from products liability cases, but most did. This included, notably, ███████████████████████████████
██████████████████████████████ (SOF ¶ 6), but LRA $0.

**D. BLG's Loan and Security Agreement with CAL**



(*Id.*) CAL perfected its security interest by pre-filing a UCC-1 with the California Secretary of State on October 13, 2020. (SOF ¶ 10.)

---

[7] The CAL loan is discussed *infra.*

### E.  BLG Elects To Not Pay Off LRA's Notes

Prior to executing in the CAL Note, on July 25, 2020, Brenes informed LRA that he had "arranged another line of credit and as part of those terms BLG has to pay off the promissory notes BLG took from LRA." (SOF ¶ 11.) He attached a form "payoff letter," which CAL had prepared for LRA to sign. (*Id.*)

In response to the request, on August 4, 2020, George Lui of LRA provided Troy Brenes with an interest spreadsheet in native Excel format[8] that showed the calculation of the full payoff amount as of any date selected by BLG. (SOF ¶ 12.) BLG forwarded Lui's native payoff worksheet to CAL. (SOF ¶ 13.) ██████████████████████████████ (SOF ¶ 14) and used it to calculate the payoff amount in a subsequent draft payoff letter (SOF ¶ 15).

In September and October 2020, LRA and BLG negotiated and exchanged drafts of a payoff letter, including versions dated "September __, 2020" and "October __, 2020." (SOF ¶ 16.) By email dated October 12, 2020, LRA proposed additional language to the payoff letter that sought to protect the contractual interests of its affiliate, Lawrence:

> Further, nothing contained herein shall constitute an amendment or modification of any terms, covenants or conditions of that certain Second Amended Attorney Association Agreement between Borrower, and any successors and/or assigns, and Lawrence Litigation Group, LP dated March 27, 2017, which is an agreement <u>that is valid, enforceable, in good standing, and not affected by the payoff of the Loans</u>.

(SOF ¶ 17, emphasis in original). This requested assurance came after months of LRA trying to pin Troy Brenes down on the status of Lawrence's co-counsel arrangement with BLG and, in

---

[8] Because it was in native format, BLG could view the formulas for the interest calculation method used by LRA. This demonstrates the falsity of BLG's argument in opposition to LRA's motion to dismiss that it did not know how LRA calculated interest (ECF 27 at 10-11), which the Court credited (ECF 33 at 21, n.19).

particular, the dollar amounts that Lawrence had contributed to the venture for funding BLG's operations and marketing expenditures. (SOF ¶ 16.)

BLG privately described this additional proposed language to CAL as "utter bullshit" and claimed that LRA was "playing games" and "trying to use the [payoff] letter to hold me hostage." (SOF ¶ 18.) But the payoff letter was never really needed. On October 28, 2020, Troy Brenes emailed LRA:

> Counsel Financial has confirmed *it does not require the letter you felt raised concerns for LLG*, and based off of the email sent a couple hours back appears ready to fund. All I need is a statement from LRA indicating what is owed to LRA under the promissory notes and the account info so I can repay the loan to LRA.

(SOF ¶ 19, emphasis added.)

LRA responded that it was concerned that issues relating to Lawrence were "unresolved" and invited Troy Brenes to call the next day to discuss. (*Id.*)

But the next contact came several months later, on January 5, 2021, when Brenes wrote:

> We have made several requests for information necessary for Brenes Law Group, P.C. to payoff all promissory notes from LRA. This includes the amount owed and the account information for us to wire the funds. We again ask that you please send this information in writing immediately.

(SOF ¶ 20.)

The next day, on January 6, 2021, George Lui of LRA (for the second time) provided Troy Brenes of BLG with an updated payoff spreadsheet in native Excel format, a payoff calculation as of January 6, 2021, and wire instructions. (SOF 21.)

On January 15, 2021, George Lui of LRA sent a follow up email (attaching his prior email of January 6, 2021) to Troy Brenes stating:

> I just want to confirm you received the payoff and wire instructions below. When should we expect to receive the same? Thanks and I hope you're well.

(SOF ¶ 22.)

Troy Brenes did not confirm or even respond to either email. (SOF ¶ 23.) And, BLG made no payment—despite having the payoff calculation and wire instructions. (SOF ¶¶ 23, 30.)

### F. LRA Accelerates and BLG Defaults

On January 21, 2022, LRA issued a default notice and demand for payment on Notes 1 and 2. (SOF ¶ 24; ECF 1-1, Ex D.) In the notice, LRA cited as an event of default the security interest that BLG gave to a lender (CAL). (*Id.*) LRA also included wire instructions. (SOF ¶ 24.) BLG did not respond or make any payment. (SOF ¶ 25.)

