UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
LEGAL RECOVERY ASSOCIATES, LLC,

        Plaintiff,

  -against-

BRENES LAW GROUP, P.C. et al.,

        Defendants.
----------------------------------------------------------x
LEGAL RECOVERY ASSOCIATES LLC,

        Plaintiff,

  -against-

BRENES LAW GROUP, P.C.

        Defendant.
----------------------------------------------------------x
CONSOLIDATED CASES
----------------------------------------------------------x

22-CV-1778 (ER) (BCM)

**DECLARATION OF HOWARD BERGER IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

23-CV-2446 (ER) (BCM)

HOWARD BERGER, pursuant to 28 U.S.C. § 1746, declares:

    1.    I am a full-time consultant to Legal Recovery Associates, LLC (LRA). I was also Troy Brenes's primary contact for the $3 million in loans that LRA extended to his firm, Brenes Law Group, P.C. ("BLG"), the notes he provided to LRA to evidence his repayment obligation, and the communications regarding the payoff letter. I make this Declaration in support of LRA's motion for summary judgment. The statements below are based on my personal knowledge.

    2.    LRA provides litigation funding, infrastructure, and marketing support to law firms.

    3.    BLG was introduced to LRA through its affiliate, Lawrence Litigation Group, LLC ("Lawrence"). Lawrence and BLG had entered into a co-counsel agreement in December 2016, pursuant to which Lawrence advanced funding for operations and marketing expenses to

BLG in support of its mass tort litigation business. Lawrence introduced BLG to LRA as a source of debt financing and, from 2019 to October 2021, LRA provided a series of loans to BLG in the total amount of $3 million, evidenced by the eight promissory notes at issue in this litigation. Exs. 1-8 to the Declaration of Andrew T. Solomon dated January 9, 2024 ("Solomon Decl.); ECF [22-cv-1778] 18-1, 18-2 and ECF [23-cv-02446] 1-1 to 1-6.

4.    On July 25, 2020, Troy Brenes communicated to me that BLG had arranged another line of credit and, as part of its terms, BLG was required to pay off LRA. His email attached a form of payoff letter for LRA to fill out and execute for the new lender, which turned out to be California Attorney Lending II, LLC ("CAL"). Solomon Decl. Ex. 19.

5.    I instructed George Lui to provide the payoff calculation, which he did on August 4, 2020. I was concerned, however, about the form of payoff letter because it lacked protections for LRA and for Lawrence.

6.    From August through October 2020, I negotiated the language of the payoff letter with Troy Brenes. We exchanged several drafts (*e.g.*, Solomon Decl. Ex. 26 at LRA000103 and Ex. 27 at LRA000138). During that time, LRA continued lend money to BLG ($450,000 in total[1]), so that it could operate until the payoff could be finalized.

7.    In negotiating the terms of the payoff letter for LRA, I wanted to confirm that BLG's relationship with CAL would not adversely impact its co-counsel arrangement with Lawrence.

8.    But when I tried to confirm the dollar amounts owed to Lawrence for its previous funding of BLG's operations and marketing expenses (*see e.g.,* Exhibit A at LRA000242, and Exhibit B.) Troy Brenes was either non-responsive or evasive. Based on this concern, on October

---

[1] $150,000 on August 6, 2020; $150,000 on August 31, 2020; $150,000 on October 13, 2020. (ECF [23-cv-02446] 1-4 to 1-6.)

12, 2020, I proposed additional language for the payoff letter, under which BLG would at least acknowledge its agreement with Lawrence as "valid, enforceable, in good standing, and not affected by the payoff of the Loans." Solomon Decl. Ex. 28.

9. On October 28, 2020, I emailed Troy Brenes to inform him that Counsel Financial (which was apparently managing the new lending facility for CAL) was requesting payoff information directly from LRA. I asked again that he confirm the dollar amounts due to Lawrence for its operations funding and marketing contributions. Exhibit C at LRA000246, Brenes responded on the marketing amounts (and asked again for the already-provided payoff information and wire instructions). He said nothing with respect to amounts due to Lawrence for operations funding. *Id.*

10. Later that day, after we received a call from Counsel Financial asking for updated payoff information, I emailed Brenes: "Im lost. I send you emails. you only answer some of them. If you want to move forward with this please call me." Exhibit D at LRA000249.

11. Troy Brenes responded, telling me that Counsel Financial was no longer requiring a payoff letter and asking for the payoff amount and LRA's account information. Exhibit E at LRA000252. He also informed me—after months of discussions and just as I had feared—that BLG was taking issue with Lawrence under the co-counsel arrangement. *Id*.

12. At 7:48 p.m. on October 28, 2020, I replied by email (Solomon Decl. Ex. 30 at LRA000254) telling Troy Brenes:

> I am around just about every day at some point. The last emails I sent to you were oct 12/13 and went unanswered.
>
> I understand if your in a deposition today.
>
> Not going to leave issues unresolved. I still can't even get confirmation you agree on the marketing money or the contributions to date.

3

> Call me tomorrow any time after 11 am est or Friday between 10:30-1:30 or after 3.

13. Troy Brenes did not call or contact me in response. Unbeknownst to me at the time, BLG had already closed on a $5,000,000 loan from CAL, without paying off LRA. Solomon Decl. Ex. 16 (Px 11).

14. The next I heard from Troy Brenes was by email on January 5, 2021. Troy Brenes asked for wire instructions and payoff amount. Exhibit F. I replied, asking why he failed to respond to my email of October 28, 2020, and again asked about the Lawrence issues. Exhibit G at LRA000169. Troy Brenes responded that I was improperly conflating the LRA payoff with the Lawrence issues. Exhibit H at LRA000171.

15. Brenes's complaint was unfair and self-serving. He knew that LRA was affiliated with Lawrence and that the relationship was the only reason that LRA had been willing to loan him $3 million with minimal due diligence and without some customary safeguards. In any event, LRA and I had acted in good faith throughout the payoff negotiations—including by continuing to fund BLG, even though it was transitioning to a new lender.

16. Despite my unresolved concerns, in response to Troy Brenes's payoff demand, I asked George Lui to provide him with payoff information and wire instructions that he requested.

17. Lui did so by email on January 6 and January 15, 2021 (copying me). Solomon Decl. Exs. 32 (Px 2) and 33.

18. We did not hear back from Troy Brenes or BLG after providing the payoff information. They asked no questions or responded in any way. Nor did BLG make any payment to LRA or even try to make a payment. And as I suspected, Brenes has repudiated BLG's obligations to Lawrence.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 16, 2024                    _____/s/_____

5