**SOLOMON CRAMER & SUMMIT LLP**
25 West 39th Street, 7th Floor
New York, NY 10018
(212) 884-9102
solomoncramer.com

January 22, 2024

**Via ECF**

Hon. Barbara Moses
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 740
New York, NY 10007

Re:  *Legal Recovery Associates, LLC v. Brenes Law Group, P.C., et al.*, 22-cv-1778 (Action #1)
     *Legal Recovery Associates, LLC v. Brenes Law Group, P.C.*, 23-cv-2446 (Action #2)

Dear Judge Moses:

This firm represents the Plaintiff Legal Recovery Associates, LLC. We write in reply to defendant Brenes Law Group, P.C.'s ("Brenes") letter (ECF 104) asking the Court to seal a substantial portion of the evidence Plaintiff offered as proof on its motion for summary judgment.

**The Standard for Sealing Judicial Documents**

The evidence submitted by Plaintiff in support of its motion for summary judgment consists of "judicial documents," to which the public presumptively has access. *Janaúba I Gerãcao Solar Energia S/A v. Trina Solar Energy Dev. Pte Ltd.*, No. 23MC237LAKBCM, 2023 WL 5348900, at *2 (S.D.N.Y. Aug. 21, 2023); *Julian v. Metro. Life Ins. Co.*, No. 17CV957AJNBCM, 2020 WL 5913739, at *3 (S.D.N.Y. Oct. 6, 2020).

The presumption of public access, rooted in the common law and the First Amendment, can be overcome if "higher values" favoring privacy exist. *Julian*, 2020 WL 5913739, at *4 (quoting *Alexandria Real Est. Equities, Inc. v. Fair*, No. 11 CIV. 3694 LTS, 2011 WL 6015646, at *1 (S.D.N.Y. Nov. 30, 2011)). Examples of "higher values" include the attorney-client privilege, national security, protection of innocent third-party privacy interests, and medical information. *Alexandria Real Est. Equities, Inc. v. Fair*, No. 11 CIV. 3694 LTS, 2011 WL 6015646, at *2 (S.D.N.Y. Nov. 30, 2011) (citing cases).

The burden of showing a "higher value" that trumps the presumption favoring public access resides with the party seeking to seal the information. *DiRussa v. Dean Witter Reynolds Inc.*, 121

F.3d 818, 826 (2d Cir. 1997). Any restriction must be "narrowly tailored," *Seaman v. Nat'l Collegiate Student Loan Tr.* 2007-2, No. 18CV1781PGGBCM, 2022 WL 715241, at *1 (S.D.N.Y. Mar. 10, 2022), and supported by a specific finding of the court. *BakeMark USA LLC v. Negron*, No. 23CV2360ATBCM, 2024 WL 182505, at *1 (S.D.N.Y. Jan. 16, 2024).

Brenes seeks to seal information about (i) settlement amounts from mass tort cases, (ii) its own allegedly private financial information, and (iii) the terms and negotiation of its loan agreement with non-party California Attorney Lending II, Inc. ("CAL"). Yet, Brenes has failed to provide evidence and legal authority to establish a higher value sufficient to overcome the presumption of public access to these judicial documents.

**The Mass Tort Settlements**

Brenes generally represents clients in mass tort cases. When cases settle, Brenes's clients recover damages and Brenes typically receives a share of the fees and costs. Brenes then reports these recoveries to its lender, CAL, which is entitled to a portion of the net fees and costs paid to Brenes under its loan agreement. Brenes claims that the information on its settlement reports to its third-party lender and the statements generated by CAL to show the allocation of payments to principal and interest should be sealed.

The confidentiality of the fees, costs and other amounts involved in mass tort case settlements, which are themselves public proceedings, is not supported by evidence. The mere fact that a settlement agreement requires confidentiality is not a sufficient basis for sealing a judicial document. *Garcia v. Jambox, Inc.*, No. 14-CV-3504 MHD, 2015 WL 2359502, at *5 (S.D.N.Y. Apr. 27, 2015); *Bravo v. 57th Rest. Assocs. LLC*, No. 14-CV-8492 RJS, 2015 WL 1283659, at *2 (S.D.N.Y. Mar. 2, 2015) (Sullivan, J.).

