UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

LEGAL RECOVERY ASSOCIATES, LLC,                    22-cv-1778 (ER)(BCM)

             Plaintiff,

    -against-                                            **STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1**

BRENES LAW GROUP, P.C. et al.,

             Defendants.
----------------------------------------------------------x

LEGAL RECOVERY ASSOCIATES, LLC,

             Plaintiff,

    -against-                                            23-cv-2446 (ER)(BCM)

BRENES LAW GROUP, P.C.,

             Defendant.
----------------------------------------------------------x

CONSOLIDATED CASES

----------------------------------------------------------x

        1.     The following chart summarizes the eight promissory notes (the "Notes") made by Brenes Law Group, P.C. ("BLG") and given to Legal Recovery Associates, LLC ("LRA") to memorialize BLG's obligation to repay loans extended to it by LRA:

| Note | Note Date | Principal | Citation | Exhibit[1] |
|------|-----------|-----------|----------|---------|
| **Note 1** | 7/8/19 | $1,100,000 | BLG's Response to LRA's Request for Admissions. Ex. 11. | Ex. 1 |
| **Note 2** | 9/12/19 | $500,000 | *Id.* | Ex. 2 |
| **Note 3** | 12/9/19 | $500,000 | Second-Filed Action Complaint (ECF 52) ¶ 8 and Answer (ECF 54) ¶ 8 | Ex. 3 |
| **Note 4** | 3/5/20 | $250,000 | *Id.* | Ex. 4 |
| **Note 5** | 6/5/20 | $200,000 | *Id.* | Ex. 5 |
| **Note 6** | 8/6/20 | $150,000 | *Id.* | Ex. 6 |

---

[1] Unless otherwise stated, the exhibits cited in this Statement of Material Facts are annexed to the accompanying Declaration of Andrew T. Solomon, dated January 16, 2024 and referred to as "Ex. __."

| | | | | | |
|---|---|---|---|---|---|
| **Note 7** | 8/31/20 | $150,000 | *Id.* | | Ex. 7 |
| **Note 8** | 10/13/20 | $150,000 | *Id.* | | Ex. 8 |
| | **Total** | **$3,000,000** | | | |

Defendants Response To ¶ 1: Admitted.

2.      Troy Brenes personally guaranteed Note 1 pursuant to a Guarantee Agreement, dated as of July 8, 2019 (the "Guarantee Agreement"). Verified Complaint (ECF 1-1) ¶ 9 and Exhibit C; Ex. 9 (the Guarantee Agreement); Ex. 10 (LRA RFA No. 1(c)); Ex. 11 (BLG's invalid response to RFA 1(c)).

Defendants Response To ¶ 2: Admitted.

3.      BLG was required to make payments under the Notes on the "Payment Date," defined as when BLG "receive[d] payment of any award in respect of all product liability litigations" (defined as the "Case") it brought on behalf of its clients. Exs. 1 to 8.

Defendants Response To ¶ 3: Denied in Part. The Notes required payment of all sums, inclusive of principal and interest, on all notes when Brenes Law Group, P.C. (BLG) received "payment of any award in respect of all product liability litigations represented by BLG. Exs. 1 to 8 to Andrew Solomon Dep'n (Solomon Dep'n).

4.      Between November 2020 and April 2023, BLG received more than $2.8 million in proceeds from the settlement of a number of the Cases. *See* BLG's Settlement Reports to CAL (the "Settlement Reports") at Ex. 14 (Supplemental Production000159-88). But BLG made no payments to LRA. Lui Decl. ¶ 2, 9; Berger Decl. ¶ 18.

Defendants Response To ¶ 4: Denied in part. Defendants do not deem recovery of case costs an "award" as mentioned in the Notes nor a proceeds. Recovery of case costs are typically deemed a recovery of a loan advanced on the case. As such the figure cited by LRA is incorrect because it is inclusive of case costs. However, Defendants admit the Supplemental

Production000159-88 do contain a section listing attorneys fees recovered during this time period.

5.        In 2021, BLG paid another lender, California Attorney Lending II, LLC ("CAL"), the cumulative amount of $303,563.86 in principal payments and $329,286.66 in interest and fee payments. Ex. 12 (Plaintiff's Deposition Ex. No. 16). In 2022, BLG paid CAL cumulatively $2,319,351.25 in principal payments and $888,732.81 in interest and fee payments. Ex. 13 (Plaintiff's Deposition Ex. No. 17).

Defendants Response To ¶ 5: Denied. The cited document (Plaintiff's Deposition) does not appear to exist and therefore does not support the alleged facts.

