UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
LEGAL RECOVERY ASSOCIATES, LLC,        22-cv-1778 (ER)(BCM)

      Plaintiff,

  -against-

BRENES LAW GROUP, P.C. et al.,

      Defendants.
-----------------------------------------------------------x
LEGAL RECOVERY ASSOCIATES, LLC,        23-cv-2446 (ER)(BCM)

      Plaintiff,

  -against-

BRENES LAW GROUP, P.C.,

      Defendant.
-----------------------------------------------------------x
CONSOLIDATED CASES
-----------------------------------------------------------x


## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT


Dated: February 22, 2024

Solomon Cramer & Summit LLP
25 West 39th Street, 7th Floor
New York, New York 10018
(212) 884-9102

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

I.  INTRODUCTION ..................................................................................................................1

II. ARGUMENT..........................................................................................................................1

    A.  BLG Breached the Notes ............................................................................................1

    B.  BLG Adduced No Evidence in Support of its Second Defense and First Counterclaim that LRA Breached the Implied Covenant ..........................................3

        1.  BLG Admits That it Had the Payoff Figure..................................................3

        2.  No Evidence of Bad Faith..............................................................................3

        3.  BLG Suffered No Damages ..........................................................................5

    C.  Defendants' Other Affirmative Defenses Are Duplicative and Otherwise Without Merit..............................................................................................................7

    D.  Defendants' Eighth Defense of Tender is Based on the UCC, Which Does Not Apply, And Otherwise Fails .......................................................................................7

    E.  Brenes Has No Defense on His Guarantee ................................................................9

CONCLUSION..............................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*605 Fifth Prop. Owner, LLC v. Abasic, S.A.*,
  No. 22-3195, 2023 WL 4417343 (2d Cir. July 10, 2023)..........................................................10

*Beswick v. Weiss*,
  126 A.D.2d 854 (3d Dept. 1987) ................................................................................................8

*Bishop v. Nat'l Health Ins. Co.*,
  344 F.3d 305 (2d Cir. 2003)........................................................................................................2

*Canterbury Realty & Equip. Corp. v. Poughkeepsie Sav. Bank*,
  135 A.D.2d 102 (3d Dept. 1988) ............................................................................................9, 10

*Coop. Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*,
  113 A.D.3d 457 (1st Dept. 2014)........................................................................................... 9-10

*Emigrant Mortg. Co. v. Karpinski*,
  76 A.D.3d 1044 (2d Dept. 2010) ................................................................................................3

*H&A Realty Assoc. LLC v. LCP NPL 6 2018 LLC*,
  2020 NY Slip Op 31978(U) (Sup. Ct. Queens Co. May 8, 2020) ..............................................7

*Jade Realty LLC v. Citigroup Com. Mortg. Tr. 2005-EMG*,
  20 N.Y.3d 881 (2012) .................................................................................................................3

*M/A-COM Sec. Corp. v. Galesi*,
  904 F.2d 134 (2d Cir. 1990) .......................................................................................................4

*Martinez v. Planet Home Lending*,
  2022 Cal. Super. Lexis 21591, No. 21STCV04393 (Cal. Sup. Court March 9, 2022)..............8

*Nextbridge Arc Fund, LLC v. Vadodra Prop., LLC*,
  31 Misc. 3d 1202(A), 929 N.Y.S.2d 201, 2011 WL 1124347 (N.Y. Sup. 2011) .....................10

*Preferred Grp. of Manhattan, Inc. v. Fabius Maximus, Inc.*,
  51 A.D.3d 889 (2d Dept 2008) ...................................................................................................7

*Red Tulip, LLC v. Neiva*,
  44 A.D.3d 204 (1st Dept. 2007)................................................................................................10

*Walcutt v. Clevite Corp.*,
  191 N.E.2d 894 (N.Y. 1963).....................................................................................................10

**Rules and Statutes**

Fed. R. Civ. P. 26(a)(1)(A) ................................................................................................................5

N.Y. U.C.C. Law § 3-103 (McKinney) ...................................................................................8

N.Y. U.C.C. Law § 3-104 (McKinney) ...................................................................................8

N.Y. U.C.C. Law § 3-109 (McKinney) ...................................................................................8