On the same day, LRA transmitted a second letter to BLG requesting information about case collections on its product liability cases. (SOF ¶ 26; ECF 2d Action 1-7.) LRA informed BLG that it believed that BLG had received payments on its cases, which would trigger a "payment date," and invited BLG to provide a sworn statement if it was claiming that no payment had been received. (*Id.*) BLG did not respond. (SOF ¶ 27.)

On February 24, 2023, LRA issued a demand letter and notice of acceleration to BLG based on its nonpayment of Notes 3 to 8 (SOF ¶ 28; ECF 2d Action 1-8.) LRA described the Notes, asserted that BLG had not made payments on the Payment Dates, cited BLG's refusal to provide information, and demanded full payment of interest and principal. (*Id.*) BLG did not respond. (SOF ¶ 29.)

To date, BLG has not paid LRA any money against Notes 1-8. (SOF ¶ 30.)

## IV. <u>ARGUMENT</u>

### A. Summary Judgment Standards

The standards on a motion for summary judgment are familiar:

> In a motion for summary judgment, the movant bears the burden of
> establishing that there is no genuine issue of material fact to be
> submitted to the trier of fact, and that the movant is entitled to

> judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (Brennan, J., dissenting); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). As a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party. *Celotex*, 477 U.S. at 330 n.2; *Adickes*, 398 U.S. at 158–59.

*Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir. 1988) (parallel citations omitted).

The Court may consider "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The Court may also "consider anything in support of or in opposition to summary judgment that it may judicially notice." § 2723 *Materials Considered on the Motion—Oral Testimony, Briefs, Oral Argument, and Judicial Notice*, 10A Fed. Prac. & Proc. Civ. § 2723 (4th ed.).

Once the movant carries its *prima facie* burden, "the non-moving party must come forward with specific facts that demonstrate a genuine issue of fact exists requiring a trial." *Curley v. Vill. of Suffern*, 268 F.3d 65, 69 (2d Cir. 2001). It is not enough to respond with "speculation or conjecture" or "mere conclusory allegations or denials." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (cleaned up).

As for defenses, if unsupported or conclusory they do not raise a material disputed fact. *Chase Manhattan Bank, N.A. v. Reale*, No. 92 CIV. 1042 (JSM), 1992 WL 297576, at *5 n.1 (S.D.N.Y. Oct. 7, 1992). Nor does the movant "bear the burden of proving that his opponent's case is wholly frivolous." *Brady,* 863 F.2d at 210. It need not adduce evidence "*negating* the opponent's claim." *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Rather, "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions."

*Brady,* 863 F.2d at 211. Thus, if the movant points to a lack of evidence supporting a defense, the burden shifts to the nonmoving party to come forward with persuasive evidence that his defense is not "implausible." *Id.*

Cases involving the enforcement of a promissory note "are particularly suitable for disposition via summary judgment, as the moving party need merely establish the absence of a genuine issue as to execution and default." *Pereira v. Cogan*, 267 B.R. 500, 506 (S.D.N.Y. 2001) (citing *Banco Popular N. Am. v. Austin Bagel Co.*, No. 99 CIV. 11252 SAS, 2000 WL 669644 (S.D.N.Y. May 23, 2000), and *AAI Recoveries, Inc. v. Pijuan*, 13 F. Supp. 2d 448, 450 (S.D.N.Y. 1998)).

### B. Plaintiff Has Satisfied Its Evidentiary Burden on its Motion for Summary Judgment on the Notes

To obtain summary judgment on a claim for breach of promissory notes, a plaintiff must establish the following elements with admissible evidence: "execution, delivery, demand, and failure to pay." *Inner City Telecomm. Network, Inc. v. Sheridan Broad. Corp.*, No. 10 CIV. 3567 (LAP), 2010 WL 2835559, at *2 (S.D.N.Y. July 13, 2010) (*quoting Soloman v. Langler*, 66 A.D.3d 508, 508 (1st Dept. 2009)). Each of the elements is demonstrated.

#### 1. Execution and Delivery

The evidence shows that BLG executed and delivered the eight Notes to LRA. (SOF ¶¶ 1, 2.)

#### 2. Demand

LRA issued a notice of acceleration and demand for payment on the first two notes on January 21, 2022. (SOF ¶ 24.) On the same day it requested information about case collections. (SOF ¶ 26.) Brenes did not respond to either and made no payment. (SOF ¶¶ 25, 27.) On

February 24, 2023, LRA issued a notice of acceleration and demand for payment on Notes 3 to 8.

(SOF ¶ 28.) BLG neither responded nor made any payments. (SOF ¶¶ 29-30.)

> (a) *The Demand was Authorized Under All Notes by BLG's Failure to Pay LRA on the Payment Dates*

LRA's acceleration and demand for payment were authorized under the terms of all

Notes. The Notes[9] contain the following terms that are relevant to this issue:

### The Payment Obligation

> [BLG] promises to pay to the order of Legal Recovery Associates LLC or its assigns ("Lender"), on the Payment Date (defined below), the principal [principal of note] together with interest at the annual rate of Seventeen and one half Percent (17.5%) thereon from the date hereof, such interest to accrue daily and to be paid with the payment of principal on the Payment Date or when prepaid. Any amounts past due under this Note shall accrue interest at the rate of Eighteen Percent (18%) per annum until paid in full.