There may be exceptions, but Brenes has not provided the Court with any settlement agreements or the text of any confidentiality provisions. Such restrictions typically contain notice provisions and exceptions for other legal proceedings. Brenes has supplied none of these details to the Court. It has described no steps taken to release any restrictions. It has offered no proposals for narrowly tailoring the sealing request through redactions. Nor has it adequately explained how producing this supposedly confidential settlement information to a lender that has other lawyer clients is not a waiver of confidentiality.

Brenes's legal arguments are as weak as its factual presentation. Brenes relies on an unpublished memo endorsed letter in *Washington v. NYC Madison Med.*, No. 1:20-cv-3446 (S.D.N.Y. Dec. 18, 2023) (attached). In discussing the case, Brenes quotes from language in the underlying joint letter brief as if it were the court's holding. The actual order approved only limited, narrowly tailored redactions to a single settlement agreement. Moreover, the case cited in the joint letter (but not by the court), *Hasbrouck v. BankAmerica Hous. Servs.*, 187 F.R.D. 453 (N.D.N.Y. 1999), *aff'd sub nom. Hasbrouck v. BankAmerica Hous. Servs., Inc.*, 190 F.R.D. 42 (N.D.N.Y.

1999), is completely inapposite. That case involved a protective order against discovery, not a motion to seal judicial documents submitted on summary judgment.[1]

**Non-Public Financial Information**

Brenes's interest in maintaining confidentiality about its non-public financial information is stated in vague and generalized terms—essentially, confidentiality for confidentiality's sake. This is plainly insufficient. *See, e.g., Seaman v. Nat'l Collegiate Student Loan Tr. 2007-2*, No. 18CV1781PGGBCM, 2022 WL 715241, at *2 (S.D.N.Y. Mar. 10, 2022) (rejecting "broad and vague" generalized assertions about the need for confidentiality); *see e.g., Janaúba I Gerãcao Solar Energia S/A*, 2023 WL 5348900, at *3 ("vague references to 'sensitive and confidential business information' … fail to overcome the presumption of public access.").

Moreover, several of the sensitive areas that Brenes highlights, *i.e.*, "account numbers, tax identification numbers," are already protected by the redaction requirements of Fed. R. Civ. P. 5.2. As to the other items, Brenes claims that disclosure will "cause substantial harm," but fails to explain how or why. Nor does it suggest any redactions to narrowly tailor the remedy.

**The CAL Loan Agreement**

Finally, the loan agreement, its terms, and the loan statements are not confidential. First, CAL is no longer arguing for confidentiality. Second, Brenes's assertion that disclosure of the loan terms might adversely affect it in future lending negotiations is entirely speculative and not supported by evidence. *See Stinson*, 2018 WL 11585446, at *3. Missing is any showing that the disclosure of the loan agreement or its terms would compromise genuine "trade secrets or other competitively sensitive business information," *Stinson v. City of New York,* No. 18CV00027LAKBCM, 2018 WL 11585446, at *3 (S.D.N.Y. Dec. 27, 2018), which might justify sealing.

**Conclusion**

Brenes has not sufficiently established a right to seal documents under the standards established in *Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 124 (2d Cir. 2006).[2] For the reasons above, we respectfully submit that the Court should deny Brenes's request, unseal the exhibits to the Declaration of Andrew T. Solomon (ECF 101), and authorize the public filing of unredacted versions of Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment (ECF 96-97) and the Rule 56.1 Statement (ECF 98-99).

---

[1] In a footnote, *Hasbrouck* explicitly rejected the claim that the document at issue was a judicial document. 187 F.R.D. at 459 n. 5.