6.        As early as November 2020, BLG collected fees of $59,000 and costs of $4,794.53 on a products liability case, enabling it to pay $31,897.27 (or 50%) to CAL. Ex. 14 at Supplemental Production000159. Thereafter, BLG generated substantial proceeds on products liability cases in 2021-2023. *Id.* at Supplemental Production000160-180. In addition to the amounts shown on the Settlement Reports, BLG also paid CAL a total of $1,500,000 from a $3,000,000 settlement it received in August 2022 from one of its product liability defendants. Ex. 15 (Plaintiff's Deposition Ex. No. 25); Ex. 13 (Plaintiff's Deposition Ex. No. 17) at CAL_001869.

Defendants Response To ¶ 6: Admitted in part. Admitted as to fact claim one, except the fund were made available in December 2020. The second fact claim is a subjective opinion statement not a statement of fact. As such, Defendants object to the second sentence as not being a factual statement Plaintiff can admit or deny. As to fact claim three, denied. Defendant cannot determine what "Plaintiff's" deposition is being referred to and it was not produced to Defendants with this motion.

7.    The Settlement Reports show that from November 2020 to April 2023, BLG received fees and costs on settlements of products liability cases. Ex. 14 (Supplemental Production000159-88). The reports contained five columns: Case Name, Gross Settlement, Gross Fee to BLG, Case Costs, and Payment to Counsel Financial. The "Gross Fee to BLG" plus "Case Costs" represents the fees and costs received by BLG from the settlement proceeds. The Payment to Counsel Financial represented 50% of the sum of the Gross Fee to BLG and the Case Costs. The following chart summarizes the data presented in the Settlement Reports produced by BLG by month:

| Report Date | Sum of Gross Settlements | Sum of Gross Fees to BLG | Sum of Case Costs | Sum of Total to BLG | Sum of Payments to Counsel Financial |
|---|---|---|---|---|---|
| 20-Nov | $250,000.00 | $59,000.00 | $4,794.53 | $63,794.53 | $31,897.27 |
| 21-Feb | $50,000.00 | $16,000.00 | $23,996.70 | $39,996.70 | $19,998.35 |
| 21-May | $60,000.00 | $9,600.00 | $7,173.45 | $16,773.45 | $8,386.73 |
| 21-Jun | $250,000.00 | $75,000.00 | $0.00 | $75,000.00 | $37,500.00 |
| 21-Jul | $40,000.00 | $345.06 | $3,298.11 | $3,643.17 | $1,821.59 |
| 21-Aug | $850,000.00 | $141,345.00 | $26,890.23 | $168,235.23 | $84,117.62 |
| 21-Nov | $779,500.00 | $127,541.00 | $13,102.10 | $140,643.10 | $70,321.56 |
| 21-Dec | $200,000.00 | $12,800.00 | $1,969.12 | $14,769.12 | $7,384.56 |
| 22-Mar | $1,009,500.00 | $216,667.74 | $24,039.15 | $240,706.89 | $120,353.45 |
| 22-May | $2,052,939.74 | $277,809.53 | $22,577.69 | $300,387.22 | $150,193.61 |
| 22-Jun | $300,000.00 | $72,000.00 | $13,774.82 | $85,774.82 | $42,887.41 |
| 22-Jul | $4,510,833.15 | $0.00 | $130,367.53 | $130,367.53 | $65,184.06 |
| 22-Aug | $458,551.41 | $7,100.20 | $19,601.90 | $26,702.10 | $13,351.06 |
| 22-Sep | $1,123,008.01 | $22,387.75 | $26,167.80 | $48,555.55 | $24,277.79 |
| 22-Oct | $3,094,596.40 | $39,871.01 | $63,636.19 | $103,507.20 | $51,753.67 |
| 22-Nov | $2,146,063.38 | $0.00 | $63,653.73 | $63,653.73 | $31,849.37 |
| 22-Dec | $3,135,430.95 | $0.00 | $61,937.70 | $61,937.70 | $30,968.96 |
| 23-Jan | $1,524,122.50 | $243,600.00 | $66,239.97 | $309,839.97 | $154,920.00 |
| 23-Feb | $3,131,940.02 | $228,139.71 | $59,892.15 | $288,031.86 | $144,016.02 |
| 23-Mar | $3,770,600.17 | $421,834.82 | $121,132.69 | $542,967.51 | $271,483.84 |
| 23-Apr | $1,364,141.06 | $49,828.20 | $30,842.47 | $80,670.67 | $40,335.38 |
| **Grand Total** | **$30,101,226.79** | **$2,020,870.02** | **$785,088.03** | **$2,805,958.05** | **$1,403,002.30** |

Defendants Response To ¶ 7: Admitted.

4

8.      On October 27, 2020, BLG signed and delivered a Revolving Promissory Note to CAL in the amount of $5,000,000 (the "CAL Note"). Ex. 16 (Plaintiff's Deposition Ex. No. 11) at Supplemental Production000005-20. Under the CAL Note, for the first 24 months, BLG was required to pay accrued interest monthly and to make mandatory prepayments of principal equal to 50% of Net Fees and Expenses, defined as legal fees and expenses paid to BLG after it paid all co-counsel fees, referral fees, and the like. *Id.* at Supplemental Production000007.