N.Y. U.C.C. Law § 3-604 (McKinney) ................................................................................8, 9

**<u>Other Authorities</u>**

28 N.Y. Prac., Contract Law § 11:18..........................................................................................4

28 N.Y. Prac., Contract Law § 11:20..........................................................................................4

Plaintiff Legal Recovery Associates, LLC, through its counsel, Solomon Cramer & Summit LLP, submits this reply memorandum of law in further support of its motion for summary judgment on its causes of action for breach of contract in both consolidated cases and for breach of guarantee in the first-filed case and to dismiss the first counterclaim in both cases.[1]

## I. INTRODUCTION

The essential facts are undisputed. BLG borrowed $3 million from LRA and promised to pay it back from collections on its products liability cases. BLG collected millions of dollars but paid LRA nothing. BLG's excuse is that for a few months in late 2020, it was unhappy with the negotiations over a payoff letter, which supposedly frustrated its ability to repay the Notes. But BLG cannot account for the fact that (A) LRA had a legal right to negotiate the terms of a payoff letter; (B) after withdrawing BLG's demand for a formal payoff letter, Brenes went silent, with LRA not knowing what was occurring with the new lender; and (C) a few months later, after BLG had closed with the new lender, Brenes resurfaced, requested payoff information, received it twice, but neither responded nor made a payment—then or ever.

## II. ARGUMENT[2]

### A. BLG Breached the Notes

"Breach" is the sole element that Defendants contest, and only as to Notes 3 to 8. (D. Mem. at 8.) On Notes 1 and 2, the breach is conceded based on BLG's giving of a general security interest to CAL in connection with the CAL Note in October 2020.

---

[1] We use the same citation format and defined terms as in the moving brief: Plaintiff's Rule 56.1 Statement of Material Facts (ECF 98) is "SOF" or "PSOF"; the Declaration of Andrew T. Solomon dated January 16, 2024 (ECF 100-101) is "Solomon Decl."; the Declaration of Howard Berger dated January 16, 2024 (ECF 102) is "Berger Decl."; and the Declaration of George Lui dated January 16, 2024 (ECF 103) is "Lui Decl." Plaintiff's opening Memorandum of Law is "P. Mem."; Defendants' Opposition Memorandum of Law (ECF 110) is "D. Mem."; the Declaration of Troy Brenes dated February 9, 2024 (ECF 111) is "Brenes Decl."; and Defendants' responses to PSOF and Statement of Additional Undisputed Facts (ECF 112) is "DSOF."

[2] Defendants repeatedly state in their responses to PSOF that they did not receive certain of "Plaintiff's Deposition Exhibits," including certain CAL account statements identifying payments, and do not know about the deposition. (*E.g.*, DSOF ¶¶ 5, 9.) This is a dodge. The documents are attached to the Solomon Decl., were produced in

As to Notes 3-8, according to Defendants, BLG was not required to pay LRA anything on the Notes until "[BLG]³ had resolved the majority of its product cases." (D. Mem. at 9.) Thus, Defendants say, no breach occurred because "BLG has resolved far less than 20% of its products liability cases." (*Id.*)

Nothing in the Notes' language, however, suggests that BLG's repayment obligation was linked to a certain percentage of collections on its cases. To the contrary, the Notes require BLG to pay LRA on the first dollars collected, defined as the "Payment Date"—the "date on which Maker receives any award [on its products liability cases]." For BLG to say that it could keep 100% of the money it collected until a majority of its cases were resolved is utterly fanciful. This post hoc construction has no textual support and is unsupported by extraneous evidence, including all the correspondence between the parties (that is, it was never mentioned).

It may be that in certain hypothetical scenarios the repayment provisions of the Notes could be ambiguous (for example, whether a minor collection would trigger BLG's entire repayment obligation or how collections should be applied among the various Notes). But "[a]n ambiguity does not exist by virtue of the fact that one of a contract's provisions could be ambiguous under some other circumstances." *Bishop v. Nat'l Health Ins. Co.,* 344 F.3d 305, 308 (2d Cir. 2003). Here, no possible interpretation of the Notes permitted BLG to pay LRA nothing, not a penny, from the money generated on its product liability litigations. That BLG did just that—collected millions while paying LRA nothing—means that BLG breached, entitling LRA to declare a breach and accelerate payment.