### The Definition of Payment Date

> The term "Payment Date" means the date on which Maker receives payment of any award in respect of all product liability litigations represented by Brenes Law Group, PC (the "Case"), whether as a result of judgment, settlement or otherwise.

BLG's payment obligation was thus triggered by the occurrence of a "Payment Date,"

that is, when BLG recovered money on any Case. It is undisputed that BLG received payments

on multiple occasions before LRA issued its first notice of acceleration. (SOF ¶¶ 6-7.)

In breach of its obligation to repay the LRA Notes on each Payment Day, BLG paid LRA

nothing from the substantial case proceeds generated on its Cases. (SOF ¶¶ 4, 23, 25, 29, 30, 47.)

It used those proceeds instead for itself or to pay CAL. (SOF ¶¶ 5-7.)

---

[9] The Notes are referenced in SOF ¶ 1 and attached as Exhibits 1 to 8 the Solomon Declaration.

In a footnote to its Report and Recommendation, the Court queried whether a single small recovery on one case would require "BLG to repay the entire principal" on the Notes. (ECF 33 at 4 n.5). The question is academic. One might interpret the provision to have merely required BLG to pay to LRA what it collected. But no reasonable interpretation could support a construction that allows ███████████████████████, refuse to disclose any information about those collections, and pay LRA absolutely nothing on any Note ever.[10]

BLG's failure to pay any funds to LRA upon the Payment Date established the condition for acceleration. The Notes all provide as follows:

> At the option of Lender, the unpaid balance of this Note shall become due and payable Immediately on the occurrence or existence of any of the following events or conditions (each, an "Event of Default"): (a) any payment required by this Note is not made when due; (b) any default occurs in the performance of any covenant, obligation, warranty or provision contained in this Note; (c) any warranty, representation, financial information or statement made or furnished to Lender by or on behalf of Maker proves to have been false in any material respect when made or furnished.

LRA exercised its option to demand the entire balance for Notes 1 and 2 on January 21, 2022. (SOF ¶ 24.) It did so for Notes 3-8 on February 24, 2023. (SOF ¶ 28.)

> (b) *The Demand was Authorized Under Notes 1 and 2 Based on The Security Agreement Given to CAL*

LRA had an independent basis for accelerating the amounts due on Notes 1 and 2 and demanding immediate payment: BLG's provision of a first lien security interest in all its personal property, including the right to payment in connection with the Cases (as defined in the Notes), to CAL. Relevant provisions of Note 1 and 2 are as follows:

---

[10] It is familiar that "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990). The plain meaning here permits LRA to demand full payment whenever BLG received fees on one of its cases, as the Court observed (ECF 33 at 4 n.5). But even that would not be absurd. The parties could have reasonably expected that the Notes would convert into demand obligations once BLG started generating proceeds on its cases, leaving the demand for repayment in LRA's discretion.

**Events of Default**

"Events of Default" include if "(b) any default occurs in the performance of any covenant, obligation, warranty or provision contained in this Note …."

**BLG's Representation re. The Collateral**

Maker hereby represents, warrants and covenants for the benefit of Lender as follows: … (g) it [the Note] is and will be at all times the legal and beneficial owner of the Collateral, free and clear of any lien, security interest, option or other charge or encumbrance except those of the foregoing created by this Note ….

(SOF ¶ 1 (Solomon Decl. Exs. 1 and 2).)

BLG breached its warranty and the covenant by giving CAL a first-lien security interest in all its personal property on October 27, 2020. (SOF ¶ 9; Solomon Decl. Ex. 16 at 0034.) 

(SOF ¶ 9; Solomon Decl. Ex. 16 at 0034.) The collateral pledge to CAL covered the same "Cases" (defined as "all product liability litigations represented by [BLG]"), which BLG had previously promised LRA it would not encumber.

### 3. Failure to Pay

BLG paid no money to LRA in response to the two notices of default and demands for full payment. (SOF ¶¶ 24, 25, 28-30.)

### C. There is an Absence of Evidence to Support Essential Elements of Brenes Law Group's Defenses

#### 1. BLG's First Defense of Unclean Hands is Invalid

Plaintiff incorporates by reference the arguments for dismissing the unclean hands defense in its motion to strike the answer in Action 2. (ECF 62, 66.) As explained, this defense is: (a) an equitable defense, which is not valid against a claim for money damages, *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 607 (2d Cir. 2005); and (b) not pleaded except in conclusory format, so insufficient to raise a disputed issue, *Blue v. Koren*, 72 F.3d 1075, 1083-84 (2d Cir. 1995) ("[C]onclusory assertions are insufficient to defeat a motion for summary judgment.").