[2] Brenes cites *Lugosch*, but then, oddly, shifts its focus to *dicta* in *United States v. Kravetz,* 706 F.3d 47 (1st Cir. 2013). There, the *First Circuit* held that "Rule 17(c) [of the Federal Rules of *Criminal Procedure*] materials are not entitled to a presumption of access under either the First Amendment or the common law." *Id.* at 53. Later in the opinion, the First Circuit indicated that on remand it was appropriate for the district court to balance the public's right of access with the personal privacy interest of the persons who submitted sentencing letters to the court. *Id. at* 62.

Respectfully submitted,

*/s/ Andrew Solomon*
Andrew T. Solomon

Attachments (1)

cc: Troy A. Brenes, Esq. (via ECF)
    Richard M. Scherer, Jr., Esq. (via ECF)

**Attachment**

*Washington v. NYC Madison Med.*, 1:20-cv-3446 (LTS)(SN) (Dec. 15, 2023)

Case 1:20-cv-03446-LTS-SN Document 107 Filed 02/19/24 Page 1 of 14

<u>MEMO ENDORSED</u>



# LAW OFFICE OF YURIY MOSHES, P.C.

*Please reply to our NEW YORK CITY office*

322 West 48th Street, 6th FL      111 Northfield Ave, Suite 208A     517 Brighton Beach Ave., 2nd Floor
New York, NY 10036     West Orange, NJ 07052     Brooklyn, NY 11235

Tel. (888) 445-0234 Fax: (646) 843-7570
_____

Yuriy Moshes, Esq.     Gennady Litvin, Esq.
    Jessenia Maldonado, Esq.
*Members of NJ and NY Bar.*     *Members of NY Bar.*

December 15, 2023

**<u>Via ECF</u>**
Honorable Laura Taylor Swain
Chief United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

         Re:     <u>**Stacy Washington v. NYC Madison Medical, et al.**</u>
                     **United States District Court, Southern District of New York**
                     **Case No. 1:20-cv-3446 (LTS)(SN)**

Dear Chief Judge Swain:

     Moshes Law represents the Plaintiff, Stacy Washington, in the above-referenced matter. Pursuant to Your Honor's individual rules, section 6 of the Court's ECF filing rules, and this District Court's Standing Order (19-mc-00583), we submit this letter motion, jointly with the consent of counsel for defendant NYC Madison Avenue Medical P.C. ("NYC Madison"), seeking to permanently seal the entirety of the contents of the Confidential Settlement Agreement and Release (hereinafter "Confidential Release"), which counsel for plaintiff inadvertently filed as an unsealed document on November 30, 2023. (D.E. 83).

     **I.**      **<u>Background</u>**

     The filing of the Confidential Release was a mistake by counsel for plaintiff and completely unintentional. This case, which was commenced on May 3, 2020, resolved via the settlement agreement reached following mediation on September 27, 2023, after more than three years of litigation. The parties submit that given the unambiguously confidentiality clauses of the agreement, coupled with the strong public policy in favor of pre-trial settlement of disputed claims, the failure to seal a document that states "**<u>CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE</u>**" in bold, all capital letters, and underlined on the first page of the document would have a chilling effect on future settlements, and would risk voiding a hard-fought settlement

that neither Ms. Washington nor NYC Madison want to vacate.

The Settlement Agreement (D.E. 83) was filed with the Court on November 30, 2023, but it was mistakenly not marked as sealed, although Plaintiff's counsel, the filing party, thought that he had marked the box for the document to be sealed. The undersigned counsel mistakenly believed that the document could be filed as "sealed" without leave of Court and did so without first consulting opposing counsel, who only learned that the document was filed when the ECF notification was sent via-e-mail. NYC Madison's attorneys immediately contacted our office when the Confidential Release (D.E. 83) was filed and our office thereafter contacted the Clerk who placed a temporary 30-day seal preventing the general public from viewing a Confidential Release (D.E. 83) that contains an unambiguous confidentiality clause, which was filed by mistake. That temporary seal is set to expire on December 30, 2023.