Defendants Response To ¶ 8: Admitted at to both fact claims. However, Defendants note they do not know what is being cited as Plaintff's Deposition Ex. No. 11.

9.      As collateral for the CAL Note, BLG executed a Security Agreement. Ex. 16 (Plaintiff's Deposition Ex. No. 11) at Supplemental Production000034-44; Ex. 37 (Plaintiff's Deposition Ex. No. 20) (Brenes Family Trust Security Agreement Joinder). Under the Security Agreement, CAL was granted a first lien security interest in the "Collateral," which was defined in Section 1(b) as covering all of BLG's assets, and specifically included:

> any right to payment of any Debtor for client representation or referral (whether such right to payment is on a contingent, hourly, fixed fee or other basis) and for Costs and Expenses (as defined in the Note), whether or not yet earned by performance, and the proceeds thereof, including Net Fees and Expenses (as defined in the Note).

Ex. 16 (Plaintiff's Deposition Ex. No. 11) at Supplemental Production000034.

Defendants Response To ¶ 9: Objection. The cited evidence does not support the statement. Defendants cannot tell what is being cited as Plaintiff's Deposition. Moreover, the Exhibit was not produced to Defendants as part of the motion package. However, Defendants do not dispute that CAL was granted a security interest in BLG's assets and that Troy Brenes (Brenes) granted a personal guarantee to CAL.

10.     CAL perfected its security interest by filing two Form UCC-1s with the California Secretary of State. Exs. 17 and 18 (https://bizfileonline.sos.ca.gov/search/ucc, accessed on December 31, 2023, searched Brenes Law Group, P.C. returned UCC filing on October 31, 2020, as amended on August 17, 2023).

Defendants Response To ¶ 10: Defendants do not have personal knowledge to admit or deny this independently. The Exhibits have also not been properly authenticated by declaration such that Defendants could admit or deny the request.

11.     On July 25, 2020, Troy Brenes informed LRA that he had "arranged another line of credit and as part of those terms BLG has to pay off the promissory notes BLG took from LRA." Ex. 19 at LRA000067. The email attached a form of payoff letter that CAL had prepared for LRA to sign. Ex. 19 at LRA000068.

Defendants Response To ¶ 11: Admitted.

12.     On August 4, 2020, George Lui of LRA provided Troy Brenes with an interest spreadsheet in native Excel format that showed the calculation of the full payoff amount as of any date selected by BLG. Ex. 20 (Plaintiff's Deposition Ex. No. 1).

Defendants Response To ¶ 12: Denied in part. First Defendants cannot tell what is being referred to as Plaintiff's Deposition and Ex. 1 to the Solomon Deposition was not provided to Defendants with the Motion papers. However, Defendants admit that on August 4, 2020, George Lui (Lui) provided an excel spreadsheet via email that listed Notes 1 through 5 and payoff amount for those loans.

13.     BLG forwarded Lui's August 4, 2020 payoff worksheet to CAL. Ex. 21 (Plaintiff's Deposition Ex. No. 24) at CAL_002232; Ex. 22 (Plaintiff's Deposition Ex. No. 21).

<u>Defendants Response To ¶ 13</u>: Admitted. (There is no Plaintiff's Deposition that Defendants are aware of but it appears LRA is relying on Ex. 21 from the Solomon Deposition).

14.    CAL acknowledged in an August 27, 2020 email that "we have a payoff amount." Ex. 23 (Plaintiff's Deposition Ex. No. 24) at CAL_002230.

<u>Defendants Response To ¶ 14</u>: Denied. The cited document is an email dates August 28, 2020 from CAL to LRA requesting that LRA complete a Payoff letter, provide wire directions for payment of all debts, and noting that CAL used the payoff amount provide by Troy Brenes. However, the payoff information CAL had only consisted of the August 4, 2020 Excel from Lui so it was not an accurate payoff amount as it did not include the impact of Note 6. See, Separate Statement of Fact ("SOF") 1 and 13, and Exs. 6 to Solomon Decl.'

15.    On August 28, 2020, Megan Payne of CAL provided LRA with a proposed payoff agreement, which included a payoff calculation as of August 31, 2020, which she calculated using the spreadsheet provided by George Lui on August 4, 2020. Ex. 24 (Plaintiff's Deposition Ex. No. 4); Ex. 25 (Plaintiff's Deposition Ex. No. 5).

<u>Defendants' Response To ¶ 15:</u> Admitted in part. Notes 6 and 7 were entered on August 6 and August 31, 2020, so the excel spreadsheet from Lui dated August 4 would not have allowed for an accurate payoff amount. See, Exs. 24, 25 and 32 to Solomon Decl. Exhibit 32 contains an attachment dated January 6, 2021 to reflect LRA's much delayed statement of amounts due under the Notes. CAL's projected payoff amount for August 31, 2020 was estimated at $2,956,024.31, where LRA's amount provided on January 6, 2021 show an entry for August 31, 2020 as 3,107,847.22 (Ex. 32 Excel Attachment at line 430).