---

discovery, mostly by non-party CAL, and were Bates stamped. Many were used at the deposition of CAL. BLG received multiple notices of that deposition, but ignored them and chose not to attend.

³ Defendants write, "Plaintiff had resolved …" (D. Mem. at 9), but they likely mean "Defendant BLG had resolved …."

2

### B. BLG Adduced No Evidence in Support of its Second Defense and First Counterclaim that LRA Breached the Implied Covenant

#### 1. BLG Admits That it Had the Payoff Figure

In its moving papers, LRA demonstrated that Defendants had a payoff calculation and LRA's methodology for calculating it on August 4, 2020. BLG reluctantly admits this. (D. Mem. at 4, 11.) Because LRA provided the payoff in a native Excel spreadsheet format, BLG and CAL could view the interest calculation formulas that LRA employed, including the date convention (actual days/360).[4] As a result, when BLG closed the new loan with CAL, Defendants were able to calculate the payoff amount on all eight Notes to the penny: $3,489,280.82. (PSOF ¶ 38; DSOF ¶¶ 39, 42.) This calculation, which puts the lie to a main contention in Defendants' case (*i.e.*, that it somehow could not perform the interest calculation), is ignored in their opposition.

It may be that, at the time of closing with CAL, Defendants ideally wanted LRA to formally confirm the final amount in a "payoff letter" and to pay by wire. But CAL was not prevented from paying off the Notes. It had the payoff figure and a check would have worked.[5] If concerns remained, it could have paid "under protest"—a common step for commercial parties in similar cases. *See, e.g., Jade Realty LLC v. Citigroup Com. Mortg. Tr. 2005-EMG,* 20 N.Y.3d 881, 883 (2012); *Emigrant Mortg. Co. v. Karpinski*, 76 A.D.3d 1044, 1046 (2d Dept. 2010).

#### 2. No Evidence of Bad Faith

To establish a breach of the implied covenant, Defendants have the burden of showing that Plaintiff acted in "bad faith."

---

[4] The payoff spreadsheet (Solomon Decl. Ex. 20) has a column labeled "Interest Charge (360 Day year) US$." The formula shows that LRA calculated daily interest by multiplying the loan balance by the interest rate divided by 360. Defendants could easily have adjusted the calculations to account for Notes 6-8 by adding the principal of those Notes on the dates made, which Defendants surely did on November 3, 2020 when they calculated the reserve amount for the CAL loan. (PSOF ¶ 38; DSOF ¶¶ 38-39.) Thus, Defendants' arguments that LRA did not disclose its method of calculating interest are false. (D. Mem. at 13-15.)

[5] The whole issue about wire instructions is a red herring. Defendants never explain why they could not have paid by check.

3

Courts have not clearly defined what "bad faith" means in this context. *See, generally,* § 11:20. Scope of covenant—Bad faith, 28 N.Y. Prac., Contract Law § 11:20. But one settled exclusion is that "the covenant does not prevent a party from taking action to advance its own interests even though the action may incidentally lessen the other party's anticipated benefits under the contract." § 11:18. Scope of covenant—May not apply to actions to advance a party's interests, 28 N.Y. Prac., Contract Law § 11:18 (citing *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) (affirming that implied covenant did not preclude party from "seeking to advance its legitimate business interests in an unrelated transaction")).

BLG's tendentious argument that LRA acted in "bad faith" by holding it "hostage from being able to repay its debts as allowed under the Notes in order to force concessions for a third-party in a separate contractual dispute" (D. Mem. at 11-12) is an offensive metaphor and misguided. *First of all*, it was BLG and CAL, not LRA, that sought a payoff letter and release, which included terms not required under the Notes. As it turned out, BLG and CAL did not even need a payoff letter. (PSOF ¶ 19; DSOF ¶ 19.) *Second*, the communications attached to the Brenes Declaration reflect a discussion over terms in light of BLG's co-counsel arrangement with LLG and LRA's financial support for that arrangement—not bad faith. *Ultimately*, after finally telling LRA that the payoff letter was not, in fact, required, Brenes ignored LRA's Berger's invitation to discuss the separate contract issues relating to LLG (PSOF ¶¶ 19-20; DSOF ¶¶ 19-20). Brenes did not again seek payoff information until January 5, 2021, when he emailed LRA requesting just the payoff amount and wire instructions (PSOF ¶ 20; DSOF ¶ 20), and LRA promptly supplied them (PSOF ¶ 21; DSOF ¶ 21).