#### 2. BLG's Second Defense (and First Counterclaim) for Breach of the Implied Covenant of Good Faith and Fair Dealing Is Factually and Legally Meritless

Defendants cannot defeat summary judgment based on its affirmative defense and counterclaim that alleges that Plaintiff prevented it from exercising its contractual right to prepay the Notes. The defense and counterclaim fail for three reasons. First, LRA did, in fact, provide BLG with payoff information. Second, LRA had the right to negotiate the payoff letter in a manner that protects its financial interest. Third, BLG suffered no damage from the alleged breach. It closed the loan with CAL and would have paid the origination fee on the $5 million line of credit, whether it paid LRA or not. The interest that it had to pay LRA for the unpaid Notes was not "damage," but the cost of borrowing those funds.

##### (a) New York Law on the Implied Covenant

"In every contract there is an implied covenant of good faith and fair dealing which precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement." *Filner v. Shapiro*, 633 F.2d 139, 143 (2d Cir. 1980); *State St. Bank & Tr. Co. v.*

*Inversiones Errazuriz Limitada*, 374 F.3d 158, 169 (2d Cir. 2004). "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* (quoting *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002). A breach of the covenant is a breach of the contract itself. *Boscorale Operating, LLC. v. Nautica Apparel, Inc.*, 298 A.D.2d 330, 331 (1st Dept. 2002). "Since there is a presumption that all parties act in good faith, the burden of proving a breach of the covenant of good faith and fair dealing is on the person asserting the absence of good faith." *Barbara v. MarineMax, Inc.*, 577 F. App'x 49, 51 (2d Cir. 2014) (quoting *quoting Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007) (internal quotations omitted)).

As a defense, for a breach of the implied covenant by one contracting party to excuse the other from performance, the breach must be material. *Rudin v. Talisman, Rudin & Delorenz, P.C.*, 14 Misc. 3d 1218(A), 836 N.Y.S.2d 489, 2005 WL 5097015 (Sup. Ct. 2005) (citing *In re Lavigne*, 114 F.3d 379 (2d Cir. 1997), and *Babylon Assoc. v. County of Suffolk*, 101 A.D.2d 207, 215 (2d Dept. 1984)); *cf. NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 145 (S.D.N.Y. 2003). In this context, a breach is material, if it goes 'to the root of the agreement between the parties' or 'to the essence of the contract.'" *Int'l Gateway Exch., LLC v. W. Union Fin. Servs., Inc.*, 333 F. Supp. 2d 131, 143 (S.D.N.Y. 2004). This is demonstrated where the breach "is so substantial that it defeats the object of the parties in making the contract." *See Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997) (*citing Babylon Assocs.*, 101 A.D.2d at 215 (*citing Callanan v. Powers*, 199 N.Y. 268, 284 (1910))). "The determination of the materiality of a breach is, of course, an issue of law for the Court." *Int'l Gateway Exch.*, 333 F. Supp. 2d at 143 (*citing Wechsler v. Hunt Health Systems, Ltd.*, 198 F.

Supp. 2d 508, 526 (S.D.N.Y. 2002) (citing *Frank Felix Assocs.*, 111 F.3d 284; *accord Morgan Stanley v. Discover Fin. Servs.*, 26 Misc. 3d 1215(A), 907 N.Y.S.2d 104 (Sup. Ct. 2010).

Finally, for the counterclaim, damage is a required element. A claim for breach of the implied duty of good faith and fair dealing must be dismissed if the breach did not cause "actual damages," *RXR WWP Owner LLC v. WWP Sponsor, LLC*, 132 A.D.3d 467, 468 (1st Dept. 2015), as the "natural and probable consequence of the breach." *Shmueli v. Whitestar Dev. Corp.*, 148 A.D.3d 1814, 1814 (4th Dept. 2017). Moreover, the damages must be based on "nonspeculative evidence." *Id.*; *Golden Unicorn Enters., Inc. v. Audible, Inc.*, No. 21-CV-7059 (JMF), 2023 WL 6143567, at *4 (S.D.N.Y. Sept. 20, 2023) (applying New York law and quoting *Tractebel Energy*, 487 F.3d at 110).

### (b) Application of New York Law

#### i.  LRA Did Not Breach the Implied Covenant

BLG's defense and counterclaim based on the implied covenant of good faith and fair dealing hinges on the factual assertion that LRA prevented BLG from exercising its prepayment right. (ECF ¶ 43 at p. 16; ECF 54 at ¶ 78.) This is simply untrue.

LRA promptly provided a payoff calculation and BLG could have sent a check immediately or wired funds after receiving the wire instructions. In so doing, LRA discharged its implied obligation. *See, e.g., Beal Bank, S.S.B. v. Scelza*, 113 F.3d 1229 (2d Cir. 1997) (holding that lender discharged obligation of good faith by providing payoff amount; if defendant disputed, it could have paid under protest and "litigated over disputed amounts").