By letter-motion on November 30, 2023, the parties jointly requested that the Court seal or maintain the seal on the Settlement Agreement (Document Number 83). By memo endorsement on December 4, 2023, this Honorable Court denied the joint application to seal without prejudice to renewal. (D.E. 86). We submit this revised joint letter motion in conformity with the aforementioned ECF rules and Your Honor's individual practices.

## II. Exhibits in Conformity with the Standing Order, ECF Rule 6, and this Court's Individual Civil Practice Rule A.5.b.ii

Attached hereto as *Exhibit A* (submitted to Your Honor via e-mail pursuant to individual rule A.5.b.ii, p. 7) is an unredacted copy of the Confidential Release with all proposed redactions highlighted per individual rule A.5.b.ii, p. 7. Attached hereto as *Exhibit B* is a redacted copy of the Confidential Release with all terms blacked out except the heading on page one of the document. If the inadvertently filed document (D.E. 83) is to be replaced with any version of the Confidential Release, the parties request that it be the redacted version contained in *Exhibit B*. Attached hereto as *Exhibit C* is an alternate proposed redaction that is more limited in nature. The proposed alternate redactions are highlighted in this document. The parties submit *Exhibit C* with its more limited redactions to be used only if the Court makes findings of fact and conclusions of law that the Confidential Release must be published in some form. Attached hereto as *Exhibit D* is the more limited redaction of the Confidential Release with the terms highlighted in *Exhibit C* blacked out.

## III. Legal Argument

In its Order denying the motion to seal (D.E. 86), the Court reasoned that any renewed application must comply with the Court's Individual Practice Rules and "must justify the request in light of the standards set forth in Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110 (2d Cir. 2006)." (D.E. 86). The parties hereby renew their motion to seal or to maintain the seal of the settlement agreement, based upon the following arguments.

Under the applicable case law, sealing of documents that the public would otherwise have the right to full access "may be justified only with specific, on-the record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." Lugosch, 435 F.3d at 124. In Lugosch, the Court was presented with the issue of whether documents submitted in the context of a contested summary judgment motion were (1)

"judicial documents"; and (2) whether certain documents filed in support of the motion should be kept under seal. For the reasons set forth herein, the Settlement Agreement is not a "judicial document" and even if it were, there are compelling public policy reasons for sealing the Settlement Agreement (D.E. 83), which would have been sealed were it not for the inadvertent mistake of not selecting the check box to "seal" the filing with the District Court's electronic case filing system.

Indeed, courts within the Second Circuit recognize that "protecting the confidentiality of settlement agreements encourages settlement, which is in the public interest, permitting disclosure would discourage settlements, contrary to public interest." Hasbrouck v. BankAmerica Housing Svcs., 187 F.R.D. 453, 459 (N.D.N.Y. 1999). As the District Court noted in Hasbrouck:

> Although this Court recognizes that the confidential nature of a settlement agreement does not automatically entitle defendants to a protective order, it finds significant the fact that parties to a confidential settlement agreement proceeded with the understanding that the terms of the settlement agreement would remain confidential amounts to a showing of good cause.
>
> [Kent v. N.Y. State Pub. Emples. Fedn, No. 1:17-CV-268 (GTS/CFH), 2019 U.S. Dist. LEXIS 18719 (N.D.N.Y. Feb. 5, 2019)].

The Settlement Agreement did not admit liability. It specifically states:

> *No Admission of Liability*. This Settlement Agreement does not constitute an admission by Defendant or any related entities, of any of the matters alleged in the Action or any violation of federal, state or local law, ordinance or regulation, or any violation of any policies or procedures, or any liability or wrongdoing whatsoever. Neither this Settlement Agreement, nor anything in this Settlement Agreement, shall be construed to be or shall be admissible in any proceedings as evidence of liability or wrongdoing by Central Garden or any of its related entities. This Settlement Agreement may be introduced, however, in any proceeding to enforce this Settlement Agreement. Such introduction shall be pursuant to an order protecting its confidentiality.