16.    In September and October 2020, LRA and BLG negotiated and exchanged drafts of a payoff letter.  *See*, *e.g.*, Ex. 26 (LRA000103) ("September __, 2020") and Ex. 27

(LRA000138) (October __, 2020"). At the same time, LRA tried to confirm with BLG the status of BLG's co-counsel relationship with its affiliate, Lawrence Litigation Group, LLP ("Lawrence"), including an acknowledgment of the marketing and funding amounts that Lawrence had supplied to BLG. Berger Decl. ¶¶ 7-10. BLG was either evasive or non-responsive to these issues. *Id.* at ¶ 9.

Defendants' Response To ¶ 16: Denied. Brenes Decl. ¶ 12-28, Exs. A-F.

LRA did not "negotiate" the terms of a payoff letter. Defendants and CAL made repeated requests to have LRA provide a Payoff letter that confirmed the amount owed, the per diem amount accruing daily, wiring instructions, and confirmation that payment of amount identified by LRA would resolve all debts BLG owed LRA under the Notes. However, LRA refused to provide a letter and refused to ever provide any draft language until October 12, 2020. Then on October 12, LRA simply persisted in again improperly demanding that the Payoff Letter include language forcing Defendants to give up its rights to challenge that another law firm, Lawrence Litigation Group (LLG), was in compliance with a separate and unrelated Attorney Association Agreement between BLG and LLG. LRA ignored numerous communications from both Defendants and CAL.

17.    By email dated October 12, 2020, LRA proposed additional language to the payoff letter that protected the contractual interests of its affiliate Lawrence:

> Further, nothing contained herein shall constitute an amendment or modification of any terms, covenants or conditions of that certain Second Amended Attorney Association Agreement between Borrower, and any successors and/or assigns, and Lawrence Litigation Group, LP dated March 27, 2017, which is an agreement that is valid, enforceable, in good standing, and not affected by the payoff of the Loans.

Ex. 28 (LRA000240).

Defendants' Response To ¶ 17: Admitted.

8

18.    BLG secretly informed CAL that LRA was "playing games" and "trying to use the letter to hold me hostage" and described it as "utter bullshit." Ex. 29 (Plaintiff's Deposition Ex. No. 26).

Defendants Response To ¶ 18: Denied in part. Defendants did not "secretly" raise its concerns to CAL. These same concerns had been raised on multiple occasions to Howard Berger on behalf of LRA, including as early as July 28, 2020. Brenes Decl. ¶ 12-28, Exs. A-F.

19.    CAL informed BLG that no payoff letter would be required. So late on October 28, 2020, Troy Brenes emailed LRA informing it that the payoff letter was not needed and requesting an updated payoff amount and account information for payment. Ex. 30 (Plaintiff's Deposition Ex. No. 7); Berger Decl. ¶ 11. LRA replied that it wanted to discuss the Lawrence issues and invited Troy Brenes to call the next day to discuss. Ex. 30 (Plaintiff's Deposition Ex. No. 7); Berger Decl. ¶ 12. Troy Brenes did not call. Berger Decl. ¶ 13.

Defendants Response To ¶ 19: Denied in Part. As, BLG has been doing since July 28, 2020, it yet again explained to Berger and LRA that their continuing refusal to disclose payment information was unjustified and any disputes between BLG and LLG were separate and nothing to do with BLG's right to repay the Notes. Ex. 30 to Solomon Decl.

20.    The next documented communication from Troy Brenes to LRA was on January 5, 2021, when he wrote:

> We have made several requests for information necessary for Brenes Law Group, P.C. to payoff all promissory notes from LRA. This includes the amount owed and the account information for us to wire the funds. We again ask that you please send this information in writing immediately.

Ex. 31 at LRA000271; Berger Decl. ¶ 14.

Defendants Response To ¶ 20: Admitted.

21.    On January 6, 2021, George Lui of LRA provided Troy Brenes of BLG with an updated payoff spreadsheet in Excel format, a payoff calculation as of January 6, 2021, and wire instructions. Ex. 32 (Plaintiff's Deposition Ex. No. 2); Berger Decl. ¶ 16; Lui Decl. ¶ 4.

Defendants Response To ¶ 21: Admitted in part. This was the first time LRA had ever provided wiring information and information indicating the amounts due on all Notes. Ex. 32 to Solomon Decl.', Brenes Decl.' ¶ 7.

22.    On January 15, 2021, Lui sent a follow up email (attaching his prior email of January 6, 2021) to Troy Brenes stating:

> I just want to confirm you received the payoff and wire
> instructions below. When should we expect to receive the same?
> Thanks and I hope you're well.