The long and short of it is that Defendants have had the information and ability to pay off the Notes in full by check or by wire for more than three years and seven months. At no point

4

has either Defendant ever made or attempted to make any payment against the $3,000,000 plus interest that BLG borrowed under the Notes. At no point has LRA ever stopped either Defendant from making a payment against the Notes. As this Court recently noted in its Report and Recommendation on LRA's motion to strike, once LRA's Lui sent the updated payoff calculation and account information on January 6, 2021, "BLG does not explain why, at this point, it failed to pay *any* portion of the indebtedness." (ECF 113 at 4 n.3.) Defendants' attempt to manufacture bad faith based upon several communications in the fall of 2020 over a payoff letter that was not required by CAL, or provided for in the Notes, is a smoke screen to conceal Defendants' unwillingness to honor their contractual obligations to LRA.

### 3. BLG Suffered No Damages

In its moving papers, Plaintiff argued that Defendants had not disclosed any cognizable damage caused by LRA's alleged breach of the implied covenant. Specifically, the one-percent origination fee would have been incurred regardless of the timing of the payoff, and the interest BLG paid was merely the contractual burden of having access to LRA's money. (P. Mem. at 19.)

In opposition, Defendants claim damages based on the difference in interest (15.5% to 17.5%) from when it first requested a payoff, July 28, 2020, until January 6, 2021, when George Lui sent his email with the payoff information (D. Mem. at 14-15), which Defendants ignored.

Even if otherwise valid, Defendants should be precluded from advancing this new computation of damages. Under Rule 26(a)(1)(A), parties must exchange as part of their initial disclosures, "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii). The disclosure must be supplemented when a party learns the disclosures are incomplete or incorrect. Fed. R. Civ. P. 26(e)(1)(A). Despite this, Defendants did not disclose this computation in their Amended Initial Disclosures. (Solomon Decl. Ex. 40).

Preclusion based on non-disclosure is not automatic but is warranted here. Defendants were already ordered by the Court to provide their computation of damages, after initially defaulting. (ECF 79.) In that same order, the Court issued a warning:

> <u>Warning</u>. Although the Court has, thus far, declined to impose terminating sanctions, as requested by plaintiff, defendants are warned that further violations of the Federal Rules of Civil Procedure or this Court's orders may result in the imposition of significantly greater sanctions, up to and including the striking of their counterclaims and/or affirmative defenses.

(*Id.*)

In any event, Defendants cannot justify a credit going back to July 28, 2020. *First*, Defendants adduced no evidence that CAL was ready to close on that date. *Second*, it is undisputed that LRA supplied the payoff calculation on August 4, 2020. (PSOF ¶ 11; DSOF ¶ 11.) Any delay from August 5 to October 27, 2020 was due to BLG's and CAL's insistence on a formal payoff letter, which was unneeded. (PSOF ¶¶ 11, 16, 17, 19; DSOF ¶¶ 11, 16, 17, 19.)

At worst, BLG would be entitled to an offset of excess interest measured by the difference in interest rates (2%) between the CAL loan and LRA's Notes over the period October 27, 2020 to January 6, 2021—the interval between the CAL Loan closing and Lui's email providing the requested payoff figure and wire information. LRA performed that calculation for the Court. (P. Mem. at 20 n.13).[6] This offset depends, however, on the Court finding not only that LRA breached its implied duties (which it did not) but also that BLG would have paid off the Notes. The evidence shows otherwise. Lui twice provided payoff information in early January 2021. BLG did not pay off the Notes, or any portion, then or ever.

---

[6] Although it is not warranted, if necessary to avoid the expense and delay of a trial over de minimis amounts, LRA would concede to a credit of this amount if summary judgment is otherwise awarded in its favor.