The sequence of events establishing LRA's performance is beyond dispute. Troy Brenes emailed LRA on July 25, 2020, requesting a payoff letter. (SOF ¶ 11.) LRA responded on August 4, 2020, sending BLG an Excel spreadsheet in native format, showing LRA's calculation of the amount due on the Notes. (SOF ¶ 12.) BLG forwarded the spreadsheet to the new lender,

CAL. (SOF ¶ 13.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SOF ¶ 14) and used the spreadsheet that LRA had provided to calculate the exact amount due (SOF ¶ 15). BLG and CAL continued to press for a payoff letter from LRA in a mutually agreed form (SOF ¶ 16), until they eventually decided that it was not necessary. (SOF ¶ 19.) LRA suggested a call to discuss the matter further, but Troy Brenes never reached out again until January 5, 2021. (SOF ¶ 20.)

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ (SOF ¶ 38.)

In his January 5, 2021 email, Troy Brenes demanded a payoff amount and wire instructions. (SOF ¶ 20.) LRA complied, emailing to Brenes an updated payoff spreadsheet in Excel format, a payoff calculation as of January 6, 2021, and wire instructions. (SOF ¶ 21.) BLG did not respond or pay. On January 15, 2021, LRA sent a follow up email (attaching the prior email of January 6, 2021) to BLG stating: "I just want to confirm you received the payoff and wire instructions below. When should we expect to receive the same?" BLG again did not respond or pay. (SOF ¶ 22.)

Thus, LRA did not breach, even if an obligation to provide a payoff calculation and instructions were implied under the covenant of good faith and fair dealing. LRA provided a timely payoff calculation on three occasions, and BLG could have sent a check at any time or wired money after January 6, 2021.

Moreover, even if LRA did breach, it was immaterial. Under New York law, mere delay, when time is not of the essence, is not a material breach. *Willoughby Rehab. v. Webster*, 134

17

A.D.3d 811, 813-14 (2d Dept. 2015). Thus, even were the Court to credit BLG's counterfactual

narrative, any delay by LRA in transmitting payoff information was but a few months, which is

immaterial within the overall context of LRA's performance: having made $3 million in loans to

BLG. *See, e.g., Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.,* 111 F.3d 284, 289 (2d Cir. 1997)

(breach caused by delay not material in the context of overall substantial compliance).

### ii.  LRA Did Not Act in Bad Faith

Under New York law, the implied covenant of good faith does not prevent a party from

"acting in its own self-interest consistent with its rights under the contract." *Ray Legal*

*Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704, 726 (S.D.N.Y. 2014) (cleaned up). Thus, the

presumption of good faith is not overcome because one contract party seeks the "renegotiation of

a contract" or acts in "'its own interests in a way that may incidentally lessen the other party's

anticipated fruits from the contract.'" *Optima Media Grp. Ltd. v. Bloomberg L.P.*, No. 17-CV-

01898 (AJN), 2021 WL 1941878, at *16 (S.D.N.Y. May 14, 2021) (quoting *M/A-COM Sec.*

*Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990)).

BLG's defense and counterclaim fails for the additional reason that its bad faith argument

is premised on LRA's effort to protect its financial interests in its affiliate, Lawrence. SOF ¶¶ 16-

17. By trying to negotiate favorable terms in the payoff letter, LRA's was exercising its "general

right to act in its own interests," *M/A-COM Sec.*, 904 F.2d at 136. As such, BLG cannot

overcome the presumption of good faith based on LRA's actions.

### iii.  BLG Suffered No Damage From Any Alleged Breach

A plaintiff "cannot recover if it would have suffered the harm regardless of defendant's

actions." *Point Prods. A.G. v. Sony Music Ent., Inc.*, 215 F. Supp. 2d 336, 341 (S.D.N.Y. 2002),

*opinion amended on reconsideration*, No. 93 CIV. 4001 (NRB), 2002 WL 31856951 (S.D.N.Y.

Dec. 19, 2002). This is yet another defect in BLG's defense and First Counterclaim.

The only "damage" that BLG claims is an expense that it would have had to pay CAL regardless of LRA's actions in connection with the payoff. This is conceded in BLG's First Amended Initial Disclosures,[11] in which BLG claims damages in the amount of $34,892.80, representing "the interest or origination fee on the set aside referred to in the Answers." (ECF 43 at p. 17; ECF 54.) But BLG would have incurred that fee even if it had paid off LRA.[12] In other words, BLG always required the $5 million line, the only question was whether it would draw on it to pay off LRA or keep the available borrowing power open and not pay off LRA (the path ultimately taken). Because BLG would have incurred the 1% origination fee to CAL regardless of any alleged breach by LRA, it cannot establish the injury element of its cause of action. *Phoenix Bulk Carriers, Ltd. v. Am. Metals Trading, LLP*, No. 10 CIV. 2963 NRB, 2013 WL 5863608, at *6 (S.D.N.Y. Oct. 31, 2013) (finding no causation where damages would have been incurred regardless of breach).