Settlement Agreement at para. 8. The Settlement Agreement also denies all allegations of the Complaint and notes that it is only entered into to "avoid the risks and expenses attendant to further litigation." The Settlement Agreement specifically states:

> WHEREAS, the Defendant denies all of these allegations and claims brought by Plaintiff;
>
> WHEREAS, the Parties seek to resolve all claims and disputes concerning the Action;
>
> WHEREAS, each of the Parties desire to avoid the risks and expenses attendant to further litigation and to settle the Action, completely and permanently, and to settle and resolve any and all claims (asserted and unasserted), disputes, issues or matters that exist between them that have, or could have, been raised in the Action

> concerning the Services (the "**Settled Claims**"), and has determined that it is desirable and beneficial to compromise and to settle said disputes and claims in the manner and upon the terms and conditions set forth in full below….

Settlement Agreement at p. 1. The parties always intended that the Settlement Agreement remain confidential. The parties stated:

> *Confidentiality*. Except as compelled by applicable law, the Parties agree that the existence of this Agreement and all of the terms contained herein, including but not limited to the amount of the Settlement Payment and any other consideration, are and shall be treated as confidential and shall not be disclosed to any third party. Plaintiff and its attorneys of record shall treat, and agree to cause Plaintiff's employees, financial advisors, accountants, and agents to treat, the terms of the this Agreement as confidential and shall not, directly or indirectly, through counsel or otherwise, affirmatively publicize, advertise, discuss, or promote in any news, communication, press release, media, or other public forum, including but not limited to newspapers, magazines, radio, television, e-mail, electronic media, digital advertising, social media applications, websites, webinars, or live presentation, the terms and conditions of this Settlement Agreement or the Action. Upon request, Defendant shall supply a neutral employment reference for Plaintiff, but shall continue to maintain confidentiality at all times when so doing.
>
> [(Confidential Release, at para. 6).]

The parties would not have been able to reach a settlement without the agreement as to confidentiality.

The parties to the Confidential Release did not require approval of the Court to enter into the settlement, and the Confidential Release was not used or considered by the Court in making any judgment on the merits or in making any rulings that contributed to the outcome of the case. Its filing was merely an error that Plaintiff's counsel, with the consent and support of defendant NYC Madison, now seeks to rectify.

The Confidential Release is not a judicial document that is presumed to be available to the public. As stated in U.S. v. Amodeo:

> We think that the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access. We think that the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document.
>
> [44 F.3d 141, 144 (2d Cir. 1995)].

The Confidential Release was not relevant to the performance of any judicial function and was not used in the judicial process. The Settlement Agreement was entered into for the purpose of avoiding the need and risks of the judicial process. Since it is not a judicial document, there is no presumption of public access to the Confidential Release. The Court should seal or maintain the seal of the Confidential Release as it is not a judicial document that the public has an interest in

accessing.

Even if the Confidential Release was a judicial document used by the Court in the judicial process to make a ruling or a decision, which the parties dispute, the parties have good reasons to seal the Settlement Agreement, which reasons outweigh any presumption favoring public access. Although there is a presumption favoring access to judicial records, the fact that a document is a judicial record does not mean that access to it cannot be restricted. U.S. v Amadeo, 44 F.3d at 146. It is uncontested that the right to inspect and copy judicial records is not absolute, and access has been denied where court files might have become a vehicle for improper purposes. Id. Where the parties have entered into a settlement of a disputed claim to avoid the expense and uncertainty of litigation, as in this case, the revealing of the Settlement Agreement has no good public purpose and might result in its misuse for improper purposes. The case would not have been settled if the settlement had not been confidential. There is no public interest in knowing the terms of a settlement of disputed claims as there has not been any adjudication on the merits, and publicly revealing the terms of such a settlement will have a chilling effect on settlement discussions in this and other cases.

The decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case. Ultimately, the task of the courts is to weigh the interests advanced by the parties in light of the public interest and the duty of the courts. U.S. v. Amodeo, 44 F.3d at 146. Where, as here, the Court was not asked to rule on the merits of case, and the parties decided to settle because of the uncertainty and cost of litigation, there is little to no interest of the public to know the terms of the settlement, but the parties have a compelling interest to maintain the confidentiality of a settlement that could be misused by others to unfairly impact badly on the parties.

Settlement documents can be sealed because of, inter alia, the court's responsibility to encourage and facilitate settlements. Glen Falls Newspapers, Inc., 160 F.2d 853, 857 (2d Cir. 1998). The parties in the present case, and any parties in future cases, will be greatly reluctant to settle disputed cases if their settlements are exposed to great publicity. Settlements of disputed cases, without any adjudications by the Court, are of little public interest as they do not help in monitoring the activity of the courts, and these settlements may be misinterpreted and misused by the public.

As stated in Pullman v. Alpha Media Publ'g, Inc., 624 Fed. App'x 774; 2015 U.S. App. LEXIS 17026 (2d Cir. 2015):

> Though there is a common law presumptive right of access to judicial documents, United States v. Erie Cty., N.Y., 763 F.3d 235, 239 (2d Cir. 2014), a court considers the weight to be given to this presumption in light of "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995). In deciding whether to seal a judicial document, we have held that "access to settlement discussions and documents has no value to those monitoring the exercise of Article III judicial power by the federal courts." United States v. Glens Falls Newspapers, Inc., 160 F.3d 853, 857 (2d Cir. 1998). The "presumption of access to settlement negotiations . . . is negligible to nonexistent." Id. at 858.

[Pullman, 624 Fed. App'x 774; 2015 U.S. App. LEXIS 17026 at *7].

There is no alleged need to monitor the judicial power of this Court, as the Court took no part in the settlement negotiations or in the Confidential Release, and the Settlement Agreement was not considered or used by the Court in exercising any judicial power. The interest of the public in this settlement of disputed claims, which did not require any decision or ruling of this court, is largely, if not completely, nonexistent.

As further stated in Pullman:

> The district court did not abuse its discretion in sealing the October 2013 settlement conference transcript. The court did not rely on that transcript in deciding subsequent motions to enforce the settlement agreement. It therefore played no role in the court's exercise of judicial power, and there is less of a public interest in access to the document.

[Pullman, 24 Fed. App'x 774; 2015 U.S. App. LEXIS 17026 at *8].

The Court in the present case did not rely upon the Settlement Agreement in deciding any motions or in rendering any rulings as to the merits of the case, and the Settlement Agreement played no role in the Court's exercise of judicial power, so there is little to no public interest in accessing the Settlement Agreement.

In Gambale v. Deutsche Bank Ag., 377 F.3d 133 (2nd Cir. 2004), the settlement agreement contained no admission of liability (as is the same in the present case) and the parties argued that disclosure would deter settlement. Gambale, 377 F.3d at 136. Although that case had some sealed documents that had been relied upon by the Court to rule on a motion for summary judgment which thereby made them judicial documents, unlike the present case where the Confidential Release was not relied upon by this Court and is therefore not a judicial document, the Court still held that the amount of the settlement should remain confidential. The Court in Gamble stated:

> The amount paid by the Bank to Gambale in connection with the settlement of her lawsuit stands on starkly different footing. That amount is set forth in settlement documents that were entered into on a confidential basis between the parties and are not themselves part of the court record. There is no established presumption of access of which we have been made aware with respect to the information contained in them. Cf. United States v. Glens Falls Newspapers, Inc., 160 F.3d 853, 857 (2d Cir.1998) (holding that there is no presumptive right of access to settlement discussions and documents).... [T]here may well be valid reasons in this and other cases terminated by settlement for maintaining the amount of settlement in confidence when the settlement itself was conditioned on confidentiality and when the settlement documents … were not the basis for the court's adjudication. If nothing else, honoring the parties' express wish for confidentiality may facilitate settlement, which courts are bound to encourage. See Glens Falls Newspapers, Inc., 160 F.3d at 857 (approving the sealing of settlement documents and drafts because of, inter alia, the court's responsibility to encourage and facilitate settlements).