Ex. 33 (LRA000003); Lui Decl. ¶ 4.

Defendants' Response To ¶ 22: Admitted.

23.    Troy Brenes did not respond to either email, and BLG did not make any payment in response. Lui Decl. ¶ 5; Berger Decl. ¶ 18.

Defendants' Response To ¶ 23: Admitted.

24.    On January 21, 2022, LRA issued a default notice and demand for payment on Notes 1 and 2. Ex. 34 (LRA000007-10). In the notice, LRA informed BLG that the security interest it gave to a third-party lender, later revealed to be CAL, was an Event of Default under Notes 1 and 2. *Id.* at LRA000008. LRA included wire instructions. *Id.* at LRA000010.

Defendants' Response To ¶ 24: Admitted.

25.    BLG did not respond to the January 21, 2022 default notice and demand for acceleration on Notes 1 and 2 or make any payment. Lui Decl. ¶ 7.

Defendants' Response To ¶ 25: Admitted.

26.    On January 21, 2022, in connection with the terms of Notes 3-8, LRA transmitted a letter to BLG requesting information about case collections on its product liability cases. Ex. 35. In it, LRA informed BLG that it believed that BLG had received payments on its product liability cases, which would trigger a payment date, and invited BLG to provide a sworn statement if it was claiming that no payment had been received. *Id.* at LRA000012. LRA included wire instructions. *Id.* at LRA000013.

Defendants' Response To ¶ 26: Admitted.

27.    BLG did not respond to LRA's request for information relating to case collections in connection with Notes 3 to 8. Lui Decl. ¶ 9.

Defendants' Response To ¶ 27: Denied. Brenes Decl. ¶ 6. Defendants further object to the factual claim as no personal knowledge is established for claim that Defendants did not respond as all communications were held between Mr. Solomon and me.

28.    On February 24, 2023, LRA issued a demand letter and notice of acceleration to BLG based on its nonpayment of Notes 3 to 8. Ex. 36 (Second Action ECF 1-8); Lui Decl. ¶ 8. In the letter, LRA described the Notes (date and original principal), asserted that BLG had not made payments on the Payment Date (citing disclosures from BLG's website), noted BLG's refusal to provide any information, and demanded full payment of interest and principal. *Id.*

Defendants' Response To ¶ 28: Admitted.

29.    BLG did not reply to the demand letter and notice of acceleration on Notes 3 to 8 or make any payment. Berger Decl. ¶ 18; Lui Decl. ¶ 9.

Defendants' Response To ¶ 29: Denied. Brenes Decl. ¶ 6. Defendants further object to the factual claim as no personal knowledge is established for claim that Defendants did not respond as all communications were held between Mr. Solomon and me.

30.     BLG has made no payment to LRA on Notes 1 to 8. Berger Decl. ¶ 18; Lui Decl. ¶ 2, 9.

Defendants' Response To ¶ 30: Admitted

31.     In 2020, BLG paid CAL $31,897.27 in principal payments and $55,60.94 in interest and fee payments. Ex. 38 (Plaintiff's Deposition Ex. No. 15).

Defendants' Response To ¶ 31: Admitted.

32.     In 2021, BLG paid CAL cumulatively $303,563.86 in principal payments and $329,286.66 in interest and fee payments. Ex. 12 (Plaintiff's Deposition Ex. No. 16).

33.     Defendants' Response To ¶ 32: Denied. The citations do not support the cited facts are there is no Plaintiff deposition, LRA did not produce the exhibits with the motion package to Defendants, and there is no bates reference Defendants could use to locate the document.

34.     In 2022, BLG paid CAL cumulatively $2,319,351.25 in principal payments and $888,732.81 in interest and fee payments. Ex. 13 (Plaintiff's Deposition Ex. No. 17).

Defendants' Response To ¶ 34: Denied. The citations do not support the cited facts are there is no Plaintiff deposition, LRA did not produce the exhibits with the motion package to Defendants, and there is no bates reference Defendants could use to locate the document.

35.     The 2022 payments by BLG to CAL included three August 2022 payments totaling $1,500,000 that BLG received as part of a settlement with Gore. Ex. 15 (Plaintiff's Deposition Ex. No. 25) at CAL_000018; Ex. 13 (Plaintiff's Deposition Ex. No. 17).

Defendants' Response To ¶ 34: Admitted.

36.     In 2023 (through April 2023), BLG paid CAL cumulatively $2,927,327.95 in principal payments and $1,098,353.93 in interest and fee payments. Ex. 39 (Plaintiff's Deposition Ex. No. 18).

Defendants' Response To ¶ 35: Denied. The citations do not support the cited facts are there is no Plaintiff deposition, LRA did not produce the exhibits with the motion package to Defendants, and there is no bates reference Defendants could use to locate the document.