6

BLG is clearly not entitled to a permanent relief from interest, as it claims. (D. Mem. at 18). The two cases cited by Defendants illustrate this point. In *Preferred Grp. of Manhattan, Inc. v. Fabius Maximus, Inc.*, 51 A.D.3d 889 (2d Dept 2008), the court excused the borrower from default interest due to the "mortgagee's failure to provide a timely and accurate payoff letter." Following *Preferred Group*, the court in *H&A Realty Assoc. LLC v. LCP NPL 6 2018 LLC*, 2020 NY Slip Op 31978(U) (Sup. Ct. Queens Co. May 8, 2020), held that the borrower stated a claim for breach based on the lender's late provision of wire instructions (after promising that it would provide them). In neither case did the courts consider imposing a permanent interest forfeiture on the lender, as Defendants request here.

### C. Defendants' Other Affirmative Defenses Are Duplicative and Otherwise Without Merit

Defendants either ignore or advance anemic responses to the challenges to their other affirmative defenses.

- Defendants do not try to support their first defense (unclean hands) or sixth defense (laches). After Defendants filed their opposition papers, the Court issued its Report and Recommendation (ECF 113), recommending that the first and sixth defenses be stricken as unavailable to a claim at law and that the ninth defense be stricken as withdrawn, along with Defendants' now "immaterial," and inappropriate, allegations concerning Mr. Berger.

- On the third defense, failure to mitigate, Defendants accuse Plaintiff of not suing fast enough. (D. Mem. at 17.) That's novel.

- On the fourth, fifth, and seventh defenses (interference, impossibility, and bad faith), Defendants rehash breach of the implied covenant arguments. In other words, they admit that the defenses are duplicative.

### D. Defendants' Eighth Defense of Tender is Based on the UCC, Which Does Not Apply and Otherwise Fails

Citing common law principles, LRA has established based on undisputed facts that Defendants never tendered the amount due to LRA. (P. Mem. at 21-22.)

7

In response, Defendants rely on the tender provisions of the Uniform Commercial Code. (D. Mem. at 17.) Specifically, they quote U.C.C. § 3-603 (from the Uniform Laws) and an unreported trial court opinion from California[7] with zero precedential value anywhere. (D. Mem. at 17-18.)

Error one is that BLG quotes the Uniform Law.[8] New York's tender statute under the U.C.C. is differently worded and is enacted at § 3-604 (not 603). BLG discusses no case interpreting New York law.

Error two is that the U.C.C. does not apply. Article 3 is "restricted to commercial paper." N.Y. U.C.C. Law § 3-103 at Cmt. 1. Commercial paper, as defined in N.Y. U.C.C. Law § 3-104, requires, *inter alia,* that the instrument "be payable on demand or at a definite time." N.Y. U.C.C. Law § 3-104(c). An instrument is not payable at a "definite time," if "by its terms [it] is otherwise payable only upon an act or event uncertain as to time of occurrence [ ] even though the act or event has occurred." N.Y. U.C.C. Law § 3-109(b)(2). That exclusion applies to the Notes in this case, which, by their terms were not payable at a "definite time," but only when BLG "received payment of any award in respect of all product liability litigations." *See* Solomon Decl. Exs. 1-8 (definition of "Payment Date").

Yet even if Article 3 of the U.C.C. did apply, the "tender" would be invalid. Like the common law, the U.C.C. also requires an unconditional tender. *See, e.g., Beswick v. Weiss*, 126 A.D.2d 854, 855 (3d Dept. 1987) (applying U.C.C. and holding that the debtor's conditioning of payment on production of original note was not a conforming tender); *see also* N.Y. U.C.C. Law § 3-604 at N.Y. Annotations (explaining that the provision "appears to be in accord with

---

[7] *Martinez v. Planet Home Lending,* 2022 Cal. Super. Lexis 21591 at **10-13, No. 21STCV04393 (Cal. Sup. Court March 9, 2022).
[8] New York law applies under the Notes.

8

generally accepted rules relating to tender"). BLG does not allege that it made an unconditional offer to pay off the entire loan balance. Rather, BLG requested a payoff amount and wanted LRA to sign a payoff letter from another lender, which LRA would not sign without modification. (ECF 3 at ¶¶ 14-15 (Statement of Facts).)