BLG's damage assertion rings hollow for another reason. BLG falsely claims that the fee was a cost incurred for a portion of the line that it could not access, in effect dead money. Even that is not true. ████████████████████████████████████████ (SOF ¶ 42.) ████████████████████████████████████████ ████████████████ (SOF ¶¶ 44-46) ████████████████████ ████████████████████████. (SOF ¶ 46.)

CAL also claims damage in terms of the interest that it has had to pay LRA. (ECF ¶ 79.) But that interest is not "damage" but the contractually agreed cost of borrowing LRA's money. *Cf. Blumberg v. Altman,* 15 Misc. 3d 1140(A), 2007 WL 1519067, *2 (Sup. Ct. 2007) (interest to

---

[11] Solomon Decl. Ex. 47 (Defendant's First Amended Initial Disclosures).
[12] SOF ¶¶ 39-44 (showing calculation of Closing Fee and "Restricted Amount").

IRS not "damages" but the cost of using the money). Moreover, the *cause* of that "damage" was

BLG's choice not to repay LRA, not LRA's alleged breach.[13]

### 3.  The Third, Fourth, Fifth, and Seventh Affirmative Defenses Are All Duplicative of the Second

Defendants' shoehorning of the payoff dispute into a hodgepodge of legal theories—the

third ("failure to mitigate"); the fourth ("Plaintiff's interference"); the fifth ("impossibility"); and

the seventh ("bad faith")—necessarily fails because the predicate is BLG's claim that it was

prevented from paying off the Notes to LRA, which is simply untrue.

Several have additional flaws. For example, failure to mitigate (ECF 43 at p. 8-9; ECF 54

at ¶ 41) does not apply because the payoff event occurred before BLG ever breached. *See Bank*

*of New York Mellon Tr. Co., Nat'l Ass'n for Registered Certificate Holders of Morgan Stanley*

*Cap. I Inc. v. Morgan Stanley Mortg. Cap., Inc.*, No. 11CIV505CMGWG, 2017 WL 698607, at

\*1 (S.D.N.Y. Feb. 10, 2017) ("[T]here is no such thing as 'pre-breach' mitigation"). The "bad

faith" defense—presumably based on the implied covenant of good faith and fair dealing—also

fails because the alleged misconduct did not destroy the value of the contract, which was to

obtain $3 million of funding from LRA. *See George Town Assocs. S.A. v. Abakan, Inc.*, No.

15CV3435 DLC, 2015 WL 4923040, at \*10 (S.D.N.Y. Aug. 18, 2015); *M/A-COM Sec. Corp. v.*

*Galesi*, 904 F.2d 134, 136 (2d Cir. 1990).

### 4.  The Sixth Defense of Laches Is No Defense to a Claim at Law

As demonstrated in its motion to strike, the equitable defense laches is unavailable as a

defense to claim at law for breach of a written contract. ECF 62 at 3-4; ECF 66 at 6-7; *see Rabb*

---

[13] Although not stated or claimed, if BLG had suffered damage from delay, the remedy would be measured based on the difference in borrowing costs on LRA's principal and CAL's note from the closing of CAL's loan (October 27, 2020) (SOF ¶ 8) and BLG's unequivocal receipt of the payoff amount and wire instructions on January 6, 2021 (SOF ¶ 21). The calculation is easily performed. ████████████████████████████
████████████████████████████████████████████

*v. Jessica Assocs.*, No. 93 CIV. 8565 (RPP), 1995 WL 387687, at *2 (S.D.N.Y. June 29, 1995)

("defense of laches is unavailable as a matter of law in an action to collect under a promissory

note"). It also is irrelevant when the statute of limitation is set by statute. *Balderramo v. Go New*

*York Tours Inc.*, No. 15-CV-2326, 2023 WL 2751039, at *18 (S.D.N.Y. Mar. 31, 2023).

### 5.    The Eighth Affirmative Defense of Tender Is Factually Without Support

Defendants' eighth affirmative defense in Action 2 alleges that Defendants "made a

tender offer to repay all amounts owed under all promissory notes to LRA." (ECF 54 at 5.)

Defendants further allege that, as a result, "no interest should be deemed to have accrued as of

September 2020." (*Id.*)

Under common law principles, to arrest the accrual of interest, an obligor must make "an

unconditional tender of payment." *Michaels v. U.S. Tennis Ass'n, Inc.*, 295 A.D.2d 222, 744

N.Y.S.2d 375, 375 (2002); *see generally* 86 *C.J.S. Tender* § 1 ("The word 'tender' has a definite,

legal signification, and imports not merely the readiness and the ability to pay or perform, but

also the actual production of the subject matter of the tender, an offer of it to the person entitled

to receive it, and a refusal to accept it."). A mere "offer to pay all amounts due" is insufficient.