[Gambale, 377 F.3d at 143].

Similarly, this Court in the present case should encourage and facilitate settlements by honoring the desire of the parties to maintain confidentiality. As Gamble further stated:

> We think, however, that the presumption [of public access], such as it was, was a weak one under these circumstances: The amount of the settlement was confidential, the parties articulated the reasons for such confidentiality, and the amount made its way into the transcript only in response to the court's apparently casual questioning of counsel in the course of proceedings addressing the settlement, not the adjudication, of litigation. Without some further showing of public interest in the disclosure of the settlement amount, the Bank's reasons for maintaining the confidentiality easily overcome the markedly weak presumption of access here. We think that it would therefore be an abuse of discretion for the court to unseal the May 23, 2003, transcript, unless all confidential information (including references, direct and indirect, to confidential information) is redacted from it…. We remand the case to the district court for it to order the transcript, under these conditions, to remain under seal.

[Gambale, 377 F.3d at 143-144].

The Court in the present case has not used the Settlement Agreement in any adjudication. There is no showing of public interest in the disclosure of this settlement of a disputed claim. The public cannot monitor the judicial process where there was no judicial role to monitor. The parties seek confidentiality because of obvious reasons, such as the public's misinterpretation of the settlement as an admission of guilt, or such as encouragement to others to file other lawsuits to obtain settlements that are entered into to avoid litigation. This case would not have been settled if the Settlement Agreement could not be held to be confidential.

This Court's Individual Practice Rules state:

> To be approved, any redaction or sealing of a court filing must be narrowly tailored to serve whatever purpose justifies the redaction or sealing and must be otherwise consistent with the presumption in favor of public access to judicial documents. See, e.g., Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-20 (2d Cir. 2006). In general, the parties' consent or the fact that information is subject to a confidentiality agreement between litigants is not, by itself, a valid basis to overcome the presumption in favor of public access to judicial documents. See, e.g., In re Gen. Motors LLC Ignition Switch Litig., No. 14-MD-2543(JMF), 2015 WL 4750774, at *4 (S.D.N.Y. Aug. 11, 2015).

[Individual Practice Rule A.5(b)(ii)].

The parties have explained reasons for sealing the Confidential Release that go well beyond the mere fact that the parties agreed to confidentiality. Not only is this Confidential Release not a judicial document as it was not used by the Court in any decision-making, but there is also no significant reason for the public to have access and the parties may well be harmed by the publication of a settlement of disputed claims. The parties could well suffer unwarranted

reputational injury and their right to privacy will be violated.

Lugosch is distinguishable from the present case, and therefore the parties have cited to other relevant cases above. Lugosch dealt with documents under seal that were used in connection with a motion for summary judgment, which thereby arguably made them "judicial documents." In contrast, the Settlement Agreement in the present case was not used or considered by the Court in any motion or ruling, and, therefore, the Settlement Agreement is not a judicial document subject to public access. As described above, settlement documents have no value to those monitoring the exercise of Article III judicial power by the federal courts, and the presumption of access to settlement documents is negligible to nonexistent. Also, in Lugosch, newspapers were seeking public access (motion to intervene) under both the common law and the First Amendment, but there is no similar entity or person seeking public access to the present case's Settlement Agreement and there is no asserted First Amendment right to this document. If the Settlement Agreement was a judicial document, then the parties rely upon their arguments as previously stated, and the parties additionally address the Lugosch standards in the following paragraph.