37.     October 28, 2020 at 4:47 pm, Troy Brenes wrote the following email to Megan Payne at Counsel Financial:

> I have sent 3 follow up emails today requesting that the information be disclosed. Still have not received it. The intent seems to be to hold us hostage by refusing to disclose unless we sign a separate document stating that a separate entity (LLG) is compliant regarding the co-counsel relationship. Obviously, I can bring a declaratory action seeking disclosure of the amount and banking information. In the meantime, however, can Counsel start funding if we set aside the known loan amount into a seperate [sic] account. We can identify it ourselves simply by applying the interest rate to the total amount borrowed.

Ex. 41 (Supplemental Production000001).

Defendants' Response To ¶ 36: Admitted.


38.     In response, Megan Payne sent the following email to Troy Brenes:

> We're willing to fund without paying them off but we would keep a reserve/restricted availability for the amount due to them. Please send me the last statement you have from them so I can get the correct amount Also let me know how much you need for the first draw and use of proceeds.

Ex. 41 (Supplemental Production000002).

Defendants' Response To ¶ 37: Admitted.

39.     On November 3, 2020, Troy Brenes emailed Megan Payne and instructed her to "please hold back or sequester $3,489,280.82 relating to the prior line of credit from Legal Recovery Associates. This amount is sufficient to cover the total amount borrowed as well as all accrued interest." Ex. 42 (Plaintiff's Deposition Ex. No. 22).

<u>Defendants' Response To ¶ 38</u>: Admitted. Although the cited evidence does not appear to support the alleged facts.

40.     On November 6, 2020, CAL and Brenes executed a Closing Statement for the CAL Note. According to the Closing Statement, BLG took an initial principal advance of $250,030 against a total credit limit of $5 million. Ex. 43 (Plaintiff's Deposition Ex. No.

Defendants' Response To ¶ 39: Denied as the cited evidence does not support the factual statement. There is no Plaintiff's deposition and Ex. 43 was not provided to Defendants with the Motion papers.

41.     On closing CAL charged BLG a "Closing Fee" equal to $50,000, calculated based on 1% of total Credit Limit of $5,000,000. Ex. 38 (Plaintiff's Deposition Ex. No. 15) ("11/5/20 Credit Line Fee"); Ex. 16 (Plaintiff's Deposition Ex. No. 11) at Supplemental Production000059 ("Fees and Charges: Borrower will be charged a closing fee equal to 1% of the LOC amount ($50,000) on the date hereof and on the first anniversary of the date hereof").

<u>Defendants' Response To ¶ 44</u>: Admitted.

42.     According to the Fee Disclosure Statement, $34,892.80 of the Closing Fee corresponded to the $3,489,892.80 that BLG calculated as the amount due to LRA and was designated as subjected to "Restricted Availability." Ex. 44 (Supplemental Production000064).

<u>Defendants' Response To ¶ 41</u>: Admitted.

43.    The restriction on the line was not required under the loan agreement with CAL. Ex. 16 (Plaintiff's Deposition Ex. No. 11) at Supplemental Production000010-11 (§ 3(d): CAL had general discretion over advances; § 3(e): limit on borrowing is the "Maximum Amount," which does not include a restriction relating to LRA and is $5 million less reductions under 2(b)(ii), which prohibits reborrowing of Mandatory Prepayment amounts); Ex. 45 (Payne Dep. Tr. 95:8-20).

Defendants' Response To ¶ 42: Denied. Brenes Decl. ¶ 3, Ex. A.

44.    From time to time, from November 2020 to May 2022, BLG drew advances on the CAL line of credit. Ex. 43 (Plaintiff's Deposition Ex. No. 23). The Closing Statement, dated November 6, 2020, shows a total reserve of $3,618,447.49 and subsequent statements show that its components were the "Line Restriction of $3,489,280.82" and the "Interest Reserve of $129,166.67." *Id.* at Supplemental Production000065 and 216-217.

Defendants' Response To ¶ 43: Admitted.

45.    On May 26, 2020, BLG's draw of $150,030 exceeded the availability established in the Fee Disclosure Statement. Ex. 43 at Supplemental Production000192 ("Line Restriction" reduced from $3,489,280.82 to $3,486,024.09 to accommodate advance).

Defendants' Response To ¶ 44: Denied. Ex. 43 to Solomon Decl. (Supplemental Production000065 and 216-217).

46.    For borrowing requests following May 26, 2020, CAL continually accommodated BLG's draw requests by reducing the "Line Restrictions" to make room for the requested advance. Ex. 43 at Supplemental Production000193-211.

Defendants' Response To ¶ 45: Admitted.

47.    In November 2022, contemporaneous with CAL and BLG entering into an amended loan agreement, Ex. 46 (Plaintiff's Deposition Ex. No. 12), the "Line Restriction,"

15

which was never enforced, was eliminated and no longer appeared on Closing Statements. Ex. 43 (Plaintiff's Deposition Ex. No. 23) at Supplemental Production000211, *et seq.*

Defendants' Response To ¶ 46: Denied. The cited evidence does support the claim. There is no Plaintiff's deposition in this case that Defendants ae aware of.