As such, any consideration of the U.C.C. is largely an academic exercise. The applicable law is the general common law. Under common law principles, as explained in Plaintiff's moving brief, to arrest the accrual of interest, an obligor must make an actual tender of money and that tender must be without conditions. (P. Mem. at 21-22.) That did not happen here.

### E.  Brenes Has No Defense on His Guarantee

Brenes does not contest that LRA has established the elements for breach of a guarantee: the guarantee exists, BLG has not paid the debt, and Brenes has not paid on the guarantee. (P. Mem. at 23.) Nor does he contest the threshold events triggering personal liability.

In that his guarantee is "unconditional" with broad "waivers of defenses," Brenes is left with the narrow exception articulated in *Canterbury Realty & Equip. Corp. v. Poughkeepsie Sav. Bank*, 135 A.D.2d 102 (3d Dept. 1988) (D. Mem. at 19-21). But, as explained in Plaintiff's moving brief, LRA's actions respecting the payoff transaction did not create the conditions for acceleration, which is the crux of the *Canterbury* exception. *See* 135 A.D.2d at 107. At most it delayed the payoff. Meanwhile, BLG's breaches occurred because BLG gave a security interest to CAL and made no payments to LRA from the collections on its cases. LRA had no role in the defaults, which gave rise to its right to accelerate the indebtedness.

It is of no moment that BLG now claims that the payoff numbers are too high because of the interest that accrued during the brief period when it was trying to pay off the loan in late 2020. First, *Canterbury* only applies to the conditions for acceleration, where the lender "brought about the very condition precedent ... upon which it relied to accelerate the loan against the

guarantors." *Coop. Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 113 A.D.3d 457, 461 (1st Dept. 2014), *aff'd sub nom. Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 25 N.Y.3d 485 (2015) (distinguishing *Canterbury*). It does not allow a guarantor to avoid liability based on a dispute over a payoff calculation. Second, Defendants could have paid under protest and litigated the calculation. Instead, they ignored the liability. Third, LRA did not engage in "wrongful conduct" akin to *Canterbury*. It was negotiating the best terms for the payoff transaction. *See, e.g., Red Tulip, LLC v. Neiva,* 44 A.D.3d 204, 211 (1st Dept. 2007) (lender's refusal "to consent to refinancings and sales of condominium units" not wrongful in the same way as the bank in *Canterbury*).

Brenes's final argument that he is entitled to "plead the same defenses of BLG" is obviously wrong. The cases he cites do not appear to include "unconditional guarantees" with broad waivers of defenses. (D. Mem. at 22.)[9]

### III. CONCLUSION

For these reasons, and those set forth in LRA's moving papers, the Court should (i) grant summary judgment in favor of LRA and against BLG in both cases on its causes of action for breach of contract; (ii) grant summary judgment in favor of LRA and against Brenes in the first-filed case for breach of guarantee against Brenes; and (iii) dismiss the first counterclaim in both cases.

---

[9] For example, the Second Circuit distinguished *Walcutt v. Clevite Corp.*, 191 N.E.2d 894 (N.Y. 1963), cited by Defendants, explaining that "unlike this case, the guaranty in *Walcutt* was not unconditional and did not contain a waiver of defenses," and that the guarantor before the court had validly waived any defense that its liability could not exceed that of the principal. *605 Fifth Prop. Owner, LLC v. Abasic, S.A.*, No. 22-3195, 2023 WL 4417343, at *2 (2d Cir. July 10, 2023). In *Nextbridge Arc Fund, LLC v. Vadodra Prop., LLC*, 31 Misc. 3d 1202(A), 929 N.Y.S.2d 201, 2011 WL 1124347 (N.Y. Sup. 2011), *judgment entered*, (N.Y. Sup. 2012), the guarantee was "unconditional." While the court noted that the individual guarantors may stand "in the shoes of the principal," it did so only in the context of explaining that individual guarantors could not assert defenses not available to the principal corporation.

Dated: New York, New York
February 22, 2024

        SOLOMON CRAMER & SUMMIT LLP
        *Attorneys for Plaintiff*

        By:   /s/Andrew T. Solomon
              Andrew T. Solomon
              asolomon@solomoncramer.com

        25 West 39th St., 7th Floor
        New York, New York 10018
        (t) (212) 884-9102
        (f) (516) 368-3896