*Raven v. Dansville Properties, Inc.*, 130 A.D.2d 943, 943 (4th Dept. 1987); *Jamaica Sav. Bank v.*

*Sutton*, 42 A.D.2d 856, 857 (2d Dept. 1973).

There are two elements: first, there must be an actual *tender*, *i.e.*, the presentation of a

"check or other form of payment"; second, such tender must be made without conditions. A

purported tender that fails to comply with these two requirements is ineffective. *See, e.g.,*

*Gamman v. Silverman,* 135 A.D.3d 814, 815 (2d Dept. 2016) (explaining that a tender that was

not "unconditional" does not stop the accrual of interest); *Cohen v. Transcon. Ins. Co.,* 262

A.D.2d 189, 191 (1st Dept. 1999) (same); *Michaels*, *supra.*; 86 C.J.S. Tender § 19 ("[A]n offer

to deliver a check merely evidences an intention and does not constitute a tender, since the offer

to deliver a check, as opposed to the presence of a check in the default amount, would not satisfy

a purchasers' obligation to cure payment defaults.").

The very purpose of tender "is to enable the debtor to relieve himself or herself of interest

and costs." 74 Am. Jur. 2d Tender § 2. BLG, however, failed to take advantage. It received a

payoff amount on several occasions and made its own calculation, but it never presented a

payment. (SOF ¶ 47.)

### 6.   The Other Defenses Were Dismissed or Withdrawn

The Court dismissed Defendants' last two affirmative defenses for usury and duress (ECF

33), and Defendants withdrew their ninth defense in Action 2, which frivolously raised a

"defense" under the federal securities laws. (ECF 65 at 9.)

### D.  The First Counterclaim Should Be Dismissed

BLG and Brenes's first counterclaim alleges that LRA's refusal to sign BLG's new third-

party lender's proposed payoff letter and to provide a payoff amount and account instruction

breached the "implied duty of good faith and fair dealing." (ECF 43 at p 16-17.) The

counterclaim should be dismissed for the reasons stated above. *See, supra* at section C.2.

### E.  Mr. Brenes Is Liable Under the Personal Guarantee

### 1.   New York Law on Guarantee Agreements

A plaintiff seeking summary judgment on a guarantee agreement, "must prove 'the

existence of the guaranty, the underlying debt and the guarantor's failure to perform under the

guaranty.'" *Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 25 N.Y.3d 485,

492 (2015) (quoting *Davimos v. Halle*, 35 A.D.3d 270, 272 (1st Dept. 2006), citing *City of New

York v. Clarose Cinema Corp.*, 256 A.D.2d 69, 71 (1st Dept. 1998)); *Citibank, N.A. v. Jacobsen*,

22

No. 19 CIV. 959 (ER), 2020 WL 7046841, at *3 (S.D.N.Y. Dec. 1, 2020) (quoting *Cooperatieve Centrale, supra*).

### 2. LRA Has Established Its Prima Facie Case for Summary Judgment on Troy Brenes's Personal Guarantee

The elements for Plaintiff's claim for summary judgment on Troy Brenes's personal guarantee are undisputed. The guarantee exists; BLG has not paid the debt evidenced by Note 1; nor has Troy Brenes under the guarantee.

That the guarantee was triggered cannot be disputed. The Guarantee Agreement lists various events that trigger personal liability. The following are relevant here:

> (i) fraud or willful misconduct by the Borrower or any of its Affiliates (including the Guarantor), agents or representatives in connection with the Note;
>
> (x) Any intentional act by the Guarantor or the Borrower that prevents, delays or hinders the perfection of the Lender's security interest granted under the Note or otherwise results in any material damage or diminution in value of any of the security interest or the Lender's interest therein;
>
> (xi) The Guarantor or the Borrower disaffirms, disclaims, repudiates or rejects, in whole or in part, or challenges the validity of the Note, this Agreement, or any term or provision thereof.

(Solomon Decl. Ex. 9.)

The first two events—(i) and (x)—occurred when BLG gave CAL a first-lien security interest in the "Collateral" (under the CAL Security Agreement), which impaired LRA's security interest in the Cases under Note 1.

BLG also triggered the covenant in paragraph "xi" when it asserted in its Answer that LRA should "recover nothing" or that its recovery be "limited" to the amounts due "as of September 2020." (ECF 43 at 18.) This demand for relief is a "rejection" or "repudiation" of Note 1 insofar as it requires BLG to repay principal and interest. BLG also explicitly triggered

"xi" in its opposition to LRA's initial motion to dismiss the counterclaim, where it wrote: "The July 8, 2019 Promissory Note and Associated Guarantee Are **Invalid** Due to a Failure of Consideration." (ECF 27 at 16, emphasis added.)