The Second Circuit described the reason behind the presumption of public access articulated in Lugosch as follows:

> The presumption of access is based on the need for federal courts, although independent — indeed, particularly because they are independent — to have a measure of accountability and for the public to have confidence in the administration of justice. Federal courts exercise powers under Article III that impact upon virtually all citizens, but judges, once nominated and confirmed, serve for life unless impeached through a process that is politically and practically inconvenient to invoke. Although courts have a number of internal checks, such as appellate review by multi-judge tribunals, professional and public monitoring is an essential feature of democratic control. Monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior. Without monitoring, moreover, the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings. Such monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions.

[Lugosch, 435 F.3d at 119].

As previously described, there is no basis for monitoring of the Court in the present case where there was no consideration or ruling as to the Settlement Agreement.

> Once the court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." Amodeo II, 71 F.3d at 1049. Page 120 Finally, after determining the weight of the presumption of access, the court must

> "balance competing considerations against it." Id. at 1050. Such countervailing factors include but are not limited to "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure." Id
>
> [Lugosch, 435 F.3d at 119-120].

Although the Confidential Release is not a judicial document, it also has no value to anyone monitoring the Court because the Court had no role in and did not use the Settlement Agreement in the exercise of judicial powers. Furthermore, publicizing the settlement of disputed claims risks impairment of judicial efficiency in that the mediation process will largely become ineffective. Also, the parties in the present case have significant privacy interests in not publicizing their settlement of disputed claims.

    The parties have already filed the Confidential Release under seal with the Court, and therefore have essentially complied with the requirement that the "proposed sealed document be contemporaneously filed under seal." Individual Practice Rule A.5(b)(ii).

    The parties assert that the Confidential Release is not a judicial document that is subject to public access or, even if it is a judicial document, the parties believe the entire Confidential Release should be sealed because there is no significant public interest as comparted to the significant interest in promoting settlements, and further because sealing the Confidential Release would prevent a misuse or misinterpretation by the public. However, if the Court believes the request to seal must be more narrowly tailored, the parties propose that paragraph one (1) of the Confidential Release be redacted to remove the precise terms of the settlement. (*See Ex. D* attached).

    The parties hereby request that the Confidential Release (D.E. 83) be permanently sealed in its entirety or, if the Court requires a more narrow tailoring of the sealing, the parties request that the Settlement Agreement be redacted to exclude paragraph one (1) as indicated in *Exhibit D*. We thank Your Honor for your attention to this request. We also request that if the Court agrees to a seal, that these exhibits (Ex. A to D), which are filed per Court Rules, are also sealed in addition to D.E. 83. Thank you.

The Court has reviewed the foregoing request to seal in its entirety the settlement agreement filed with the Court for enforcement purposes, or, alternatively, to approve limited redactions thereto. The Court finds that, because the parties have moved the Court to retain jurisdiction over the agreement for enforcement purposes, the agreement is a judicial document to which a public right of access attaches. See Gambale v. Deutsche Bank AG, 377 F.3d 133, 143 (2d Cir. 2004). The Court further finds that the proposed limited redactions of provisions regarding consideration for settlement are sufficiently tailored to balance the presumption of public access in the agreement against the values cited by the parties, i.e., facilitation of settlement agreements, potentially unwarranted reputational injury, and the parties' interest in privacy. The request for redactions as proposed in Exhibit D, docket entry no. 91, is therefore granted, and the request for sealing of the agreement in its entirety is denied. The Clerk of Court is respectfully directed to maintain under seal the unredacted settlement agreement in its entirety (docket entry nos. 83, 88, and 90), and to unseal docket entry nos. 89 (full text of agreement redacted) and 91(agreement with limited redactions approved by the Court).
SO ORDERED
/s/ Laura Taylor Swain, Chief USDJ, 12/18/2023

Respectfully submitted,

By:    */s/ Gennady Litvin , Esq.*
517 Brighton Beach Ave., 2nd Floor
Brooklyn, New York 11235
Tel: 718-504-6090

Consenting to joint letter motion,

By:    */s/ Paul D. Werner, Esq.*
212 Carnegie Center, Suite 202
Princeton, New Jersey 08540