48.    BLG never presented a payment in any form (check, cash, or otherwise) to pay the debt to LRA. Lui Decl. ¶ 9.

Defendants' Response To ¶ 47: Denied in part. Defendants and CAL made repeated request for confirmation of final payment amount of all notes and wiring instructions and stated Defendants were ready, willing and able to pay all debts as soon as this information was provided. Brenes Decl. ¶ 27.

**Defendants' Statement Of Additional Undisputed Facts**

49.    Interest on Notes 1 though 8 accrue at the annual rate of 17.5%. Exs. 1-8 to Solomon Dep'n.

50.    In the event of a default, interest would accrue at the annual default rate of 18%. Exs. 1-8 to Solomon Dep'n.

51.    Notes 1 and 2 include a footnote advising the drafter to "[c]onsider specifying [the] applicable day-count convention for interest accrual." Exs. 1-2 to Solomon Dep'n. The applicable day-count convention is not specified in any of the Notes. Exs. 1-8 to Solomon Dep'n.

52.    Each of the Notes, 1 through 8, provide that BLG will repay LRA the principal and accrued interest on the Payment Date, defined as "the date on which [BLG] receives payment of any award in respect of all product liability litigation, whether as a result of judgment, settlement, or otherwise." Exs. 1-8 to Solomon Dep'n.

53.    The Notes all contain a prepayment clause, permitting BLG to prepay them "either in whole or in part, without any prepayment fee or penalty," so long as the payment is made "in lawful money of the United States of America, which, at the time of payment, is legal tender for the payment of public and private debts therein." Exs. 1-8 to Solomon Dep'n.

54.    In 2016, BLG entered into an Attorney Association Agreement with a lawfirm by the name of Lawrence Litigation Group in 2016, which contemplated that the two law firms would collaboratively pursue certain types of personal injury actions and share the associated fees and costs. Brenes Decl. ¶ 7.

55.    In early 2019, Berger and Goldberg suggested that BLG "shift its line of credit from California Attorney Lending II, Inc (CAL) to a third-party lender to LRA. BLG agreed to do so, which resulted in Notes 1 through 8. LLG ultimately breached the Association Agreement by refusing to contribute its share of the expenses for the personal injury actions the firms were pursuing together. Brenes Decl. ¶ 8.

56.    BLG, concerned that LRA would withhold future funding as way to inhibit BLG from challenging LLG's breach of the Attorney Association Agreement, reached out to its prior lender CAL, to arrange a new line of credit to repay the entire debt owed to LRA," including all accrued interest on Notes 1 through 8. Brenes Decl. ¶ 9.

57.    CAL agreed to fund the loan, including repayment of all amounts owed to LRA under the Notes so long as BLG could obtain a "Payoff Letter" from LRA which confirmed the total amount owed, the per diem amount being accrued daily, wiring instructions, that any UCC filed would be withdrawn, and that all debts owed to LRA pursuant to the Notes would be resolved once the confirmed payment amount was made. Brenes Decl. ¶ 10.

58.     Thus, on July 25, 2020, Troy Brenes emailed Howard Berger and George Lui, both of whom worked for LRA, and indicated that BLG had arranged another line of credit for BLG, which required that all amounts owed under any promissory notes taken by BLG from LRA be repaid. Ex. 19 to Solomon Dep'n.

59.     The July 25, 2020, communication from Troy Brenes to Howard Berger and George Lui also notes that the new loan provider required LRA to complete an attached letter which required identification of the total payoff amount due under the promissory notes, the per diem interest amount that was accruing, wiring instructions, and acknowledgement that any UCC filing based on the promissory notes would released. The attachment to the July 25, 2020 email communication notes that "If you are unable to process this request for any reason, or if you have any questions, please contact Megan Payne at 800-820-4430. Ex. 19 to Solomon Dep'n.

60.     On July 25, 2020, Berger responded that LRA conditioned its willingness to provide the requested information and the request Payoff Letter on BLG agreeing to give concessions regarding the Attorney Association Agreement between BLG and LRA. Brenes Decl. ¶ 11, Ex. B.

61.     BLG immediately responded that the "Payoff letter" only relates to Legal Recovery Associates and the loans BLG took from that entity that BLG could use for any case. The co-counsel arrangement with LLG and LLG's right to reimbursement for contributions are not affected by that letter in any way. There is nothing different from BLG previously had counsel financial as a loan provider. I cannot give away LLG's interest in any cases as LLG is a separate entity than BLG and nothing in that letter suggests otherwise. Brenes Decl. ¶ 11, Ex. B.