### 3.  Troy Brenes Has No Defense

When guarantees are "unconditional" and include "waivers of defenses," courts enforce them. *Exp.-Imp. Bank of U.S. v. Agricola Del Mar BCS*, 334 F. App'x 353, 355 (2d Cir. 2009); *HSH Nordbank AG New York Branch v. St.*, 421 F. App'x 70, 73 (2d Cir. 2011). Where they exist, such waivers "preclude guarantors from asserting a broad range of defenses under New York law, including fraud in the inducement." *JPMorgan Chase Bank, N.A. v. Reifler*, 614 F. App'x 11, 13 (2d Cir. 2015).

A narrow exception to this general rule was applied in *Canterbury Realty & Equip. Corp. v. Poughkeepsie Sav. Bank*, 135 A.D.2d 102 (3rd Dept. 1988), which involved a defense based on the implied covenant of good faith and fair dealing. There, the guarantors adduced evidence that "the Bank unfairly brought about the occurrence of the very condition precedent (Canterbury's suspension of business) upon which it relied to accelerate the loan against the guarantors." *Id.* at 107. But it does not apply here because (a) the implied duty of good faith and fair dealing was not breached (*see, supra* at C.2); and (b) it is not alleged and cannot be shown that LRA caused BLG to default after receiving LRA's demand for payment, which is the essential component to the exception. *See HSH Nordbank*, 421 F. App'x at 70, 73 (explaining and distinguishing *Canterbury*).

Because Brenes's guarantee is unconditional and the waiver of defenses is valid and enforceable, under settled New York law (as recognized by the Second Circuit), the Court should strike his affirmative defenses and grant summary judgment against him.

## V.    THE CALCULATION OF DAMAGES

LRA's calculation of damages uses the most conservative assumptions, to avoid any dispute or ambiguity. Interest is calculated using the 365/365 method and default interest is not applied until the date of acceleration. Based on the calculation, judgment should be entered against LRA in the total principal amount of $3,000,000, with interest through the dates of acceleration (1/22/22 for Notes 1 and 2, and 2/24/23 for Notes 3-8) at 17.5 percent per annum (simple) in the amount of $1,397,147.26, with interest after acceleration on the entire past due amount at 18% per annum (the default rate).[14]

## VI.    CONCLUSION

BLG and Troy Brenes have dragged this case out under the fiction that LRA prevented it from repaying the Notes in late 2020 in bad faith. In truth, BLG had all the information but chose not to make the repayment and, in any event, LRA was acting to advance its own legitimate business interests. Accordingly, summary judgment should be entered in both cases in favor of LRA and against BLG. BLG's two counterclaims, which are stayed pending arbitration, ought to be severed.

Dated: New York, New York
         January 16, 2024

                                          SOLOMON CRAMER & SUMMIT LLP
                                          *Attorneys for Plaintiff*

                                          By:    /s/Andrew T. Solomon
                                                 Andrew T. Solomon
                                                 asolomon@solomoncramer.com

                                          25 West 39th St., 7th Floor
                                          New York, New York 10018
                                          (t) (212) 884-9102
                                          (f) (516) 368-3896

---

[14] See Appendix A

**Appendix A**

Calculation of Interest to January 8, 2024

| Note | Date | Ref | Principal | Date of Acceleration | Non-Default Int to Acceleration | Default Interest To Calculation Day | Per Diem |
|------|------|-----|-----------|---------------------|-------------------------------|-----------------------------------|----------|
| Note 1 | 8-Jul-19 | ECF 18-1 | $1,100,000 | 1/21/2022 | $489,424.66 | $562,003.14 | $783.83 |
| Note 2 | 12-Sep-19 | ECF 18-2 | $500,000 | 1/21/2022 | $206,643.84 | $249,861.52 | $348.48 |
| Note 3 | 12/9/2019 | ECF(2) 1-1 | $500,000 | 2/24/2023 | $281,198.63 | $122,509.07 | $385.25 |
| Note 4 | 3/5/2020 | ECF(2) 1-2 | $250,000 | 2/24/2023 | $130,171.23 | $59,619.18 | $187.48 |
| Note 5 | 6/5/2020 | ECF(2) 1-3 | $200,000 | 2/24/2023 | $95,315.07 | $46,311.88 | $145.63 |
| Note 6 | 8/6/2020 | ECF(2) 1-4 | $150,000 | 2/24/2023 | $67,027.40 | $34,034.65 | $107.03 |
| Note 7 | 8/31/2020 | ECF(2) 1-5 | $150,000 | 2/24/2023 | $65,229.45 | $33,752.70 | $106.14 |
| Note 8 | 10/13/2020 | ECF(2) 1-6 | $150,000 | 2/24/2023 | $62,136.99 | $33,267.73 | $104.62 |
| | | | $3,000,000 | | $1,397,147.26 | $1,141,359.86 | $2,168.46 |