62.     While George Lui provide an excel spreadsheet on August 4, 2020 showing the amount LRA alleged it was owed on Notes 1-5, LRA refused to provide the Payoff letter, wiring instructions, or the pre diem charge.

63.     Thereafter, Megan Payne and Steve Mingle (from CAL) and Brenes made numerous efforts, in writing and by phone, to follow up with Howard Berger and George Lui to obtain the Payoff letter and the information necessary to repay all debts owed under the Notes. Brenes Decl. ¶ 17.

64.     On August 28, 2020, Megan Payne requested that LRA complete a revised Payoff letter that incorporated payment information on Notes 1-5 provided by George Lui on August 4, 2020. However, Note 6 was taken on August 6, 2020 rendering the information from Mr. Lui no longer valid. Brenes Decl. ¶ 18, Ex. C; Solomon Decl. Exs. 24, 25.

65.     On August 31, 2020, Megan Payne again requested that LRA complete the Payoff Letter. Brenes Decl., Ex. D.

66.     On September 11, 2020, Steve Mingle from CAL followed up with George Lui from LRA and provided yet another draft payoff letter to try to placate LRA's alleged concerns. Brenes Decl. ¶ 20, Ex. E at p. 2.

67.     On September 21, 2020, Steve Mingle called George Lui to again follow up regarding the Payoff letter. Brenes Decl. ¶ 20, Ex. E at p. 2.

68.     On September 21, 2020, Troy Brenes emailed Howard Berger again confirming the Payoff letter only related to the Notes between BLG and LRA and offering yet another proposed modification to address LRA's alleged concerns. Brenes Decl. ¶ 21, Ex. E at p. 1.

69.     On October 8, 2020, Troy Brenes reached out to Howard Berger yet again with another proposed payoff letter to address LRA's alleged concerns that the Payoff letter could somehow be deemed to reach issues other than repayment of the Notes. Brenes Decl. ¶ 22, Ex. F.

70.     On October 12, 2020, after nearly three months of trying to get LRA to agree to any Payoff Letter or to get any proposal from LRA as to what they actually wanted in the letter, LRA responded with it proposed language which consisted of the following:

> Further, nothing contained herein shall constitute an amendment or modification of any terms, covenants or conditions of that certain Second Amended Attorney Association Agreement between Borrower, and any successors and/or assigns, and Lawrence Litigation Group, LP dated March 27, 2017, which is an agreement that is valid, enforceable, in good standing, and not affected by the payoff of the Loans,"

Brenes Decl. ¶ 23, Ex. F at p. 2.

71.     Despite three months of effort after notifying LRA that the payoff did not and should not mention LLG in anyway whatsoever, LRA continued to insist without any explanation or justification that the Payoff letter had to include language requiring BLG to cede any right to challenge whether a third-party entity was in compliance with a separate agreement. Brenes Decl. ¶ 23, Ex. F at p. 1.

72.     On October 16 and 28, Steve Mingle from CAL requested that LRA provide update payment amount for all notes and wire instructions. Brenes Decl. ¶ 25, Ex. G. In response George Lui alleged LRA was waiting for a call before sending. *Id.*  Troy Brenes immediately responded and requested that the information be provided. *Id.*

73.     As it became apparent that LRA was acting in bad faith to try to prevent BLG from obtaining alternative financing or repaying its debts under the Notes, Brenes and BLG gave up trying to work with LRA and CAL agreed to move forward without a Payoff letter. Brenes Decl. 26.

74.     On October 28, 2020, I notified Howard Berger that the loan with CAL had gone through and that I ready, able and willing to payoff all debts to LRA, I just needed confirmation of all amounts owed under the Notes and wire instructions. Multiple further communications like this occurred. Brenes Decl. ¶ 27.

75.     However, LRA still refused to provide wiring instructions or any confirmation as to the amount owed under the Notes. Brenes Decl. ¶ 28. It was not until January 6, 2020 that LRA finally disclosed this information. Brenes Decl. ¶ 28.

76.     LRA demanded payment of all interest that accrued on the Notes between July 28, 2020 through January 6, 2020 despite having acted to intentionally delay Plaintiff's ability to repay the Notes. Brenes Decl. ¶ 29.

77.     In March 2020, Troy Brenes spoke with Owen Cyrulnik who alleged he was representing the interest of LRA. Brenes Decl. ¶ 30. Troy Brenes indicated was more than happy to repay the loans but that he would not agree to pay the interest that accrued while LRA was intentionally preventing repayment. Brenes Decl. ¶ 30. LRA would not agree to withdraw their demand for repayment of all interest. Brenes Decl. ¶ 30.


Dated: February 9, 2024

                                        /s/ Troy A. Brenes_____
                                        Troy A. Brenes
                                        BRENES LAW GROUP, P.C.
                                        100 Spectrum Center Drive,
                                        Ste. 330
                                        Irvine, California 92618
                                        P: 949.397.9360
                                        tbrenes@breneslawgroup.com